## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, on behalf of itself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>SOLARWINDS CORPORATION, KEVIN B. THOMPSON, and J. BARTON KALSU,<br><br>                    Defendants. | Case No. 21-cv-138<br><br><br>**CLASS ACTION**<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

Plaintiff New York City District Council of Carpenters Pension Fund ("NYC Carpenters" or "Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by SolarWinds Corporation ("SolarWinds" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued and disseminated by the Company; (c) analyst and media reports concerning SolarWinds; and (d) other public information regarding the Company.

## INTRODUCTION

1.      This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired shares of SolarWinds common stock between October 18, 2018 and December 17, 2020, inclusive (the "Class Period"). The claims asserted herein are alleged against SolarWinds and certain of the Company's current and former senior executives

(collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.      Headquartered in Austin, Texas, SolarWinds provides software products used to monitor the health and performance of information technology networks.  The Company's most important product line is its Orion platform, which provides a suite of software tools that provide oversight of network, application, and storage resources.

3.      Throughout the Class Period, SolarWinds touted its robust security controls and commitment to prioritizing customers' security and privacy concerns.  The Company also represented that it faced purported risks with regard to its cybersecurity measures.  These and similar statements made during the Class Period were false and misleading.  In reality, the Company failed to employ adequate cybersecurity safeguards and did not maintain effective monitoring systems to detect and neutralize security breaches.  As a result of vulnerabilities in the Company's cybersecurity protections, which were known to Defendants, SolarWinds and its customers were particularly susceptible to cyber-attacks.  As a result of Defendants' misrepresentations, shares of SolarWinds common stock traded at artificially inflated prices throughout the Class Period.

4.      The truth began to emerge through a series of disclosures beginning on December 13, 2020, when *Reuters* reported that hackers had infiltrated the networks of the U.S. Treasury and Commerce departments and had been monitoring the agencies' internal email communications. The report further revealed that the hackers had gained access to the networks by tampering with software updates released by SolarWinds.

5.      The following day, SolarWinds admitted that hackers had breached its network and inserted malware into software updates for its Orion monitoring products.  SolarWinds further

disclosed that the networks of as many as 18,000 customers may have been compromised by the maliciously coded Orion updates.  As a result of these disclosures, the price of SolarWinds stock declined nearly 17%, from $23.55 per share to $19.62 per share.

6.     On December 15, 2020, *Reuters* reported that a security researcher had warned SolarWinds in 2019 that anyone could access the Company's update server by simply using the password "solarwinds123."  Thus, according to the researcher, the SolarWinds breach "could have been done by any attacker, easily."  Additionally, according to another cybersecurity expert, the malicious Orion updates were still available for download days after the Company had admitted that its software had been compromised.  These disclosures caused the price of SolarWinds stock to decline by nearly 8%, from $19.62 per share to $18.06 per share.

7.     On December 17, 2020, *Bloomberg News* reported that at least three state governments had been hacked as part of the SolarWinds breach.  Moreover, the hackers used the SolarWinds intrusion to infiltrate government networks that implicated national security concerns, including the U.S. Department of Energy and its National Nuclear Security Administration, which maintains the country's arsenal of nuclear weapons.  As a result of these disclosures, the price of SolarWinds stock declined by more than 19%, from $17.60 per share to $14.18 per share.

## JURISDICTION AND VENUE

8.     The claims alleged herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  SolarWinds maintains its headquarters in Austin, Texas, which is situated in this District, conducts substantial business in this District, and many of the

acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.   Plaintiff

10.   Plaintiff NYC Carpenters is a pension fund that provides financial benefits to retired carpenters and their beneficiaries. As indicated on the certification submitted herewith, NYC Carpenters purchased SolarWinds common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.   Defendants

11.   Defendant SolarWinds is incorporated in Delaware and maintains its corporate headquarters at 7171 Southwest Parkway, Building 400, Austin, Texas. The Company's common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "SWI." As of October 30, 2020, SolarWinds had over 314 million shares of common stock outstanding, owned by hundreds or thousands of investors.

12.   Defendant Kevin B. Thompson ("Thompson") served as President of SolarWinds from January 2009 until December 31, 2020. Thompson also served as SolarWinds' Chief Executive Officer and as a member of the Company's Board of Directors from March 2010 until December 31, 2020.

13.   Defendant J. Barton Kalsu ("Kalsu") has served as Executive Vice President, Chief

Financial Officer, and Treasurer of SolarWinds since April 2016.

14.     Defendants Thompson and Kalsu are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with SolarWinds, possessed the power and authority to control the contents of the Company's reports to the SEC and other public statements made by SolarWinds during the Class Period.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports or other statements alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

15.     SolarWinds provides infrastructure management software used to monitor and manage networks, systems, and applications, serving over 300,000 customers worldwide.  The Company's flagship product is its Orion platform.  Orion provides a suite of software products widely used by government agencies and Fortune 500 companies to monitor the health and performance of their information technology networks.  The Orion platform accounts for nearly half of the Company's annual revenue.

16.     For Orion to function properly, its users must provide SolarWinds with unrestricted access to the contents of their networks, including sensitive administration credentials.  The granting of such privileges introduces an enormous cybersecurity risk for which it is incumbent on SolarWinds to employ adequate defenses to mitigate.  Therefore, SolarWinds' implementation and maintenance of strong cybersecurity safeguards was critically important to the Company's

business and its customers.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING
STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS**

17.     The Class Period begins on October 18, 2018, when the SEC declared SolarWinds'

registration statement for its initial public offering (the "IPO") effective (the "IPO Registration

Statement").  On or around October 19, 2018, SolarWinds conducted an IPO pursuant to the IPO

Registration Statement.  On October 22, 2018, SolarWinds filed a prospectus for the IPO with the

SEC on Form 424B4 (the "IPO Prospectus"), which incorporated and formed part of the IPO

Registration Statement (collectively, the "IPO Offering Materials").

18.     In the IPO Offering Materials, Defendants represented that the Company faced

ostensible risks regarding the Company's purported cybersecurity measures.   In particular,

Defendants represented that "[b]ecause the techniques used to obtain unauthorized access or to

sabotage systems change frequently and generally are not identified until they are launched against

a target, we may be unable to anticipate these techniques or to implement adequate preventative

measures."  Defendants further stated that "[w]e may also experience security breaches that may

remain undetected for an extended period and, therefore, have a greater impact on the products we

offer, the proprietary data contained therein, and ultimately on our business."  Defendants also

stated that these "security problems could result in, among other consequences, damage to our own

systems or our customers' [information technology] infrastructure or the loss or theft of our

customers' proprietary or other sensitive information."  Defendants further represented that

"[d]espite our security measures, unauthorized access to, or security breaches of, our software or

systems could result in the loss, compromise or corruption of data, loss of business, severe

reputational damage adversely affecting customer or investor confidence, regulatory investigations

and orders, litigation, indemnity obligations, damages for contract breach, penalties for violation

of applicable laws or regulations, significant costs for remediation and other liabilities."   In addition, Defendants represented that SolarWinds has "incurred and expect[s] to incur significant expenses to prevent security breaches, including deploying additional personnel and protection technologies, training employees, and engaging third-party experts and consultants."

19.     On November 27, 2018, SolarWinds filed with the SEC a Form 10-Q for the third quarter of 2018.   The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity risks contained in the IPO Prospectus, as set forth in ¶18.

20.     On February 25, 2019, SolarWinds filed with the SEC a Form 10-K for the fiscal year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K was signed by Defendants Thompson and Kalsu and contained certifications by them attesting to the purported accuracy and completeness of the 2018 10-K.  In the 2018 10-K, Defendants represented that the Company faced ostensible risks regarding the Company's purported cybersecurity measures.   In particular, Defendants represented that "[b]ecause the techniques used to obtain unauthorized access or to sabotage systems change frequently and generally are not identified until they are launched against a target, we may be unable to anticipate these techniques or to implement adequate preventative measures."  Defendants further stated that "[w]e may also experience security breaches that may remain undetected for an extended period and, therefore, have a greater impact on the products we offer, the proprietary data contained therein, and ultimately on our business."  Defendants also stated that these "security problems could result in, among other consequences, damage to our own systems or our customers' [information technology] infrastructure or the loss or theft of our customers' proprietary or other sensitive information."   Defendants further represented that

"[d]espite our security measures, unauthorized access to, or security breaches of, our software or systems could result in the loss, compromise or corruption of data, loss of business, severe reputational damage adversely affecting customer or investor confidence, regulatory investigations and orders, litigation, indemnity obligations, damages for contract breach, penalties for violation of applicable laws or regulations, significant costs for remediation and other liabilities."   In addition, Defendants represented that SolarWinds has "incurred and expect[s] to incur significant expenses to prevent security breaches, including deploying additional personnel and protection technologies, training employees, and engaging third-party experts and consultants."

21.   On May 10, 2019, SolarWinds filed with the SEC a Form 10-Q for the first quarter of 2019.  The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity risks contained in the 2018 10-K, as set forth in ¶20.

22.   On or around May 22, 2019, SolarWinds conducted a secondary public offering (the "SPO") pursuant to a registration statement (the "SPO Registration Statement").  On May 23, 2019, SolarWinds filed a prospectus for the SPO with the SEC on Form 424B4 (the "SPO Prospectus"), which incorporated and formed part of the SPO Registration Statement (collectively, the "SPO Offering Materials").  In the SPO Offering Materials, Defendants represented that the Company faced ostensible risks regarding the Company's purported cybersecurity measures.  In particular, Defendants represented that "[b]ecause the techniques used to obtain unauthorized access or to sabotage systems change frequently and generally are not identified until they are launched against a target, we may be unable to anticipate these techniques or to implement adequate preventative measures."   Defendants further stated that "[w]e may also experience

8

security breaches that may remain undetected for an extended period and, therefore, have a greater impact on the products we offer, the proprietary data contained therein, and ultimately on our business."  Defendants also stated that these "security problems could result in, among other consequences, damage to our own systems or our customers' [information technology] infrastructure or the loss or theft of our customers' proprietary or other sensitive information." Defendants further represented that "[d]espite our security measures, unauthorized access to, or security breaches of, our software or systems could result in the loss, compromise or corruption of data, loss of business, severe reputational damage adversely affecting customer or investor confidence, regulatory investigations and orders, litigation, indemnity obligations, damages for contract breach, penalties for violation of applicable laws or regulations, significant costs for remediation and other liabilities."  In addition, Defendants represented that SolarWinds has "incurred and expect[s] to incur significant expenses to prevent security breaches, including deploying additional personnel and protection technologies, training employees, and engaging third-party experts and consultants."

23.    On August 12, 2019, SolarWinds filed with the SEC a Form 10-Q for the second quarter of 2019.  The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity risks contained in the 2018 10-K, as set forth in ¶20.

24.    On November 7, 2019, SolarWinds filed with the SEC a Form 10-Q for the third quarter of 2019.  The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity

risks contained in the 2018 10-K, as set forth in ¶20.

25.     On February 24, 2020, SolarWinds filed with the SEC a Form 10-K for the fiscal year ended December 31, 2019 (the "2019 10-K").  The 2019 10-K was signed by Defendants Thompson and Kalsu and contained certifications by them attesting to the purported accuracy and completeness of the 2019 10-K.  In the 2019 10-K, Defendants represented that the Company faced ostensible risks regarding the Company's purported cybersecurity measures.   In particular, Defendants represented that "[b]ecause the techniques used to obtain unauthorized access or to sabotage systems change frequently and generally are not identified until they are launched against a target, we may be unable to anticipate these techniques or to implement adequate preventative measures."  Defendants further stated that "[w]e may also experience security breaches that may remain undetected for an extended period and, therefore, have a greater impact on the products we offer, the proprietary data contained therein, and ultimately on our business."  Defendants also stated that these "security problems could result in, among other consequences, damage to our own systems or our customers' [information technology] infrastructure or the loss or theft of our or our customers' proprietary or other sensitive information."   Defendants further represented that "[d]espite our security measures, unauthorized access to, or security breaches of, our software or systems could result in the loss, compromise or corruption of data, loss of business, severe reputational damage adversely affecting customer or investor confidence, regulatory investigations and orders, litigation, indemnity obligations, damages for contract breach, penalties for violation of applicable laws or regulations, significant costs for remediation and other liabilities."   In addition, Defendants represented that SolarWinds has "incurred and expect[s] to incur significant expenses to prevent security breaches, including deploying additional personnel and protection technologies, training employees, and engaging third-party experts and consultants."

26.     On May 8, 2020, SolarWinds filed with the SEC a Form 10-Q for the first quarter of 2020.  The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity risks contained in the 2019 10-K, as set forth in ¶25.

27.     On August 10, 2020, SolarWinds filed with the SEC a Form 10-Q for the second quarter of 2020.  The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity risks contained in the 2019 10-K, as set forth in ¶25.

28.     On November 5, 2020, SolarWinds filed with the SEC a Form 10-Q for the third quarter of 2020.  The 10-Q was signed by Defendant Kalsu and contained certifications by Defendants Thompson and Kalsu attesting to the purported accuracy and completeness of the 10-Q.  The 10-Q incorporated by reference the Company's representations regarding its cybersecurity risks contained in the 2019 10-K, as set forth in ¶25.

29.     Throughout the Class Period, Defendants made public statements in SolarWinds' Security Statement contained on its website regarding the Company's commitment to cybersecurity and safeguarding its clients' data through regular updates to its Orion platform.  For instance, SolarWinds' website stated that the Company conducts security assessments "to identify vulnerabilities and to determine the effectiveness of the patch management program."  On its website, SolarWinds also stated that it "strives to apply the latest security patches and updates to operating systems, applications, and network infrastructure to mitigate exposure to vulnerabilities" and that "[p]atches are tested prior to being deployed into production."  SolarWinds' website

further stated that the Company deploys automated tools within its network "to support near-real-time analysis of events to support of detection of system-level attacks."  The Company's website also touted that SolarWinds' "infrastructure servers reside behind high-availability firewalls and are monitored for the detection and prevention of various network security threats."

30.     On its website, SolarWinds also stated that it "follow[s] a defined methodology for developing secure software that is designed to increase the resiliency and trustworthiness of our products."   The Company's website also stated that "[s]ecurity and security testing are implemented throughout the entire software development methodology" and that "Quality Assurance is involved at each phase of the lifecycle and security best practices are a mandated aspect of all development activities."  The Company further represented on its website that its "secure development lifecycle follows standard security practices including vulnerability testing, regression testing, penetration testing, and product security assessments."

31.     SolarWinds' website also touted the Company's commitment to customer security and privacy concerns as a "priority."   SolarWinds' website further stated that the Company "strive[s] to implement and maintain security processes, procedures, standards, and take[s] all reasonable care to prevent unauthorized access to our customer data."   The Company also represented on its website that SolarWinds employs "appropriate administrative, operational, and technical security controls" to ensure that customer data is secure.

32.     The statements set forth above in ¶¶18-31 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading.  In truth, the Company failed to maintain adequate cybersecurity measures and effective monitoring systems to protect against security breaches.  As a result, the Company was exposed to an increased risk of a major

cybersecurity breach.  In addition, to the extent the Company purported to warn of risks of a security breach, Defendants omitted that such risks had already materialized.

## THE TRUTH EMERGES

33.     On December 13, 2020, *Reuters* reported that hackers believed to be working for the Russian government had been spying on internal email traffic at the U.S. Treasury and Commerce departments.  The article also revealed that the hackers were believed to have gained access to the agencies' networks through software released by SolarWinds.

34.     The next day, SolarWinds disclosed that hackers exploited a vulnerability in its Orion monitoring products, which existed in software updates released to SolarWinds' customers between March and June 2020.  The Company further revealed that the networks of as many as 18,000 customers may have been compromised by the Orion updates that contained the malicious code.  As a result of these disclosures, SolarWinds' stock price declined by approximately 17%, from $23.55 per share on December 11, 2020 to $19.62 per share on December 14, 2020.

35.     On December 15, 2020, *Reuters* reported that, in 2019, security researcher Vinoth Kumar "alerted the Company that anyone could access SolarWinds' update server by using the password 'solarwinds123'" and, according to Kumar, the breach of SolarWinds "could have been done by any attacker, easily."  Moreover, according to Kyle Hanslovan, the co-founder of cybersecurity firm Huntress, "days after SolarWinds realized their software had been compromised, the malicious updates were still available for download" by SolarWinds' customers. These disclosures caused SolarWinds' stock price to decline from $19.62 per share on December 14, 2020 to $18.06 per share on December 15, 2020, a decline of nearly 8%.

36.     Then, on December 17, 2020, *Bloomberg News* reported that the networks of at least three state governments were compromised as a result of the SolarWinds security breach. Moreover, it was reported that the networks of the U.S. Department of Energy and its National

Nuclear Security Administration, which maintains the country's nuclear weapons stockpile, had also been infiltrated by the SolarWinds hackers.  In response to these disclosures, SolarWinds' stock price declined more than 19%, from $17.60 per share on December 17, 2020 to $14.18 per share on December 18, 2020.

37.     After the end of the Class Period, additional details surrounding the breach continue to emerge.  For example, on December 21, 2020, *Bloomberg News* reported that SolarWinds was warned in 2017 of its vulnerability to cyber-attacks in a 23-page presentation delivered to at least three of the Company's executives by former SolarWinds cybersecurity advisor, Ian Thornton-Trump.  According to Thornton-Trump, "SolarWinds was an incredibly easy target to hack" due to its lax cybersecurity protections, but the Company's executives were "unwilling to make the corrections" necessary to improve SolarWinds' deficient security measures.  Thornton-Trump also noted that the Company had "a lack of security at the technical product level, and there was minimal security leadership at the top," and despite knowing the increasing prevalence of hackers since at least 2015, "SolarWinds did not adapt" and "wasn't paying attention to what was going on."  Moreover, according to a former SolarWinds software engineer, the Company prioritized developing new products over its internal cybersecurity protections and it wasn't uncommon for SolarWinds' internal systems to be running out-of-date web browsers and operating systems, which made them more vulnerable to cyber-attacks.  Accordingly, both Thornton-Trump and the former SolarWinds software engineer "viewed a major breach [of SolarWinds] as inevitable."

38.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

39.     During the Class Period, as detailed herein, Defendants made materially false and

misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of SolarWinds common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when the truth concealed by Defendants' prior misrepresentations and omissions was disclosed to the market, the price of SolarWinds stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of SolarWinds common stock during the Class Period—and Defendants' material misstatements and omissions—Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## **CLASS ACTION ALLEGATIONS**

40.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired the publicly traded common stock of SolarWinds during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of SolarWinds and their families and affiliates.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of October 30, 2020, SolarWinds had over 314 million shares of common stock outstanding, owned by hundreds or thousands of investors.

42.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of SolarWinds common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

43.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

44.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements described in this Complaint. Many of the specific statements described herein were not identified as "forward-looking" when

made.  To the extent that there were any forward-looking statements, there was no meaningful cautionary language identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements described herein, Defendants are liable for those false forward-looking statements because at the time each was made, the particular speaker knew that the particular forward-looking statement was false or misleading, and/or that the forward-looking statement was authorized and/or approved by an executive officer of SolarWinds who knew that those statements were false or misleading when made.

## PRESUMPTION OF RELIANCE

47.    At all relevant times, the market for SolarWinds common stock was an efficient market for the following reasons, among others:

(a)    SolarWinds common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, SolarWinds filed periodic public reports with the SEC and the NYSE;

(c)    SolarWinds regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services, through the Company's website, and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    SolarWinds was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for SolarWinds common stock promptly digested current information regarding SolarWinds from all publicly available sources and reflected such information in the price of SolarWinds common stock.  Under these circumstances, all purchasers of SolarWinds common stock during the Class Period suffered similar injury through their purchase of SolarWinds common stock at artificially inflated prices and the presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding SolarWinds' business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of adequate cybersecurity safeguards to SolarWinds' business and its customers, as alleged above, that requirement is satisfied here.

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

50.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (b) cause Plaintiff and other members of the Class to purchase SolarWinds common stock at artificially inflated prices.

52.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SolarWinds common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

54.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal SolarWinds' true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

56.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SolarWinds common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all,

had they been aware that the market prices for SolarWinds common stock had been artificially inflated by Defendants' fraudulent course of conduct.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of SolarWinds within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about SolarWinds, the Individual Defendants had the power and ability to control the actions of SolarWinds and its employees.  By reason of such conduct, the Individual Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

61.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.      Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## **JURY DEMAND**

62.    Plaintiff demands a trial by jury.

DATED: February 9, 2021                    Respectfully submitted,

                                           **MARTIN & DROUGHT, P.C.**

                                           */s/ Gerald T. Drought*
                                           Gerald T. Drought
                                           State Bar No. 06134800
                                           Federal Bar No. 8942
                                           Frank B. Burney
                                           State Bar No. 03438100
                                           Weston Centre
                                           112 E. Pecan Street, Suite 1616
                                           San Antonio, Texas 78205
                                           Telephone: (210) 227-7591
                                           Facsimile: (210) 227-7924
                                           gdroguht@mdtlaw.com
                                           fburney@mdtlaw.com

                                           *Liaison Counsel for Plaintiff New York City*
                                           *District Council of Carpenters Pension Fund*

                                           **BERNSTEIN LITOWITZ BERGER**
                                           **   & GROSSMANN LLP**

                                           Hannah Ross, *pro hac vice* forthcoming
                                           Avi Josefson, *pro hac vice* forthcoming
                                           Scott R. Foglietta, *pro hac vice* forthcoming
                                           1251 Avenue of the Americas
                                           New York, New York 10020
                                           Telephone: (212) 554-1400
                                           Facsimile: (212) 554-1444
                                           hannah@blbglaw.com
                                           avi@blbglaw.com
                                           scott.foglietta@blbglaw.com

                                           *Counsel for Plaintiff New York City District*
                                           *Council of Carpenters Pension Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Kristin O'Brien, on behalf of New York City District Council of Carpenters Pension Fund ("NYC Carpenters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Executive Director of NYC Carpenters. I have reviewed the complaint and authorize its filing.

2. NYC Carpenters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. NYC Carpenters is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. NYC Carpenters' transactions in the SolarWinds Corporation securities that are the subject of this action are set forth in the chart attached hereto.

5. NYC Carpenters has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6. NYC Carpenters will not accept any payment for serving as a representative party on behalf of the Class beyond NYC Carpenters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of February, 2021.

Kristin O'Brien
Executive Director
*New York City District Council of*
*Carpenters Pension Fund*

**New York City District Council of Carpenters Pension Fund**
**Transactions in SolarWinds Corporation**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 1/4/2019 | 6,000 | 14.1542 |
| Purchase | 1/7/2019 | 1,300 | 14.6638 |
| Purchase | 1/8/2019 | 5,900 | 15.1307 |
| Purchase | 1/9/2019 | 5,200 | 15.3956 |
| Purchase | 1/10/2019 | 2,500 | 15.5694 |
| Purchase | 1/11/2019 | 2,200 | 15.7632 |
| Purchase | 1/14/2019 | 1,800 | 15.6609 |
| Purchase | 1/15/2019 | 1,900 | 15.9252 |
| Purchase | 1/16/2019 | 700 | 16.2343 |
| Purchase | 1/17/2019 | 1,900 | 16.1570 |
| Purchase | 1/18/2019 | 1,600 | 17.0229 |
| Purchase | 1/25/2019 | 145 | 17.1565 |
| Purchase | 2/11/2019 | 300 | 18.1761 |
| Purchase | 2/11/2019 | 1,100 | 18.1470 |
| Purchase | 2/12/2019 | 300 | 18.4869 |
| Purchase | 2/13/2019 | 300 | 18.8234 |
| Purchase | 8/2/2019 | 11,070 | 17.8607 |
| Purchase | 8/5/2019 | 3,500 | 17.1789 |
| Purchase | 8/6/2019 | 1,030 | 17.2034 |
| Purchase | 11/12/2019 | 475 | 19.2295 |
| Purchase | 11/20/2019 | 7,650 | 19.2400 |
| Purchase | 4/16/2020 | 385 | 16.2375 |
| Purchase | 6/3/2020 | 1,415 | 19.4182 |