# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TIMOTHY BREMER, Individually and on behalf of all others similarly situated, | Case No. 1:21-cv-00002-RP |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| SOLARWINDS CORPORATION, KEVIN B. THOMPSON, and J. BARTON KALSU, | |
| Defendants. | |
| DANIEL AZPURUA, Individually and on behalf of all others similarly situated, | Case No. 1:21-cv-00047-RP |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| SOLARWINDS CORPORATION, KEVIN B. THOMPSON, and J. BARTON KALSU, | |
| Defendants. | |

*Caption continued on next page.*

**MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED MOTION OF
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND FOR
CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL</u>**

| | |
|---|---|
| NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>SOLARWINDS CORPORATION, KEVIN B. THOMPSON, and J. BARTON KALSU,<br><br>     Defendants. | Case No. 1:21-cv-00138-RP<br><br>CLASS ACTION |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND ...................................................................................................4

ARGUMENT .............................................................................................................................5

    I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED .........................................5

    II.  NYC CARPENTERS SHOULD BE APPOINTED LEAD PLAINTIFF ..........................6

        A.  The PSLRA's Lead Plaintiff Procedural Prerequisites Have Been Met........................6

        B.  NYC Carpenters Has the Largest Financial Interest........................................................7

        C.  NYC Carpenters Satisfies the Applicable Requirements of Rule 23..............................8

    III. THE COURT SHOULD APPROVE NYC CARPENTERS' SELECTION OF
          LEAD COUNSEL ..............................................................................................................9

CONCLUSION.........................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ..............................................................................5

*Giovagnoli v. GlobalSCAPE, Inc.*,
    2017 WL 11220692 (W.D. Tex. Nov. 6, 2017) ..............................................................7, 8

*Strong v. AthroCare Corp.*,
    2008 WL 11334942 (W.D. Tex. Dec. 10, 2008) ..................................................................7

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
    2016 WL 1625774 (N.D. Tex. Apr. 25, 2016) ...................................................................2

**STATUTES**

15 U.S.C. § 78u-4(a) ............................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) .....................................................................................................8

Fed. R. Civ. P. 42(a) .....................................................................................................1, 6

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) .......................9

Presumptive Lead Plaintiff New York City District Council of Carpenters Pension Fund ("NYC Carpenters") respectfully submits this memorandum of law in support of its unopposed motion, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"), for entry of an order consolidating the above-captioned related securities class actions (the "Actions"). NYC Carpenters also respectfully submits that, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), it is the "most adequate plaintiff" and requests that the Court appoint it as Lead Plaintiff and approve its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

On February 9, 2021, NYC Carpenters filed one of three related securities class actions against SolarWinds Corporation ("SolarWinds" or the "Company") and certain of its current and former senior executives (collectively, "Defendants") asserting claims under Sections 10(b) and 20(a) of the Exchange Act, and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder. The Actions arise from misrepresentations made by Defendants concerning the Company's cybersecurity controls. SolarWinds investors, including NYC Carpenters, incurred significant losses following disclosures that hackers had breached SolarWinds' network and exploited a vulnerability in the Company's software products, which compromised the networks of up to 18,000 customers, including numerous government agencies.

The Actions are subject to the PSLRA, which provides a specific process that guides the initial stages of the litigation. Among other things, the PSLRA provides that prior to appointing a lead plaintiff, the Court must address the issue of consolidation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate under Rule 42(a) when, as here, the "actions before the court involve a common question of law or fact[,]" and all parties agree that consolidation of

1

the Actions is warranted. *See Bremer*, ECF No. 13 ¶6.[1]

Next, the Court is to appoint a Lead Plaintiff to oversee the prosecution of the action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Only Class members that either filed a complaint or a motion by the statutory deadline are eligible to be appointed as Lead Plaintiff. In that regard, NYC Carpenters should be appointed Lead Plaintiff because, of the three eligible Class members that filed complaints, it has the "largest financial interest" in this litigation under the standards of the PSLRA and otherwise satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition to NYC Carpenters, two other Class members are eligible for consideration as Lead Plaintiff: (1) plaintiff Daniel Azpurua ("Azpurua"); and (2) plaintiff Timothy Bremer ("Bremer"). As demonstrated in the chart below, NYC Carpenters' financial interest is multiples larger than the other plaintiffs combined:



---

[1] Three related securities class actions are currently pending before this Court. *See Bremer v. SolarWinds Corporation*, No. 1:21-cv-00002-RP (W.D. Tex. filed Jan. 4, 2021) ("*Bremer*"); *Azpurua v. SolarWinds Corporation*, No. 1:21-cv-00047-RP (W.D. Tex. filed Jan. 14, 2021) ("*Azpurua*"); *New York City District Council of Carpenters Pension Fund v. SolarWinds Corporation*, No. 1:21-cv-00138-RP (W.D. Tex. filed Feb. 9, 2021) ("*NYC Carpenters*"). The allegations in the Actions are substantially similar, but *Bremer* and *Azpurua* assert a class period of February 24, 2020 through December 15, 2020, while *NYC Carpenters* asserts a class period of October 18, 2018 through December 17, 2020 (the "Class Period"). For purposes of appointing a lead plaintiff, courts generally apply the longest class period. *See, e.g., Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 2016 WL 1625774, at *2 (N.D. Tex. Apr. 25, 2016).

As set forth in the graph above, NYC Carpenters' loss of $45,358 is nearly six times larger than the combined losses of Azpurua and Bremer. NYC Carpenters also has, by far, the largest financial interest in this case under each of the factors courts in this District consider when assessing financial interest.[2]

NYC Carpenters also satisfies the typicality and adequacy requirements of Rule 23 and is perfectly situated to represent all Class members. Further, NYC Carpenters fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in serving as Lead Plaintiff to guarantee the vigorous prosecution of this action. *See* Ex. A. Indeed, NYC Carpenters has already taken affirmative steps to protect SolarWinds investors' interests by filing a complaint asserting these claims on behalf of the Class. Thus, under the PSLRA, there is a strong presumption that NYC Carpenters is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[3]

Finally, NYC Carpenters requests that the Court approve its choice of Bernstein Litowitz as Lead Counsel. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Bernstein Litowitz is a nationally recognized securities class action litigation firm that has recovered more than $33 billion for defrauded investors. Accordingly, the claims of the proposed Class will be well-protected by the approval

---

[2] NYC Carpenters' PSLRA-required Certification, which was initially filed with its complaint, is attached as Exhibit A to the Declaration of Gerald T. Drought in Support of the Unopposed Motion of New York City District Council of Carpenters Pension Fund for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel (the "Drought Decl."). In addition, a chart providing calculations of NYC Carpenters' losses is attached as Exhibit B to the Drought Decl. Charts providing calculations of Bremer's and Azpurua's losses are attached as Exhibits C and D, respectively, to the Drought Decl. References to "Ex. ___" are to exhibits accompanying the Drought Decl. All citations are omitted unless noted.

[3] As set forth in the certificate of conference in NYC Carpenters' motion, in recognition that NYC Carpenters has the largest financial interest and is otherwise adequate to represent the Class, Azpurua does not oppose the relief requested. In addition, Bremer takes no position on NYC Carpenters' motion. Defendants do not oppose consolidation of the Actions and do not take a position on the appointment of Lead Plaintiff or Lead Counsel.

of Bernstein Litowitz as Lead Counsel.

## FACTUAL BACKGROUND

SolarWinds provides software products used to monitor and manage networks, systems, and applications. ¶15.[4] The Company's flagship product is its Orion platform, which accounts for nearly half of SolarWinds' annual revenue. *Id*. Orion provides a suite of software products widely used by government agencies and Fortune 500 companies to monitor the health and performance of their information technology networks. *Id*.

Throughout the Class Period, the Company represented that it faced purported risks regarding its cybersecurity measures. ¶¶3, 17-28. SolarWinds also falsely touted its robust security controls and its commitment to prioritizing its customers' security and privacy concerns. ¶¶3, 29-31. In reality, however, the Company failed to maintain adequate cybersecurity measures and effective monitoring systems to protect against security breaches. ¶¶3, 32-37. As a result of these misrepresentations, shares of SolarWinds stock traded at artificially inflated prices throughout the Class Period.

The truth began to emerge on December 13, 2020, when *Reuters* reported that hackers had been spying on internal email communications at the U.S. Treasury and Commerce departments, and were believed to have gained access to the agencies' networks through SolarWinds software. ¶33. The next day, SolarWinds disclosed that hackers had breached its network and inserted malware into its Orion monitoring products, which existed in software updates released between March and June 2020 and may have compromised the networks of as many as 18,000 customers. ¶34. As a result of these disclosures, SolarWinds' stock price declined by approximately 17%,

---

[4] Citations to "¶___" refer to the complaint filed by NYC Carpenters. *See NYC Carpenters*, ECF No. 1.

from $23.55 per share to $19.62 per share. *Id*.

On December 15, 2020, *Reuters* reported that, in 2019, a security researcher had warned SolarWinds that anyone could access the Company's update server by simply using the password "solarwinds123." ¶35. Thus, according to the researcher, the SolarWinds breach "could have been done by any attacker, easily." *Id*. These disclosures caused SolarWinds' stock price to decline nearly 8%, from $19.62 per share to $18.06 per share. *Id*.

Then, on December 17, 2020, *Bloomberg News* reported that the networks of at least three state governments were compromised as a result of the SolarWinds breach. ¶36. In addition, the SolarWinds hackers infiltrated the networks of the U.S. Department of Energy and its National Nuclear Security Administration, which maintains the country's arsenal of nuclear weapons. *Id*. As a result of these disclosures, SolarWinds' stock price declined more than 19%, from $17.60 per share to $14.18 per share. *Id*.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," the Court should address the issue of consolidation prior to appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Actions present virtually identical factual and legal issues because they each assert claims under the Exchange Act against the same Defendants, and are premised upon substantially similar misrepresentations and omissions regarding the Company's cybersecurity controls. While the Actions assert the same claims against the same Defendants, *Bremer* and *Azpurua* assert a shorter class period than *NYC Carpenters*. These minor differences do not render consolidation inappropriate, however, because "there are also substantial commonalities, and [the Actions] involve 'overlapping [d]efendants and a common core of facts and legal issues.'" *In re*

*BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 432-33 (S.D. Tex. 2010). Accordingly, as all parties have acknowledged, consolidation is appropriate under Rule 42(a). *See Bremer*, ECF No. 13 ¶6.

**II.      NYC CARPENTERS SHOULD BE APPOINTED LEAD PLAINTIFF**

NYC Carpenters should be appointed Lead Plaintiff because it is the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA establishes a presumption that the "most adequate plaintiff" is the class member that filed a complaint or a timely motion to be appointed lead plaintiff, has the "largest financial interest" in the relief sought by the Class, and has made a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, NYC Carpenters is the "most adequate plaintiff" because it has the largest financial interest of any plaintiff and satisfies the typicality and adequacy requirements of Rule 23.

**A.      The PSLRA's Lead Plaintiff Procedural Prerequisites Have Been Met**

Under the PSLRA, the Court is to select a Lead Plaintiff from the Class members that either file a complaint or move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), B(iii)(I)(aa). On January 4, 2021, Bremer filed the first of the Actions, asserting a class period of February 24, 2020 through December 15, 2020. *See Bremer*, ECF No. 1 ¶1. That same day, Bremer's counsel published a notice alerting investors to the pendency of the action, which triggered the March 5, 2021 deadline to seek Lead Plaintiff appointment. *See* Ex. E. Then, on February 9, 2021, NYC Carpenters filed a substantially similar action asserting an expanded Class Period of October 18, 2018 through December 17, 2020. That same day, NYC Carpenters' counsel published a notice alerting investors to the expanded Class Period and reiterating the March 5, 2021 deadline. *See* Ex. F. No other Class member filed a motion seeking appointment as Lead Plaintiff by the March 5 deadline and, therefore, the only Class members

6

eligible for appointment as Lead Plaintiff are those that filed complaints. Accordingly, NYC Carpenters fulfilled the PSLRA's procedural requirements by filing its complaint.

### B.  NYC Carpenters Has the Largest Financial Interest

NYC Carpenters has, by far, the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts in this District have held that the approximate loss suffered is the most important factor in determining which plaintiff has the largest financial interest. *See, e.g., Giovagnoli v. GlobalSCAPE, Inc.*, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017). Here, NYC Carpenters incurred losses of $45,358 on its Class Period purchases of SolarWinds stock (*see* Exs. A-B)—a loss that is multiples larger than the loss incurred by Bremer and Azpurua (*see* Exs. C-D).[5]

Moreover, as illustrated in the table below, NYC Carpenters also has the largest financial interest based on each of the four factors some courts in this District consider in making that determination, including: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period." *See GlobalSCAPE,* 2017 WL 11220692, at *3.

| Lead Plaintiff Candidate | Shares Purchased | Net Shares Purchased | Net Funds Expended | Loss[6] |
|---|---|---|---|---|
| NYC Carpenters | 58,670 | 58,670 | $979,372 | $45,358 |

---

[5] Bremer's and Azpurua's financial interest is calculated based on the information provided in their respective certifications, which included transactions in SolarWinds during the shorter class period of February 24, 2020 through December 15, 2020. *See Bremer*, ECF No. 1 at 16; *Azpurua*, ECF No. 1-1.

[6] Although most courts agree that losses should be calculated using the last-in, first-out ("LIFO") method, the losses presented here are the same whether calculated on either a first-in, first-out ("FIFO") or LIFO basis. *See Strong v. AthroCare Corp.*, 2008 WL 11334942, at *6 (W.D. Tex. Dec. 10, 2008) (noting that "[m]any courts have followed [a] preference for the LIFO method of accounting over the FIFO method in securities fraud cases").

| Daniel Azpurua | 2,246 | 2,246 | $43,410 | $7,654 |
| Timothy Bremer | 40 | 40 | $858 | $222 |

As shown above, NYC Carpenters purchased over 25 times more SolarWinds shares and net shares, expended over 22 times more net funds, and incurred a loss nearly six times greater than the other plaintiffs. As such, NYC Carpenters has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.   NYC Carpenters Satisfies the Applicable Requirements of Rule 23

In addition to possessing the largest financial interest, NYC Carpenters satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At this stage, a plaintiff need only make "a preliminary showing" that it satisfies the adequacy and typicality requirements of Rule 23. *See GlobalSCAPE,* 2017 WL 11220692, at *3. Here, NYC Carpenters unquestionably satisfies both requirements.

NYC Carpenters' claims are typical of the claims of other Class members. Typicality exists where there are "no differences among the class members that would substantially alter the proof required for one member's claims versus another's." *Id*. Here, NYC Carpenters' and all other Class members' claims arise from the same course of events, and their legal arguments to prove Defendants' liability are virtually identical. Like all other Class members, NYC Carpenters purchased SolarWinds securities during the Class Period at prices artificially inflated as a result of Defendants' materially false and misleading statements and suffered damages thereby. *See id*.

NYC Carpenters similarly satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry examines the "zeal and competence of the representative's counsel, and [the] willingness and ability of the representative to take an active role in and control the litigation to protect the interests of absentees." *See GlobalSCAPE,* 2017

8

WL 11220692, at *4. NYC Carpenters satisfies these elements because its substantial financial stake in the litigation provides NYC Carpenters with the incentive to vigorously represent the Class' interests. NYC Carpenters fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and is willing and able to undertake these responsibilities. Moreover, NYC Carpenters' interests are perfectly aligned with those of other Class members and are not antagonistic in any way. NYC Carpenters' adequacy is also demonstrated by the fact that it has already taken significant steps to protect the interests of the Class and effectively prosecute this action. Indeed, NYC Carpenters, with its counsel, Bernstein Litowitz, conducted an investigation and filed a complaint that expands upon the allegations in the previously filed complaints, in order to address the full scope of Defendants' misconduct.

In addition, NYC Carpenters—a large, sophisticated institutional investor experienced in acting as a fiduciary—is exactly the type of investor Congress sought to empower, through the enactment of the PSLRA, to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Finally, NYC Carpenters has demonstrated its adequacy through its selection of Bernstein Litowitz—a highly qualified and experienced securities class action law firm—to serve as Lead Counsel. Accordingly, NYC Carpenters satisfies Rule 23's typicality and adequacy requirements.

### III. THE COURT SHOULD APPROVE NYC CARPENTERS' SELECTION OF LEAD COUNSEL

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless "necessary

9

to protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Court should approve NYC Carpenters' selection of Bernstein Litowitz to serve as Lead Counsel for the Class.  As detailed in its firm résumé, Bernstein Litowitz is among the preeminent securities class action law firms in the country and has extensive experience serving as lead counsel in securities class actions.  *See* Ex. G (Bernstein Litowitz Firm Résumé).  For example, Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—the second largest recovery in securities class action history—were obtained for the class.  Bernstein Litowitz also secured a resolution of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.).  More recently, Bernstein Litowitz obtained a $1.06 billion recovery (inclusive of attorneys' fees) in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.).

Other significant examples in which courts in this Circuit have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Cobalt Intl. Energy, Inc. Securities Litigation*, No. 14-cv-3428 (S.D. Tex.) ($335.3 million recovery); *Wyatt v. El Paso Corp.*, No. 02-cv-02717 (S.D. Tex.) ($285 million recovery); *In re Electronic Data Systems Corp. Securities Litigation*, No. 03-cv-00110 (E.D. Tex.) ($137.5 million recovery); and *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.*, No. 17-cv-0449 (E.D. Tex.) ($44 million recovery).  Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the reasons discussed above, NYC Carpenters respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint it as Lead Plaintiff; and (iii) approve its selection of Bernstein Litowitz as Lead Counsel for the Class.

DATED: March 9, 2021 Respectfully submitted,

**MARTIN & DROUGHT, P.C.**

*/s/ Gerald T. Drought*
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Weston Centre
112 E. Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
gdrought@mdtlaw.com
fburney@mdtlaw.com

*Liaison Counsel for Proposed Lead Plaintiff New York City District Council of Carpenters Pension Fund*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Hannah Ross, *pro hac vice* forthcoming
Avi Josefson, *pro hac vice* forthcoming
Scott R. Foglietta, *pro hac vice* forthcoming
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff New York City District Council of Carpenters Pension Fund and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I certify that on March 9, 2021, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Gerald T. Drought*
Gerald T. Drought
