IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|   |   |   |
|---|---|---|
| | § | |
| | § | |
| | § | |
| IN RE SOLARWINDS CORPORATION | § | MASTER FILE NO. 1:21-CV-138-RP |
| SECURITIES LITIGATION | § | |
| | § | |
| | § | |

**DEFENDANT KEVIN B. THOMPSON'S MOTION TO DISMISS
PLAINTIFF'S CONSOLIDATED COMPLAINT**

Peter L. Welsh (*pro hac vice forthcoming*)
C. Thomas Brown (*pro hac vice forthcoming*)
Kathryn E. Caldwell (*pro hac vice forthcoming*)
Patrick T. Roath (*pro hac vice forthcoming*)
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7865
peter.welsh@ropesgray.com

Edward R. McNicholas (*pro hac vice forthcoming*)
Frances Faircloth (*pro hac vice forthcoming*)
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4779
edward.mcnicholas@ropesgray.com

*Counsel for Defendant Kevin B. Thompson*

Paul R. Bessette
Texas Bar No. 02263050
Michael J. Biles
Texas Bar No. 24008578
Srimath Saliya Subasinghe
Texas Bar No. 24093226
Jessica England
Texas Bar No. 24105841
KING & SPALDING LLP

500 W. 2nd Street, Suite 1800
Austin, TX  78701
Tel:  (512) 457-2050
Fax:  (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
ssubasinghe@kslaw.com
jengland@kslaw.com

*Counsel for Defendant Kevin B. Thompson*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTUAL BACKGROUND.......................................................................................................... 2

LEGAL STANDARD...................................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.      Plaintiff Fails to Identify Any Purportedly False or Misleading Statement
        Made by Mr. Thompson. .................................................................................................... 6

II.     Plaintiff Does Not Adequately Plead a Strong Inference of Scienter
        as to Mr. Thompson. ........................................................................................................ 10

        A.      Plaintiff Offers *No* Factual Allegations about Mr. Thompson's
                Knowledge or Intent When Any Relevant Statement Was Made........................ 11

        B.      None of Plaintiff's Allegations Intended to Demonstrate
                Mr. Thompson's "Motive" Supports a Strong Inference of Scienter. .................. 15

                1.      Plaintiff's Allegations Regarding Mr. Thompson's Stock Sales
                        Do Not Lend Credence to the Complaint's Scienter Allegations ............ 15

                2.      Plaintiff's Proposed Motive for the Alleged Fraud – Short-Term
                        Gain Over Long-Term Security – Is Incoherent and Runs Counter
                        to a Common-Sense Understanding of Mr. Thompson's Interests........... 17

III.    Because Plaintiff Pleads No Primary Securities Violation, Count II Alleging a
        Violation of Section 20(a) of the Exchange Act Must Be Dismissed............................... 19

CONCLUSION.............................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ....................................................5

*Abrams v. Baker Hughes, Inc.*,
  292 F.3d 424 (5th Cir. 2002) ...............................................5, 18

*Alaska Elec. Pension Fund v. Asar*,
  768 Fed. App'x 175 (5th Cir. 2019) ...................................5, 16

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
  915 F.3d 975 (5th Cir. 2019) ...............................................6, 19

*Bach v. Amedisys, Inc.*,
  No. CV 10-00395-BAJ-RLB, 2016 WL 4443177 (M.D. La. Aug. 19, 2016)........................16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
  699 F. Supp. 2d 331 (D. Mass. 2010) ....................................17

*Coates v. Heartland Wireless Commc'ns, Inc.*,
  55 F. Supp. 2d 628 (N.D. Tex. 1999) ....................................18

*Colbert v. Rio Tinto PLC*,
  No. 17CIV8169ATDCF, 2019 WL 10960490 (S.D.N.Y. July 29, 2019) ..............................10

*In re. Dell Inc., Sec. Litig.*,
  591 F. Supp. 2d 877 (W.D. Tex. 2008)...............................16, 19

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) .....................................................7

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ...................................................10

*In re Heartland Payment Systems, Inc. Sec. Litig.*,
  No. 09–1043, 2009 WL 4798148 (D.N.J. Dec. 7, 2009).........................................13

*Hopson v. MetroPCS Commc'ns, Inc.*,
  No. 3:09-CV-2392-G, 2011 WL 1119727 (N.D. Tex. Mar. 25, 2011)....................16

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ...............................6, 12, 15, 18

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011).............................................................................................6

*Kerr v. Exobox Techs. Corp.*,
    No. CIV.A. H-10-4221, 2012 WL 201872 (S.D. Tex. Jan. 23, 2012)....................9

*Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) ...............................................................11, 12, 15

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ..............................................................................16

*In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig. Sec. Actions*,
    No. 19-MD-2879, 2021 WL 2407518 (D. Md. June 11, 2021)............................13

*Municipal Employees' Retirement System of Michigan v. Pier 1 Imports, Inc.*,
    935 F.3d 424 (5th Cir. 2019) .........................................................................5, 14

*Plaisance v. Schiller*,
    No. CV H-17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019)..............7, 9, 10

*In re Securities Litig. BMC Software, Inc.*,
    183 F. Supp. 2d 860 (S.D. Tex. 2001) ................................................................5, 6

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..................................................................... *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................11, 17

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994) .........................................................................12, 18

**Statutes**

15 USC § 78t(a) ..................................................................................................2, 6, 19

15 USC § 78j(b)........................................................................................................5, 6

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ...................................................................5, 9, 14

## PRELIMINARY STATEMENT

For the reasons stated in the Memorandum in Support of the SolarWinds Defendants' Motion to Dismiss the Consolidated Complaint for Failure to State a Claim (the "SolarWinds Motion to Dismiss"), the Complaint (Dkt. No. 26) fails to plead a viable claim against any defendant.  SolarWinds was the targeted victim of a cyberattack unparalleled in its sophistication, launched by a foreign state with the purpose of gaining access to the internal systems of SolarWinds' governmental customers.  The fact that this attack unfortunately succeeded despite SolarWinds' security controls does not amount to a violation of the federal securities laws— particularly where SolarWinds disclosed to investors the precise risk that materialized.  Plaintiff's scattershot allegations fall well short of satisfying the heightened pleading standards governing federal securities claims and, as a result, the Complaint should be dismissed in its entirety with prejudice.

Kevin Thompson, SolarWinds' former chief executive officer, fully joins and adopts the arguments in the SolarWinds Motion to Dismiss, which sets forth why the Complaint fails as to all defendants.  Mr. Thompson submits this separate motion and memorandum to underscore several arguments that distinctively militate in favor of dismissing the claims alleged against him.

At its core, the Complaint contains precious few facts—as opposed to conclusory allegations and innuendo—about Mr. Thompson's conduct, and what little detail it offers falls far short of pleading a securities law violation.  Three critical deficiencies in the Complaint support dismissal of the claims against Mr. Thompson.  ***First***, in the course of over 100 pages of allegations, the Complaint does not attribute a single specific false or misleading statement or omission to Mr. Thompson.  Nor does Plaintiff plead any particularized facts establishing any involvement by Mr. Thompson in generating or approving the SolarWinds Security Statement that is the centerpiece of Plaintiff's claims.  Instead, Plaintiff relies heavily on group pleading,

1

attributing statements broadly to "Defendants," a tactic that cannot succeed under controlling Fifth Circuit precedent.  This threshold problem requires dismissal of Mr. Thompson.  **Second**, Plaintiff has not pled any particularized facts sufficient to raise any inference of scienter on the part of Mr. Thompson, much less the requisite strong inference.  Indeed, the only scienter allegations applicable to Mr. Thompson rely on sales of company stock he made during the Class Period, especially in November 2020.  But the Complaint misleadingly fails to mention that those trades were made pursuant to a pre-established 10b5-1 plan.  Moreover, the "motive" attributed by Plaintiff to Mr. Thompson—that he would knowingly and intentionally leave the company vulnerable to a catastrophic security attack for "short-term profits"—is not remotely plausible, particularly given his substantial ongoing holdings.  **Third**, no claim under Section 20(a) lies against Mr. Thompson because the Complaint contains no well-pleaded factual allegations to support the requisite primary violation.

For all of these reasons, and for the additional reasons outlined in the SolarWinds Motion to Dismiss, Mr. Thompson respectfully asks this Court to dismiss all claims against him with prejudice.

## FACTUAL BACKGROUND

As outlined in the SolarWinds Motion to Dismiss, Plaintiff attempts to convert a sophisticated cyber-attack by a state actor into a securities fraud claim by stringing together a series of unrelated events to tell a story of fraud by hindsight.  Mr. Thompson incorporates by reference the Factual Background outlined in the SolarWinds Motion to Dismiss as if fully stated herein.  This section summarizes the allegations in the Complaint that specifically reference Mr. Thompson.

Kevin Thompson served as President and CEO of SolarWinds from 2010 to 2020.  *See* Compl. ¶ 15.  The hundred-page Complaint alleges few statements made directly by

2

Mr. Thompson.  *See id.* ¶¶ 33, 41, n.61.  One such statement *highlighted* the risks posed by cyberattacks: "[T]he threat landscape is getting worse, not better . . . [T]he reality is it's just going to get worse.  And we've got to give small businesses around the world the ability to protect themselves." *Id.* ¶ 33.  According to Plaintiff, Mr. Thompson publicly and directly acknowledged the existential risks posed by cyberattacks.  *See id.*  Plaintiff does not allege (in that paragraph or elsewhere) that any direct quote attributed to Mr. Thompson was false or misleading.

Lacking any statement made by Mr. Thompson himself, Plaintiff instead builds its case against him (and most other defendants) based on five "Company" statements:  (1) the Security Statement published on SolarWinds' website (Compl. ¶¶ 201-215); (2) a website page entitled "Security at SolarWinds" (*id.* ¶¶ 216-17); (3) a website page entitled "SolarWinds Trust Center" (*id.* ¶¶ 218-19); (4) statements made by Tim Brown on March 14, 2019 (*id.* ¶¶ 220-21); and (5) statements made by Mr. Brown on April 30, 2019 (*id.* ¶¶ 222-23).  As explained in the SolarWinds Motion to Dismiss, none of those statements passes muster as a materially false or misleading statement or omission.   Moreover, Plaintiff pleads no particularized facts demonstrating a legally cognizable nexus between Mr. Thompson and these five "Company" statements.  There is no allegation that he authored or made any of the statements; nor does Plaintiff plead any basis for concluding that Mr. Thompson was aware of or involved in Statements 2 through 5 at all.  And the only allegation purporting to connect Mr. Thompson to the Security Statement is a wholly conclusory allegation that he and Mr. Brown "reviewed and approved" it. The Complaint contains no well-pleaded detail to support that naked assertion.

The Complaint's scienter allegations also focus largely on "Defendants" generally, with little by way of allegations specific to Mr. Thompson.  Plaintiff's flagship scienter allegations relate to former employee Ian Thornton-Trump's presentation to certain non-party SolarWinds

employees in April 2017. Despite the conclusory allegation that SolarWinds "refused to implement the changes in Mr. Thornton-Trump's presentation because the Company's then-CEO, Kevin Thompson, did not want to spend the money to do so," *id.* ¶ 6, the Complaint is silent as to whether Mr. Thompson was aware of the presentation, let alone that he reviewed Mr. Thornton-Trump's recommendations and affirmatively rejected them. *See id.* ¶¶ 72-90. There is no allegation that Mr. Thornton-Trump ever interacted with Mr. Thompson at all. All Plaintiff alleges is that certain non-parties reported during the Thornton-Trump meeting their expectation that Mr. Thompson "did not like spending money." *Id.* ¶¶ 85, 141. Plaintiff's allegations that reference unnamed witnesses' interactions with Mr. Thompson merely recite that various sales employees and other individuals who heard Mr. Thompson speak occasionally did not, on those occasions, hear Mr. Thompson reference cybersecurity. *See id.* ¶¶ 91, 102, 142-44.

Finally, Plaintiff makes a handful of allegations about Mr. Thompson's compensation and stock trades. For instance, Plaintiff alleges that Mr. Thompson "sold over one million shares of his personal Solar Winds common stock" during the Class Period, including 700,000 shares over the course of three days in November 2020. *Id.* ¶ 192. Plaintiff attempts to paint the November 2020 sales as "particularly suspicious in light of the fact that SolarWinds was notified in September 2020 by Palo Alto Networks . . . of the cybersecurity breach ultimately revealed to investors three months later." *Id.* ¶ 195. Plaintiff critically omits that all of Mr. Thompson's November 2020 sales were made under a pre-existing Rule10b5-1 plan that was established in August, and were not discretionary sales.[1] They were also made after Mr. Thompson announced his resignation, and

---

[1] SOLARWINDSCORP, Statement of Changes in Beneficial Ownership (Form 4), at Ex. A (Oct. 27, 2020) ("Represents the number of shares withheld to satisfy the reporting person's tax obligations in connection with the vesting of restricted stock units."); SOLARWINDSCORP, Statement of Changes in Beneficial Ownership (Form 4), at Ex. B (Nov. 18, 2020); SOLARWINDSCORP,

he retained a sizable majority of his holdings of SolarWinds stock at the conclusion of the alleged Class Period.  *See* SolarWinds Motion at 3 & 27; Compl. ¶ 192.

## LEGAL STANDARD

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b–5 promulgated thereunder, "a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'"  *Municipal Employees' Retirement System of Michigan v. Pier 1 Imports, Inc.,* 935 F.3d 424, 429 (5th Cir. 2019) (citation omitted).  Such claims are subject to both Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled "with particularity" and the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").  *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).  Mere allegation of "facts" without providing any underlying support in the form of either confidential witnesses or documentary evidence will not suffice.  *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).  The PSLRA strengthens Rule 9(b)'s requirements and "requires

---

Statement of Changes in Beneficial Ownership (Form 4), at Ex. C (Nov. 20, 2020); SOLARWINDSCORP, Statement of Changes in Beneficial Ownership (Form 4), at Ex. D (Dec. 17, 2020) (correcting a November 18, 2020 Form 4, cited here, which "inadvertently reported the reporting person's sale… as an acquisition").  On a motion to dismiss, the court may take judicial notice of "not just documents named in Plaintiffs' complaint, but even documents that, if not named, are 'pertinent,' 'central,' or 'integral to [Plaintiffs'] claim.'" *In re Securities Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 883 (S.D. Tex. 2001) (quoting *Bryant v. Avado Brands*, 187 F.3d 1271, 1278 (11th Cir 1999)) (alterations in original)).  Because these Forms are the publicly-filed documents that reveal holdings and transactions by Mr. Thompson, and are thus the documents on which Plaintiff's allegations are likely based, they are fairly considered by this Court on a motion to dismiss under the incorporation-by-reference doctrine recognized in the Fifth Circuit.  *Id.* at 884; *see also Alaska Elec. Pension Fund v. Asar*, 768 Fed. App'x 175, 182-83 (5th Cir. 2019) (concluding the court may take judicial notice of SEC Forms 4 that are implicitly incorporated into a complaint, "congruent with the requirement that we consider plausible nonculpable explanations for the defendants' conduct).

a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.*

To state a claim for control-person liability under Section 20(a) of the Exchange Act, a plaintiff must allege a primary Section 10(b) violation and that the control person had possessed "the power to control" the primary violator. *BMC Software, Inc.*, 183 F. Supp. 2d at 869 n.17. Control person liability is derivative of a Section 10(b) securities claim, and therefore "cannot exist in the absence of a primary violation." *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 (5th Cir. 2019) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004)). Thus, if a court finds the pleadings under Section 10(b) and Rule 10b-5 inadequate to state a claim, a claim of control person liability must be dismissed. *See, e.g.*, *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 545 (5th Cir. 2008).

## ARGUMENT

The Complaint is legally defective in its entirety for each of the reasons advanced in the SolarWinds Motion to Dismiss. The Complaint's deficiencies are all the more acute as to Mr. Thompson because the Complaint: (1) identifies no allegedly false or misleading statements or omissions that were made by or attributable to Mr. Thompson; (2) fails to plead a "strong inference" that Mr. Thompson acted with scienter, including based on Mr. Thompson's stock sales; and (3) fails to plead a "control person" claim for causing SolarWinds to violate the securities laws because Plaintiff pleads no underlying primary violation. Each of these arguments independently supports dismissal of the two counts alleged against Mr. Thompson.

## I. Plaintiff Fails to Identify Any Purportedly False or Misleading Statement Made by Mr. Thompson.

To state a claim against Mr. Thompson, Plaintiff must satisfy the threshold requirement that he was the "maker" of an allegedly actionable statement. *Janus Capital Group, Inc. v. First*

*Derivative Traders*, 564 U.S. 135, 142 (2011) (explaining that in a 10b-5 claim, maker is defined as "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it").  Applying the Supreme Court's standard in *Janus*, courts in the Fifth Circuit have dismissed securities claims that fail to articulate "specific facts" tying a corporate officer to an unattributed corporate statement.  *Plaisance v. Schiller*, No. CV H-17-3741, 2019 WL 1205628, at *16 (S.D. Tex. Mar. 14, 2019); *see also Southland*, 365 F.3d at 365 ("[C]orporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded."); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) (same).  Here, Plaintiff fails to plead *any* "specific facts" plausibly attributing any of the challenged statements to Mr. Thompson.

The Complaint actually attributes only a few statements to Mr. Thompson, including:

> Defendant Thompson stated that "the threat landscape is getting worse, not better. My CIO likes to depress me, and she'll say all the time, 'It's just going to get worse.' I'm like, 'Great, thanks.  That's really what I needed to hear.'  But the reality is it's just going to get worse. And we've got to give small businesses around the world the ability to protect themselves.... [E]very small business [] actually has a heightened level of sensitivity right now to security issues because reality is if the small business gets hacked, they go out of business."

Compl. ¶ 33.  The Complaint does not allege that this statement (or any other directly attributed to Mr. Thompson) is false.  Nor could it, since, if anything, Mr. Thompson's alleged statement represents an additional disclosure to investors of the type of risk to SolarWinds' operations that ultimately materialized.

Aside from the few non-actionable statements actually attributed to him, Plaintiff's claim as to Mr. Thompson rests on the same five "Company" statements alleged generally as to all defendants:  the "Security Statement," two pages on the Company's website, and two statements allegedly made by Mr. Brown.  *See id.* ¶¶ 35-42.  Even assuming that any of those statements were

actually false or misleading—none was—Plaintiff fails to plead facts linking Mr. Thompson to the statements, much less establishing him as the "maker" of those statements as *Janus* requires, other than the naked assertion that they constitute "Defendants' statements."   In particular, the two statements allegedly made by Mr. Brown are not attributed or connected in any way to Mr. Thompson.  *Id*. ¶¶ 220-23.  Nor does Plaintiff allege that Mr. Thompson was involved in creating or directing the creation of the two website pages at issue.  *Id.* ¶¶ 216-19.

Plaintiff contends several categories of statements in the "Security Statement" that was posted to SolarWinds' website were false or misleading.  *See id.* ¶¶ 42-60, 201-15.  As an initial matter, despite the Complaint's cursory and unsupported assertions that the Security Statement was "[f]eatured prominently" on the website,[2] the Complaint includes no plausible factual allegation that the Security Statement was material to a reasonable investor.  *Id.* ¶ 3.  The Complaint does not allege (because it cannot) that the Security Statement was ever incorporated into any official SEC filing by SolarWinds, or that it was otherwise considered important by *any* investor.   Indeed, the Complaint makes virtually no allegations to support a finding of the materiality of any of the statements reflected in the Security Statement beyond flat repetition that the statements were "material" – a mere label and conclusion that this Court need not credit.

Moreover, and critically, the Complaint pleads no *facts* demonstrating any nexus between Mr. Thompson and the Security Statement.  There are no specific factual allegations supporting

---

[2] Plaintiff contends that "[a] link to access the Security Statement was included on every page of the Company's website" is conclusively rebutted by briefly visiting the Company's website. Compl. ¶ 37.  Far from being a prominent corporate statement, the Security Statement is accessible to a visitor to SolarWinds' website only by navigating to the very bottom of the Company's homepage, clicking on the phrase "Security Information" in small font, and then selecting the "Security Statement" link.  While a visitor to www.solarwinds.com could eventually navigate to the Security Statement by clicking through a number of hyperlinks, the Complaint's implication that SolarWinds visibly plastered the Security Statement to every page is belied by the straightforward experience of actually navigating the website.

the conclusion that Mr. Thompson—the CEO of an entity with thousands of employees and close to a billion dollars in net revenue in FY2019—exercised authority and control over the specific phrasing of statements about the Company's security operations, much less statements about this topic on the Company's website and never appeared in a corporate statement or in any filing with the SEC. The only threads supposedly tying Mr. Thompson to the challenged statements at issue are generic and conclusory statements contend that he had a role in approving the statements while failing to offer the specifics required under the PSLRA, Rule 9(b), and controlling case law. First, Plaintiff off-handedly asserts—without further support—that "[t]he Security Statement was reviewed and approved by Defendants Brown and Thompson." Compl. ¶ 37. The Complaint supplies none of the "who, what, when, where, and how" details required under Rule 9(b) and the PSLRA to substantiate this conclusory claim. Second, the Complaint offers boilerplate allegations that "Defendants" or an unidentified "executive officer of SolarWinds" authorized or approved false or misleading statements. *Id.* ¶¶ 236, 248.

Group pleading of this sort falls far short of the well-established pleading standard. Fifth Circuit precedent has long been clear that the particulars required under the PSLRA to link an officer to a company statement with no identified author "would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of the entire document or specific portion of the document containing the statement." *Southland*, 365 F.3d at 365. Building on this holding, and the Supreme Court's holding in *Janus*, courts in the Fifth Circuit have dismissed securities claims that attempt to hold corporate officers liable for statements they did not make without pleading "specific facts" rendering attribution plausible. *Plaisance*, 2019 WL 1205628, at *42 (dismissing "attempt to hold Griffin responsible for unattributed corporate statements in the press releases based solely on his title as CFO"); *Kerr*

*v. Exobox Techs. Corp.*, No. CIV.A. H-10-4221, 2012 WL 201872, at *11–12 (S.D. Tex. Jan. 23, 2012) (finding complaint "does not provide sufficient allegations about the letters and attachments to support a finding that [defendant] 'made' any statements in [Company's] public filings").

Plaintiff does not (and cannot) establish that Mr. Thompson was the "maker" of the Security Statement because there is no articulation of any "specific facts" linking him directly to the Security Statement. Plaintiff does not allege that Mr. Thompson ever endorsed the Security Statement through a signature, nor does the Complaint offer any details demonstrating whether or to what extent Mr. Thompson had a role in the development or publication of the Security Statement. The Complaint appears to assume attribution "based solely on [Mr. Thompson's] title" of CEO. *Plaisance*, 2019 WL 1205628, at *42. As courts in and outside of the Fifth Circuit have repeatedly held, this is insufficient, and there is no basis in the securities laws for concluding that the CEO is personally liable for every word that appears on the SolarWinds website. *See, e.g., Colbert v. Rio Tinto PLC*, No. 17CIV8169ATDCF, 2019 WL 10960490, at *6 (S.D.N.Y. July 29, 2019) (observing that "Plaintiff cites no authority" for the proposition the corporate title alone equates to attribution, a theory "which would subject virtually any corporate executive to personal liability for every statement on a company's website," and holding that "[i]ndeed, courts have held the opposite" (citations omitted)). This deficiency alone requires dismissal with prejudice of the claims against Mr. Thompson.

## II.   Plaintiff Does Not Adequately Plead a Strong Inference of Scienter as to Mr. Thompson.

It is Plaintiff's burden to plead particularized facts that give rise to a "strong inference" of scienter as to each defendant separately. *See, e.g., Goldstein v. MCI WorldCom*, 340 F.3d 238, 249 (5th Cir. 2003) ("Under the PSLRA, it is not enough to particularize false statements or fraudulent omissions made by a corporate defendant. Plaintiffs must also particularize intent

allegations raising a 'strong inference of scienter.'").  "Scienter in a securities fraud case connotes an intent to deceive, manipulate, defraud or severe recklessness," which "is marked by an extreme departure from the standard of ordinary care," "is limited to highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence," and requires "a danger of misleading . . . which is either known to the defendant or is so obvious that the defendant must have been aware of it."  *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016) (citations omitted).  In evaluating the sufficiency of the pleading, this Court accepts as true all alleged *facts* (but not conclusions or mere recitation of the elements of the claim), but it need not draw all inferences in Plaintiff's favor; instead it weighs the inferences offered by Plaintiff against opposing inferences of innocence. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007) (holding a securities fraud claim survives dismissal "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference").

Here, the Complaint is devoid of factual allegations supporting an inference that *any* defendant acted with scienter to deceive investors into believing that SolarWinds was immune to sophisticated, criminal cyberattacks, *see* SolarWinds Mot. at 2, including Mr. Thompson.  And, although Plaintiff attempts to bolster the weak scienter allegations with innuendo about the financial incentives and motives that purportedly guided Mr. Thompson, the implausible inferences encouraged by the Complaint do not satisfy the stringent scienter pleading requirements of the PSLRA as outlined by the Supreme Court in *Tellabs*.

### A.    Plaintiff Offers *No* Factual Allegations about Mr. Thompson's Knowledge or Intent When Any Relevant Statement Was Made.

Adequately pleading scienter requires particular factual allegations establishing *each defendant*'s contemporaneous knowledge of undisclosed information that conflicts with or

contradicts his or her challenged statements.  *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) (holding that scienter was not adequately pled where the complaint "failed to allege any facts that show that [defendant's] statements were belied by his actual knowledge of contradictory facts").  Plaintiff is not entitled to rest on Mr. Thompson's having been CEO of the Company, or on broad allegations about what others at SolarWinds may have known at various times.  There is no basis in law or in fact for imputing all alleged knowledge of all employees directly to the CEO, and to do so would vitiate the PSLRA's pleading requirements.  *See Diodes*, 810 F.3d at 957 (holding the court must "focus[] on the state of mind of the corporate officials who make, issue, or approve the statement rather than the 'collective knowledge of all the corporation's officers and employees'" (quoting *Indiana Elec.*, 537 F.3d at 533)).  Thus, the relevant inquiry for determining scienter here is what Plaintiff says Mr. Thompson knew and when—not what "the Company" generally, or some other executive, knew.  But even if Mr. Thompson had made or directed any of the statements at issue in Plaintiff's Complaint—and he did not—the complaint is devoid of allegations demonstrating his contemporaneous knowledge about the false or misleading nature of the contents of the statements when the statements were made.

Plaintiff relies heavily on allegations about a 2017 presentation by Mr. Thornton-Trump to three non-party employees in a vain attempt to demonstrate Defendants' scienter.  For all of the reasons outlined in the SolarWinds Motion to Dismiss, the Thornton-Trump allegations do not support a strong inference of scienter as to any defendant—particularly since the presentation is dated eighteen months before the alleged class period even commences.  *See* SolarWinds Mot. at 2, 15-20.  Those allegations fail specifically as to Mr. Thompson for the additional reason that Plaintiff does not even attempt to plead facts demonstrating that Mr. Thompson was actually aware

of the presentation or its alleged contents, either in 2017 or at any subsequent time.  In all of the dozens of allegations about Mr. Thornton-Trump's presentation, Mr. Thompson is mentioned only to the extent the Complaint alleges that certain other employees allegedly reported during the presentation what they surmised Mr. Thompson's reaction to the presentation's recommendations *would* be.  *See* Compl. ¶¶ 85, 141, 181-82.  Absent any allegation that Mr. Thompson knew about Mr. Thornton-Trump's critiques at all, Plaintiff cannot use them to raise an inference of scienter as to Mr. Thompson.  *See Southland*, 365 F.3d at 383 (finding scienter allegation "unpersuasive" where it did not identify "what any particular individual knew or was severely reckless in not knowing" when the challenged statement was made); *In re Heartland Payment Systems, Inc. Sec. Litig.*, No. 09–1043, 2009 WL 4798148, at *8 (D.N.J. Dec. 7. 2009) (finding scienter not pled absent allegation "concerns [about cybersecurity] were ever relayed to any of the Defendants").

Nor do any of Plaintiff's remaining factual allegations raise a strong inference of scienter as to Mr. Thompson.  The Complaint repeatedly alleges that certain unidentified former employees—most of whom worked in sales (not security) functions or had no direct interaction with Mr. Thompson beyond hearing him present to large groups of employees—never heard Mr. Thompson discuss cybersecurity as a priority.  Compl. ¶¶ 91, 102, 142-44.  But Plaintiff offers no plausible allegation supporting inferences that Mr. Thompson (1) never *actually* devoted attention to cybersecurity as part of his job function; or (2) knew of or was severely reckless to the alleged falsity of statements made on SolarWinds' website or by Mr. Brown.  There is a vast factual and logical chasm between the supposed absence of commentary by Mr. Thompson in certain limited interactions, on the one hand, and a showing of his intent to deceive investors in wholly unrelated statements on the Company's website, on the other.  *In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig. Sec. Actions*, No. 19-MD-2879, 2021 WL 2407518, at *35 (D. Md. June 11,

2021) (finding no support for scienter where "none of the Confidential Witness allegations are regarding what any of the Individual Defendants actually knew about Marriott's cybersecurity or the falsity of any statements").

Finally, Plaintiff offers some conclusory allegations that Mr. Thompson "sacrificed cybersecurity to boost short-term profits," Compl. ¶ 8, but those allegations also fall far short of the specificity required under the PSLRA and Rule 9(b). *See also id.* ¶¶ 140 (alleging, without further detail, that Mr. Thompson was "singularly focused on cost-cutting and short-term profits, not cybersecurity"), 147 (alleging, based on statements of unidentified employees interviewed for the *New York Times*, that Mr. Thompson examined "every part of the business" for cost savings and "common security practices were eschewed because of their expense," but failing to identify any specific security practice that was eliminated at Mr. Thompson's direction). Plaintiff's reliance on generalized allegations that Mr. Thompson directed unspecified changes that impacted cybersecurity are too vague to support any inference of scienter based on Mr. Thompson's conduct. *See, e.g.*, *Pier 1 Imports, Inc.*, 935 F.3d at 433 (vague allegation "that there were amorphous 'inventory problems'" but that did "not explain what those problems were" did not support an inference of scienter). And Plaintiff fails to connect the only quasi-specific change allegedly made at Mr. Thompson's direction—that he purportedly cut costs by moving engineering offices to Eastern Europe," Compl. ¶ 148—to a strong inference of scienter. There is no allegation of when that change was made (or, critically, whether it preceded any of the statements), nor any detail that supports a plausible inference that locating the Company's engineering offices in Eastern Europe equates to de-prioritizing cybersecurity.

The upshot is that Plaintiff's 100-page Complaint is silent on facts that even plausibly demonstrate that Mr. Thompson knew any particular statement identified in the Complaint was

false or misleading, much less facts that lead to a strong inference that he intended for it to be false or that he was severely reckless to its falsity.

    **B.**    **None of Plaintiff's Allegations Intended to Demonstrate Mr. Thompson's "Motive" Supports a Strong Inference of Scienter.**

Only "appropriate allegations of motive and opportunity [ ] meaningfully enhance the strength of the inference of scienter." *Southland*, 365 F.3d at 368 (5th Cir. 2004) (quotation omitted). "To demonstrate motive, plaintiffs must show concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Indiana Elec.*, 537 F.3d at 543 (5th Cir. 2008) (quotation omitted). Here, the allegations based on Mr. Thompson's stock sales and supposed interest in short-term gains do nothing to overcome the deficiencies in Plaintiff's motive allegations.

    **1.**    **Plaintiff's Allegations Regarding Mr. Thompson's Stock Sales Do Not Lend Credence to the Complaint's Scienter Allegations.**

As the SolarWinds Motion to Dismiss explains, at the very most, well-pleaded factual allegations showing an insider stock sale that is "suspicious" in timing or amount can *enhance* an inference of scienter arising from other allegations. SolarWinds Mot. at 26 (citing *Diodes*, 810 F.3d at 960). Because none of Plaintiff's other allegations gives rise to any inference of Mr. Thompson's scienter (for reasons discussed in the SolarWinds Motion and herein), there is nothing for the stock sales allegations to enhance.

But even if these allegations were somehow relevant to the scienter inquiry, Plaintiff fails to allege facts demonstrating that the stock sales were suspicious in timing or in amount. *See* SolarWinds Mot. at 3-4, 26-9. In particular, the Complaint obscures that the stock sales at issue—including all sales that Plaintiff deems suspicious in November 2020 due to the purported temporal proximity to the alleged notice by Palo Alto Networks of an attempted breach—were executed according to a 10b5-1 plan that was put in place in August 2020, before SolarWinds allegedly

received notice from Palo Alto in September.  *See* Compl. ¶¶ 192-95; *supra* note 1 (citing Exs. A-D).  The "plausible, nonculpable explanation" for the trades is that they were made pursuant to an agreement "which allows corporate insiders to set a schedule by which to sell shares over time, and which can raise an inference that the sales were pre-scheduled and non-suspicious."  *Asar*, 768 Fed. App'x at 181 (quotations and citations omitted).  Courts in the Fifth Circuit and beyond have held that this Court may properly look to SEC Form 4 to weigh the parties' explanations for trades to determine which is more plausible.  *Id.*; *see also Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) ("When deciding a motion to dismiss a claim for securities fraud on the pleadings, a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC."); *Hopson v. MetroPCS Commc'ns, Inc.*, No. 3:09-CV-2392-G, 2011 WL 1119727, at *14 n.14 (N.D. Tex. Mar. 25, 2011) ("[T]he court may properly consider [the 10b5-1 trading] plans, and the relevant Form 4s, when weighing the competing inferences regarding the insider sales.").

It is neither suspicious nor unusual for Mr. Thompson to sell about 25% of more than 3 million shares he held in SolarWinds in November 2020, shortly ahead of his previously-announced departure from the Company.  *See* SolarWinds Mot. at 27.  Indeed, many courts in the Fifth Circuit and beyond have held that sales of similar magnitude were not suspicious.  *See, e.g.*, *Southland*, 365 F.3d at 368–69 (finding executives' sales of 26.62% and 33.27% of holdings in context of a secondary offering do not raise a strong inference of scienter); *In re. Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 897 (W.D. Tex. 2008) (same for executives' sales of 29.61%, 13.65%, and 49.33% over long class period); *Bach v. Amedisys, Inc.*, No. CV 10-00395-BAJ-RLB, 2016 WL 4443177, at *12 (M.D. La. Aug. 19, 2016) (finding COO's sale of "most" of his stock holdings five weeks prior to his resignation did not raise an inference of scienter, even where the sale

exceeded his combined sales over the previous decade).  In fact, the most plausible inference arising from Plaintiff's allegation that Mr. Thompson retained about 75% of the stock he owned in November 2020—when he and the Company were supposedly on notice that a cyberattack had already occurred—directly undercuts Plaintiff's motive theory.  *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 699 F. Supp. 2d 331, 346 (D. Mass. 2010) ("[T]his court finds that [the CFO's] retention of over 70% of his total holdings [combining shares and options] greatly diminishes any inference of fraudulent intent.").

Coupling these reasons with those outlined in the SolarWinds Motion, the stock sales lend no support to Plaintiff's scienter allegations.  This Court need not credit Plaintiff's extraordinary and illogical inference that scheduled and predictable sales of stock demonstrate a culpable state of mind with respect to entirely unrelated statements made, in many cases, months or years before the execution of such sales.

2.      **Plaintiff's Proposed Motive for the Alleged Fraud – Short-Term Gain Over Long-Term Security – Is Incoherent and Runs Counter to a Common-Sense Understanding of Mr. Thompson's Interests.**

The Complaint's allegations regarding Mr. Thompson's supposed motive to obtain short-term gains make no sense.  Plaintiff in effect asks this Court to assume that Mr. Thompson (1) sold some of his personal shares in the Company based on his alleged knowledge of an imminent and existential threat of a cybersecurity attack, while retaining the lion's share of his equity stake; and (2) not only did nothing to prevent such an attack, but also took steps to make it more likely by slashing cybersecurity protections in the name of penny-pinching, putting at risk significantly more equity value than he had realized in the sale.  This defies common sense, and comes nowhere near supporting an inference of scienter, much less a "strong" inference as *Tellabs* requires.

To credit Plaintiff's motive allegations, the Court would have to accept that Mr. Thompson held millions of shares of SolarWinds stock over a period of several years while knowing that the

Company was, at every moment, running an imminent risk of a colossal cyberattack that could destroy a huge and unpredictable portion of the Company's value.  There is no allegation—because, of course, there can be none—that Mr. Thompson or the other defendants knew in advance *when* such an attack would occur.  Plaintiff's "short-term profits over long-term security" theory does not present the required cogent and compelling inference of scienter where it would require the Court to assume Mr. Thompson knowingly and intentionally gambled with tens of millions of dollars of his own personal wealth to save the Company an indeterminate amount in cybersecurity preparedness.

Apparently recognizing this infirmity, Plaintiff attempts to prop up its motive allegations by pointing out that Mr. Thompson's compensation was tied to the Company's adjusted Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA").  Compl. ¶ 197 (alleging this compensation structure demonstrates a "motive to mislead investors as to SolarWinds' cybersecurity efforts and expenditures, while eschewing such expenditures in favor of short-term profits").  But courts have consistently held that such run-of-the-mill incentive compensation cannot establish a motive to commit fraud sufficient to support a strong inference of scienter.  *See, e.g.*, *Indiana Elec.*, 537 F.3d at 544 ("[T]his court has held that incentive compensation 'can hardly be the basis on which an allegation of fraud is predicated.'" (quoting *Tuchman*, 14 F.3d at 1068)); *Abrams*, 292 F.3d at 434 ("The plaintiffs allege that the defendants were motivated to commit fraud by the need to raise capital, the desire for enhanced incentive compensation and the desire to sell stock at inflated prices.  This court has held that similar allegations were insufficient to support an inference of scienter."); *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F. Supp. 2d 628, 644 (N.D. Tex. 1999) ("[A]ssertions that would almost universally be true, such as the desire to raise capital, or …economic self-interest… are inadequate of themselves to plead motive.")

(internal citations omitted)).  As another court in this District held, "[t]he fact executives at corporations base their compensation on the performance of the company (as measured partly by revenue-related numbers) is not surprising or suspicious, and does not lead to an inference of fraudulent intent."  *Dell Inc.*, 591 F. Supp. 2d at 898-99.  Thus, Plaintiff's allegations about Mr. Thompson's incentive compensation fails to support any claim of scienter.

### III.   Because Plaintiff Pleads No Primary Securities Violation, Count II Alleging a Violation of Section 20(a) of the Exchange Act Must Be Dismissed.

Claims for control-person liability under Section 20(a) are "secondary only and cannot exist in the absence of a primary violation."  *Flotek Indus., Inc.*, 915 F.3d at 986 (quoting *Southland*, 365 F. 3d at 383).  Where Plaintiff fails to plead a cognizable underlying claim for an Exchange Act violation by a *controlled* person, Plaintiff cannot plead an independent claim under Section 20(a) against the allegedly *controlling* person.  *See id.* ("Because Plaintiffs have not established a primary violation, their Section 20(a) claims fail.").  For all of the reasons outlined herein and in the SolarWinds Motion to Dismiss, Plaintiff failed to plead any primary violation. The claim under Section 20(a) of the Exchange Act must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Thompson's motion to dismiss with prejudice.

| | |
|---|---|
| */s/ Peter L. Welsh* | */s/ Michael J. Biles* |
| Peter L. Welsh (*pro hac vice forthcoming*) | Paul R. Bessette |
| C. Thomas Brown (*pro hac vice forthcoming*) | Texas Bar No. 02263050 |
| Kathryn E. Caldwell (*pro hac vice forthcoming*) | Michael J. Biles |
| Patrick T. Roath (*pro hac vice forthcoming*) | Texas Bar No. 24008578 |
| Prudential Tower, 800 Boylston Street | Srimath Saliya Subasinghe |
| Boston, MA 02199-3600 | Texas Bar No. 24093226 |
| Tel: (617) 951-7865 | Jessica England |
| peter.welsh@ropesgray.com | Texas Bar No. 24105841 |
| ROPES & GRAY LLP | KING & SPALDING LLP |

Edward R. McNicholas (*pro hac vice forthcoming*)
Frances Faircloth (*pro hac vice forthcoming*)
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4779
edward.mcnicholas@ropesgray.com

*Counsel for Defendant Kevin B. Thompson*

500 W. 2nd Street, Suite 1800
Austin, TX  78701
Tel:  (512) 457-2050
Fax:  (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
ssubasinghe@kslaw.com
jengland@kslaw.com

*Counsel for Defendant Kevin B. Thompson*

## CERTIFICATE OF SERVICE

I certify that on August 2, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

/s/Michael J. Biles
Michael J. Biles