**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| **IN RE SOLARWINDS CORPORATION** | § | **Civil Action No. 1:21-cv-00138-RP** |
| **SECURITIES LITIGATION** | § | |
| | § | **ORAL ARGUMENT REQUESTED** |
| | § | |

**DEFENDANT THOMA BRAVO, LP'S MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

Anna G. Rotman
Texas Bar No. 24046761
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone:  (713) 835-3600
Facsimile:  (713) 835-3601
anna.rotman@kirkland.com

Sandra C. Goldstein (*pro hac vice*)
Stefan Atkinson (*pro hac vice*)
Byron Pacheco (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
byron.pacheco@kirkland.com

*Attorneys for Defendant
Thoma Bravo, LP*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ......................................................................................................................... 5

I.      PLAINTIFFS FAIL TO ESTABLISH THAT THOMA BRAVO HAD ACTUAL CONTROL OVER THE COMPANY, OR THE ABILITY TO CONTROL THE SPECIFIC CONDUCT AT ISSUE. ................................................ 5

         A.     Thoma Bravo's minority ownership interests are insufficient to confer control-person liability. ................................................................................ 6

         B.     Plaintiffs' allegations regarding Thoma Bravo's appointment of directors fail to state a control-person claim. ....................................................... 9

         C.     Plaintiffs' allegations regarding Thoma Bravo's investment strategy are insufficient to state a control-person claim. ........................................... 12

         D.     Plaintiffs' allegations that SolarWinds is a "controlled company" do not state a control-person claim. ......................................................... 14

II.     PLAINTIFFS FAIL TO ESTABLISH AN UNDERLYING SECURITIES VIOLATION. ............................................................................................................. 16

CONCLUSION ...................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
   915 F.3d 975 (5th Cir. 2019) ..................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................4, 5

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
   No. 19-cv-00024 (DLI)(LB), 2021 WL 2646353 (E.D.N.Y. June 28, 2021)..........................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................4, 5

*Carlton v. Cannon*,
   184 F. Supp. 3d 428 (S.D. Tex. 2016) ..................................................13

*Carlton v. Cannon*,
   No. H-15-012, 2016 WL 3959164 (S.D. Tex. July 22, 2016) ............................6, 12

*Chyba v. EMC Mortg. Corp.*,
   450 F. App'x 404 (5th Cir. 2011) ..................................................8

*City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am., N.A.*,
   No. 19-725-SDD-RLB, 2021 WL 1321302 (M.D. La. Apr. 8, 2021) ......................16

*Dartley v. ErgoBilt Inc.*,
   No. CIV A. 398CV1442M, 2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ...........................15

*Dennis v. Gen. Imaging, Inc.*,
   918 F.2d 496 (5th Cir. 1980) ..................................................6

*Fouad v. Isilon Systems, Inc.*,
   No. C07-1764 MJP, 2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ................8, 9

*G.A. Thompson & Co. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981) ..................................................7, 12

*Gilbert v. Perlman*,
   No. 2018-0453-SG, 2020 WL 2062285 (Del. Ch. Apr. 29, 2020) .........................16

*Gurganus v. Furniss*,
   No. 3:15-cv-03964-M, 2016 WL 3745684 (N.D. Tex. July 13, 2016)......................8

*Heck v. Triche,*
    775 F.3d 265 (5th Cir. 2014) ..................................................................6, 12

*Hux v. S. Methodist Univ.,*
    819 F.3d 776 (5th Cir. 2016) ......................................................................14

*In re ArthroCare Corp. Secs. Litig.,*
    726 F. Supp. 2d 696 (W.D. Tex. 2010)........................................................5, 6

*In re: Cannavest Corp. Secs. Litig.,*
    307 F. Supp. 3d 222 (S.D.N.Y. 2018)...........................................................11

*In re Dynegy, Inc. Secs. Litig.,*
    339 F. Supp. 2d 804 (S.D. Tex. 2004) ......................................................12, 13

*In re Franklin Bank Corp. Secs. Litig.,*
    782 F. Supp. 2d 364 (S.D. Tex. 2011) ............................................................6

*In re Global Crossing Secs. Litig.,*
    No. 02 Civ. 910(GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)....................10

*In re Kosmos Energy Ltd. Secs. Litig.,*
    955 F. Supp. 2d 658 (N.D. Tex. 2013) .................................................... *passim*

*In re Six Flags Entm't. Corp. Derivative Litig.,*
    No: 4:20-cv-00262-P, 2021 WL 1662466 (N.D. Tex. Apr. 28, 2021) ...................15

*In re VeriFone Secs. Litig.,*
    11 F.3d 865 (9th Cir. 1993) .........................................................................16

*Janus Capital Grp. v. First Derivative Traders,*
    564 U.S. 135 (2011)......................................................................................5

*LLDVF, L.P. v. Dinicola,*
    No. 09-1280 (JLL), 2010 WL 3210613 (D.N.J. Aug. 12, 2010) .............................8

*Lovelace v. Software Spectrum Inc.,*
    78 F.3d 1015 (5th Cir. 1996) .......................................................................14

*McNamara v. Bre-X Mins. Ltd.,*
    46 F. Supp. 2d 628 (E.D. Tex. 1999).............................................................7

*Paul F. Newton & Co. v. Tex. Commerce Bank,*
    630 F.2d 1111 (5th Cir. 1980) .......................................................................5

*Plotkin v. IP Axess Inc.,*
    407 F.3d 690 (5th Cir. 2005) ........................................................................5

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
    119 A.3d 44 (Del. Ch. 2015)...................................................................................15

*Washington v. U.S. Dep't of Hous. & Urban Dev.*,
    953 F. Supp. 762 (N.D. Tex. 1996) .........................................................................8

*Zishka v. Am. Pad & Paper Co.*,
    No. CIV.A.3:98-CV-0660-M, 2001 WL 1748741 (N.D. Tex. Sept. 28, 2001).........................6

**Statutes**

15 U.S.C. § 77a, *et seq.* ("Securities Act") ...................................................................6

15 U.S.C. § 78t(a), *et seq.* ("Exchange Act") .................................................... *passim*

**Rules**

Federal Rule of Civil Procedure Rule 8 ..........................................................................8

Federal Rule of Civil Procedure Rule 12 ....................................................................1, 4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Thoma Bravo, LP ("Thoma Bravo" or "Defendant") hereby moves to dismiss Lead Plaintiff New York City District Council of Carpenters Pension Fund's and others' ("Plaintiffs") claim against Thoma Bravo contained in the Consolidated Class Action Complaint (the "Complaint"), for failure to state a claim upon which relief may be granted.

## **PRELIMINARY STATEMENT**

In their Consolidated Class Action Complaint, Plaintiffs have now dragged third parties into this litigation, including Thoma Bravo, which had no involvement with the allegedly misleading or false statements alleged against SolarWinds Corporation ("SolarWinds" or "Company").  Nowhere in the two hundred and seventy paragraphs of the Complaint are there allegations that Thoma Bravo wrote, made, authored, disseminated, influenced, directed, or otherwise participated in the alleged securities violations, or even had the ability to control the alleged misconduct by SolarWinds.  Rather, Plaintiffs' only basis for suing Thoma Bravo is a claim that it "controls" SolarWinds under Section 20(a) of the Exchange Act, based on the fact that Thoma Bravo, a private equity firm, held a *minority* equity position in SolarWinds, which came with the right to appoint three of the Company's ten directors.  Recognizing that minority ownership and appointment of directors are not enough to claim "control," Plaintiffs cobble together generic assertions about how private equity firms operate, and then fabricate *majority* control over SolarWinds by aggregating Thoma Bravo's interests with those of Silver Lake, an entirely separate and independent private equity firm that also has invested in SolarWinds.  But there is no basis in law to aggregate the two separate and independent private equity firms; and control-person liability requires much more than the minority ownership interests alleged here.  To state a control-person claim, there must be particularized factual allegations of actual power over

the controlled company, or at the very least, of some ability to control the specific transaction or activity upon which the underlying alleged securities violations are based.

Plaintiffs' control-person claim against Thoma Bravo falls far short of this standard.  In essence, Plaintiffs propose to expand control-person liability to anyone who makes significant investments in a public company, despite no allegation that they controlled, or had the ability to control, any securities-related wrongdoing.  That is not the law.  Section 20(a) was never intended to reach all persons with significant holdings in a company.  Rather, the statute is targeted at wrongdoers who might otherwise avoid liability by using others as instrumentalities to carry out their schemes.  Nothing in Plaintiffs' Complaint comes close to suggesting that Thoma Bravo did such a thing.  Plaintiffs' sole claim against Thoma Bravo must be dismissed.

## STATEMENT OF FACTS[1]

SolarWinds is a publically traded company that is a leading provider of information technology management software.  Compl. ¶ 1.  Between October 18, 2018 and December 17, 2020 (the "Class Period"), SolarWinds and some of the individual defendants (not Thoma Bravo) purportedly made public statements about SolarWinds' software and cybersecurity program.  *See id.* ¶ 2.  On December 14, 2020, SolarWinds announced that it was the victim of a cyberattack (the "Cyberattack").  *Id.* ¶¶ 2, 226.

Plaintiffs allege that certain public statements made by SolarWinds and the individual defendants before the Cyberattack were false and misleading.  *See, e.g.*, *id.* ¶¶ 2, 113.  Plaintiffs further allege that SolarWinds had "deficient cybersecurity practices" and that SolarWinds was aware of these deficiencies even prior to the Class Period, but did not disclose them to customers

---

[1]     Except where otherwise indicated, the facts discussed herein are drawn from the Complaint, which are assumed to be true only for purposes of this Motion.  Thoma Bravo does not admit any of the allegations in the Complaint.

and investors.  *See id.* ¶¶ 6-8.  Plaintiffs claim that SolarWinds purported to follow a "Security Statement" that detailed its cybersecurity practices, but was not in fact following it.  *See id.* Plaintiffs conclude that SolarWinds' supposed failure to follow the Security Statement made it vulnerable to the Cyberattack.  *See id.* ¶ 8.

On June 1, 2021, Plaintiffs filed the instant Complaint adding as defendants Thoma Bravo and Silver Lake[2], two private equity firms that separately invested in SolarWinds.  *See id.* ¶¶ 18-19.  Thoma Bravo is a leading private equity investment firm that invests in many software and technology companies.  Silver Lake is also a private equity firm that has investments in technology companies.  Thoma Bravo and Silver Lake are entirely independent and separate private equity firms.  They are not affiliates, parent-subsidiaries, or portfolio companies of one another, nor do they share any other form of corporate relationship.  Plaintiffs have not alleged anything to the contrary.  For purposes of Plaintiffs' Section 20(a) claim, their only apparent commonality is that they are both private equity firms that invested in SolarWinds.  *See id.* ¶ 24.

In 2016, Thoma Bravo and Silver Lake made investments in SolarWinds, and purportedly helped to initiate a "take private" transaction for SolarWinds.  *See id.* ¶¶ 24, 27.  Two years later, in 2018, Plaintiffs allege that Thoma Bravo and Silver Lake worked again to make SolarWinds a publicly traded corporation.  *See id.* ¶ 24.  Since 2016, and during the Class Period, Thoma Bravo, with its affiliates, purportedly owned approximately 40% of SolarWinds' shares and appointed three directors on SolarWinds' ten-member board of directors.  *See id.* ¶¶ 20, 267.  And Silver Lake, with its affiliates, also purportedly owned approximately 40% of SolarWinds' shares and appointed three directors to SolarWinds' ten-member board of directors.  *See id.* ¶¶ 19, 267.

---

[2]     Defendants Silver Lake Group L.L.C. and Silver Lake Technology Management, L.L.C. are referred to herein as "Silver Lake."

Plaintiffs allege that SolarWinds "sacrificed cybersecurity to generate short-term profits for [their] principal owners," Thoma Bravo and Silver Lake.  *Id*. ¶ 2.  They allege that Thoma Bravo and Silver Lake generally deploy a strategy where they identify an undervalued company and take it private, cut costs and grow revenue, then take the company public again.  *Id*. ¶¶ 25-28.  They allege that this supposed strategy was implemented at SolarWinds and therefore exposed SolarWinds to the Cyberattack.  *See id.*

The substantive allegations against Thoma Bravo and Silver Lake are pled in the aggregate—as if the two independent companies were one entity.  *See, e.g.*, *id*. ¶¶ 18, 27.  Plaintiffs allege that Thoma Bravo and Silver Lake collectively "owned over 80%" of SolarWinds' stock, *id*. ¶ 18, and that, in the aggregate, "the majority" of SolarWinds directors were representatives of either Thoma Bravo or Silver Lake, *id*. ¶ 21.  On these bases—being private equity firms, aggregating ownership of stock, and aggregating the number of board of directors—Plaintiffs assert a single claim (Count II) against Thoma Bravo and Silver Lake, alleging that they were control-persons under Section 20(a) of the Exchange Act and should be held liable for SolarWinds' purported securities law violations.  *See, e.g.*, *id*. ¶¶ 265-66.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations must "nudge[] the[] claim[] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the sufficiency of a complaint, the court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.

4

2005).  "While legal conclusions can provide the framework of a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

**I.  PLAINTIFFS FAIL TO ESTABLISH THAT THOMA BRAVO HAD ACTUAL CONTROL OVER THE COMPANY, OR THE ABILITY TO CONTROL THE SPECIFIC CONDUCT AT ISSUE.**

Section 20(a) of the Exchange Act imposes vicarious liability on those who commit securities violations through proxies.  To state a Section 20(a) control-person claim, the plaintiff must allege (1) a primary violation by a controlled person; and (2) direct or indirect control of the primary violator by the defendant.  *In re ArthroCare Corp. Secs. Litig.*, 726 F. Supp. 2d 696, 729 (W.D. Tex. 2010).  Congress did not intend for plaintiffs to sweep in investors who did not direct or participate in the alleged primary violation.  *See Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135, 146 (2011) (liability "based on a relationship of influence" over either the statement or the speaker would impose liability "broader in application" than Section 20(a)).  Instead, the statute was intended to prevent "persons from avoiding liability . . . by utilizing 'dummies' to commit the prohibited acts."  *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1115-16 (5th Cir. 1980).  Accordingly, control-person liability exists *only* against a "person who, directly or indirectly, controls any person liable" for certain securities violations.  15 U.S.C. § 78t(a).[3]

Courts have made clear that "status alone will not automatically cause [a defendant] to be deemed a . . . controlling person."  *Carlton v. Cannon*, No. H-15-012, 2016 WL 3959164, at *4-5 (S.D. Tex. July 22, 2016) (alteration in original) (quoting *Dennis v. Gen. Imaging, Inc.*, 918 F.2d

---

[3]     Courts analyze control under Section 20(a) of the Exchange Act using the same framework as Section 15 of the Securities Act.  *See Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014).

496, 509 (5th Cir. 1980)).  The plaintiff must "allege some facts beyond a defendant's position or title that show the defendant had actual power or control over the controlled person."  *In re Franklin Bank Corp. Secs. Litig.*, 782 F. Supp. 2d 364, 380 (S.D. Tex. 2011).  Indeed, a plaintiff "must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based."  *Heck*, 775 F.3d at 283.  Moreover, "a plaintiff cannot simply base a control-person claim on boilerplate allegations."  *In re ArthroCare Corp.*, 726 F. Supp. 2d at 730.  Instead, "the plaintiff must provide some factual support which indicates the control-person defendant was in a position to control a primary violator."  *Id.*

Plaintiffs' allegations against Thoma Bravo do not come close to meeting this standard. As detailed below, not only is Thoma Bravo's minority ownership and appointment of directors insufficient to show actual control over SolarWinds, but even when Thoma Bravo and Silver Lake's interests are aggregated, Plaintiffs have failed to allege how Thoma Bravo would have had the ability to control the specific misconduct alleged against SolarWinds.

### A.  Thoma Bravo's minority ownership interests are insufficient to confer control-person liability.

The foundation of Plaintiffs' control-person claim against Thoma Bravo is the allegation that Thoma Bravo, together with its affiliates, owned approximately 40% of SolarWinds' shares during the Class Period.  Compl. ¶ 20.  However, allegations of minority ownership, without more, are insufficient to confer control-person liability.  *See, e.g.*, *Zishka v. Am. Pad & Paper Co.,* No. CIV.A.3:98-CV-0660-M, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001) (rejecting allegations that investment fund owned 38%-50% of the stock and had power to appoint three of eight board members because "[s]tatus alone as to persons not involved in day to day management is legally insufficient to support a Section 20(a) claim").

To extend control liability to mere minority owners, courts go beyond ownership and look for allegations of day-to-day control over the company—none of which Plaintiffs have alleged here.  *See, e.g.*, *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981) (finding control liability where the defendant owned 24% of the company's stock; was an officer and director of the company; and was involved in day-to-day coordination of business activities); *McNamara v. Bre-X Mins. Ltd.*, 46 F. Supp. 2d 628, 636 (E.D. Tex. 1999) (finding control liability where defendant had "involvement in the day-to-day operations," including the "decision-making" and "the content and dissemination of the various statements plaintiffs contend are false").

Given their inability to allege the kind of day-to-day control that would be necessary to extend control-person liability to a minority owner, Plaintiffs instead simply invent ***majority*** ownership.  The Complaint uses the defined term "Private Equity Firms" to refer to Thoma Bravo and Silver Lake, and lumps all substantive control-related allegations about the two entities together.  *See, e.g.*, *id.* ¶¶ 28 ("[T]he Private Equity Firms maintained control over the Company's operations through their continued majority positions on the Company's Board of Directors."); 265 ("The Private Equity Firms owned over 80% of SolarWinds' stock at the start of the Class Period and exercised control over SolarWinds throughout the Class Period."); 266 ("[T]he Private Equity Firms had the right to designate a majority of SolarWinds' Board of Directors, and those designated directors were entitled to constitute majorities of all committees other than the audit committee.").  Indeed, there are no substantive control-related allegations involving Thoma Bravo alone.  All of the relevant allegations ***presume***—without the required detailed factual allegations— that Thoma Bravo and Silver Lake must have acted in concert with one another.

Furthermore, there is no legal basis to aggregate two entirely separate and independent entities to state a control-person claim—and the Complaint points to none.[4]   To the contrary, aggregating defendants in this manner could only potentially be appropriate if there are at least non-conclusory allegations that they acted together to control the company.  *See In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 676 n.24 (N.D. Tex. 2013).  In *In re Kosmos Energy Ltd.*, the court refused to "credit the [plaintiff's] conclusory assertion that [two separate entities] acted jointly based on the bare allegation" that "they controlled a majority of the voting power" of "issued and outstanding common shares" and that "[the two separate entities] selected the Underwriter Defendants."  *Id.*   Other courts have similarly held that "each defendant's control must be evaluated separately unless there is some basis on which to consider their collective action."  *LLDVF, L.P. v. Dinicola*, No. 09-1280 (JLL), 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010).  In *LLDVP, L.P.*, the court rejected plaintiffs' attempt to group two smaller shareholders with others because, *inter alia*, there were no allegations that they "were responsible for or controlled drafting" of the alleged misstatements at issue.   *Id.*   Likewise, in *Fouad v. Isilon Systems, Inc.*, the court rejected plaintiffs' effort to combine three venture capital groups to show majority ownership, reasoning that:  "Without additional allegations that the venture capital firms acted together to control [the company], these allegations of control by virtue of collective

---

[4]     As a general matter, Rule 8 of the Federal Rules of Civil Procedure forbids this kind of group pleading because doing so fails to put individual defendants on notice as to the specific claims against them.  *See, e.g.*, *Chyba v. EMC Mortg. Corp.*, 450 F. App'x 404, 406 (5th Cir. 2011) (per curiam) ("Plaintiff's vague allegations of malfeasance by a global group of unspecified 'defendants'—without alleging any particular acts by the present Defendant—provided an additional reason to dismiss the suit."); *Gurganus v. Furniss*, No. 3:15-cv-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) ("Plaintiff's group pleading . . . makes it impossible to ascertain which particular Defendant(s) are supposedly responsible for the acts allegedly creating" the violation); *Washington v. U.S. Dep't of Hous. & Urban Dev.*, 953 F. Supp. 762, 770 (N.D. Tex. 1996) ("Plaintiff may not rely on such global allegations that Defendants, as a group, committed such acts or omissions.").

ownership are conclusory and unconvincing."  No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008).

Here, there are no allegations that Thoma Bravo and Silver Lake joined forces or otherwise agreed to act in concert, and certainly not with respect to SolarWinds' purported securities disclosures.  Plaintiffs do not allege, for example, that Thoma Bravo and Silver Lake together had the ability to control the relevant cybersecurity representations on SolarWinds' website, SolarWinds' Security Statement, or representations made by SolarWinds' spokesman in certain interviews.  *See, e.g.*, Compl. ¶¶ 201-23.[5]  Plaintiffs simply group the two companies together because of the amount and timing of their purchases and sales of shares, the number of directors each were allowed to appoint, and their supposed investment approach as private equity firms. None of these allegations remotely support an inference that these two separate and independent entities should be treated as one for control liability purposes.

**B.    Plaintiffs' allegations regarding Thoma Bravo's appointment of directors fail to state a control-person claim.**

Plaintiffs also allege that Thoma Bravo controls SolarWinds by virtue of its ability to appoint a three-seat ***minority*** on a board comprised of ten directors.  This argument fails for many of the same reasons that Thoma Bravo's equity ownership does not support control.

First, Plaintiffs fail to show how a minority position on the board constitutes control.  So instead, they again aggregate Thoma Bravo's seats with Silver Lake's seats and allege that the

---

[5]    The only allegation that vaguely attempts to connect Thoma Bravo to SolarWinds' operations is that "[f]ormer employees have recounted how Defendant Thompson and the private equity firms that controlled SolarWinds sacrificed cybersecurity to boost short-term profits."  Compl. ¶ 8.  This allegation, however, like all others relating to Thoma Bravo, is conclusory.  Despite claiming that former employees provided them with information for their Complaint, Plaintiffs offer no facts suggesting that those employees informed Thoma Bravo of their concerns, or that those employees connected Thoma Bravo to the day-to-day control of SolarWinds, its cybersecurity practices, or the specific alleged public misstatements at issue.

"Private Equity Firms" jointly had a "majority position[]" (six of ten), which they are alleged to have used to "secretly prioritize their own short-term interests" over those of SolarWinds. *Id*. ¶ 28. However, just as with equity, there is no basis to aggregate Thoma Bravo and Silver Lake's board seats. There are no allegations that the two sets of board members worked together, or were otherwise under an obligation to do so.

Second, even assuming Plaintiffs are allowed to combine the two sets of directors, Plaintiffs make no specific allegations regarding the directors' supposed control over SolarWinds, or their ability to control the specific disclosures that give rise to the alleged primary violation. Instead, Plaintiffs presume that because some Thoma Bravo-appointed directors were also Thoma Bravo employees, they ***must have*** been acting solely on Thoma Bravo's behalf, rather than as fiduciaries of SolarWinds. *See, e.g.*, *id*. ¶ 28 ("[T]he Private Equity Firms maintained control over the Company's operations through their continued majority positions on the Company's Board of Directors. This control of the Company gave the Private Equity Firms the power to secretly prioritize their own short-term interests, while using shareholder funds to pay for it."). However, it is well-established that "[t]he 'mere fact' that certain outside directors held high positions with certain allegedly controlling corporations and were appointed to the primary violator's board by those corporations, 'cannot, standing alone, establish that they acted as agents, or acted under the control,' of those defendants." *In re Kosmos Energy Ltd.*, 955 F. Supp. 2d at 675 (quoting *In re Global Crossing Secs. Litig.*, No. 02 Civ. 910(GEL), 2005 WL 1907005, at *4 (S.D.N.Y. Aug. 8, 2005)). Accordingly, the presumption is that when "they acted as directors of [the company], they were not acting within the scope of their employment' with [the shareholder]." *Id.* at 675-76. And Plaintiffs offer nothing to contest that presumption.

10

Moreover, Plaintiffs offer no explanation as to how the Thoma Bravo and Silver Lake directors—whether separately or as a group—would have had the ***ability*** to control the Company's underlying alleged misconduct.  For example, Plaintiffs say nothing about how Thoma Bravo or the directors it appointed could have directed or influenced SolarWinds' "Security Statement," Compl. ¶¶ 201-15, the representations on SolarWinds' website, *id.* ¶¶ 216-19, or the public statements by SolarWinds' spokesman in the interviews, *id.* ¶¶ 220-23, that are at the heart of Plaintiffs' underlying Exchange Act claim.  Nor are there any allegations that the Thoma Bravo or Silver Lake directors signed Securities and Exchange Commission ("SEC") filings or handled key functions like accounting, as in other cases where directorships gave rise to control-person liability. *See, e.g.*, *Behrendsen v. Yangtze River Port & Logistics Ltd.*, No. 19-cv-00024 (DLI)(LB), 2021 WL 2646353, at *17 (E.D.N.Y. June 28, 2021) ("Courts have held that control is pled adequately where an officer or director has signed SEC filings."); *In re: Cannavest Corp. Secs. Litig.*, 307 F. Supp. 3d 222, 243 (S.D.N.Y. 2018) (holding that allegations that director was "handling 'accounting functions'" were sufficient to establish at the pleading stage that he had direct involvement in the management of the company).  Indeed, there are no such allegations because outside directors are "almost by definition . . . excluded from the day-to-day management of a corporation."  *In re: Cannavest Corp.*, 307 F. Supp. 3d at 241.

In short, the core allegations relating to the Thoma Bravo and Silver Lake-appointed board members are conclusory:  "the Private Equity Firms maintained control over the Company's operations through their continued majority positions on the Company's Board of Directors," Compl. ¶ 28; and they supposedly exercised control by "having their own senior executives, and executives over which they exercise control, on the Company's Board of Directors," *id.* ¶ 264.

Such conclusory allegations fall far short of showing actual control, or the ability to control the specific conduct giving rise to the alleged securities violations.

### C.   Plaintiffs' allegations regarding Thoma Bravo's investment strategy are insufficient to state a control-person claim.

Plaintiffs next allege that Thoma Bravo should be liable as a control-person because of the investment strategy that private equity firms, in general, purportedly use.  Plaintiffs claim that Thoma Bravo adopted a "corporate strategy of cost-cutting" when managing its portfolio companies, *id.* ¶ 149, and that SolarWinds "relegated cybersecurity to the back of the line as a result of [Thoma Bravo's] focus on cost-cutting to achieve near-term gains," *id.* at ¶ 62.[6]  But these generic allegations—which were accompanied by no actual facts—do not demonstrate that Thoma Bravo had actual control over SolarWinds or Thoma Bravo's role in the specific securities violations alleged.  *See Carlton*, 2016 WL 3959164, at *4-6.

Demonstrating control over the Company or the alleged securities violations at issue requires much more than conclusory statements about Thoma Bravo's general business practices. *See, e.g.*, *G.A. Thompson*, 636 F.2d at 958 (alleged control-person was "involved in the day-to-day coordination of the loan gathering"); *Heck*, 775 F.3d at 284 (alleged control-person drafted relevant portions of investor documents, solicited loans from investors and pledged inventory to investors).  For example, in *In re Dynegy, Inc. Securities Litigation*, the court held that an officer who was directly involved in the deal team could be a control-person.  339 F. Supp. 2d 804, 913 (S.D. Tex. 2004).  Those allegations included the fact that the alleged control-person was

---

[6]    In fact, the only specific charges of cost-cutting as it relates to cybersecurity are leveled against a different Defendant, former SolarWinds CEO Kevin Thompson.  *See, e.g.*, Compl. ¶ 6 ("The Company refused to implement the changes in [cybersecurity] because the Company's then-CEO, Kevin Thompson, did not want to spend the money to do so.").  And there are no allegations that Thompson did so at Thoma Bravo's behest, or that Thoma Bravo even had the ability to execute such a directive.

responsible for the specific project ("Doty headed Project Alpha and ordered Project Alpha to be completed as soon as possible"), had calls with other employees about the specific project ("Doty received a call from Foster and Olis to discuss the 'tear up' provision regarding Project Alpha"), and that those conversations influenced a specific deal that was being led by the officer.  *Id.*  Here, none of the allegations against Thoma Bravo are specific as to how Thoma Bravo's supposed strategy amounted to control of SolarWinds, or demonstrate how Thoma Bravo's specific actions would have directly influenced any day-to-day activity.

Moreover, there are no allegations that Thoma Bravo's investment strategy had any role in, or the ability to control any of the alleged misstatements, whether it is the alleged misstatements in SolarWinds' Security Statement, on its website, or the statements purportedly made by its spokesman, Defendant Tim Brown.  *See Carlton v. Cannon*, 184 F. Supp. 3d 428, 495-96 (S.D. Tex. 2016) (dismissing claims against alleged control-person even assuming *arguendo* that he was "deeply involved in and responsible for [the company's] operational strategy and financing" because there were no allegations showing that he had the ability to control the CEO's public statements (internal quotation marks omitted)).  Plaintiffs cobble together generic allegations about private equity firms, along with news articles about Thoma Bravo, in order to try to show control. For example, Plaintiffs quote a private equity magazine as stating that Thoma Bravo reduces operating costs by "flattening the organization structure" and "scop[ing] out consolidation options in a company's vertical," Compl. ¶ 149 (alteration in original), cite to a Wall Street Journal article about the Thoma Bravo founder and his life story, *id.* ¶ 23, and state that Thoma Bravo, as a private equity firm, "identif[ies] software companies with a loyal customer base but middling profits and transform[s] them into moneymaking engines," *id.*  These assertions, even assuming they are true, are not specific to Thoma Bravo's relationship with SolarWinds.  As such, they are insufficient to

13

demonstrate control over SolarWinds' day-to-day business operations, or that Thoma Bravo specifically exercised control over the alleged misleading and omitted statements in the Complaint.

In short, there is not a single allegation in the Complaint that Thoma Bravo was involved, directly or indirectly, with SolarWinds' cybersecurity disclosure programs at all, and simply alleging that private equity firms like to engage in "cost-cutting" is not enough. The Complaint says nothing about what form the alleged "cost-cutting" took at SolarWinds, let alone how this investment strategy is related to the specific purported misrepresentations in SolarWinds' Security Statement, on its website, and as relayed by SolarWinds' spokesman in interviews.

### D.     Plaintiffs' allegations that SolarWinds is a "controlled company" do not state a control-person claim.

Finally, Plaintiffs allege that Thoma Bravo is a control-person because SolarWinds identified itself as a "'controlled company' in its SEC filings during the Class Period" and made related representations that Thoma Bravo "could exert significant influence" over SolarWinds by virtue of SolarWinds being a "controlled company." Compl. ¶ 265. This is misleading. The statements Plaintiffs cherry-pick from SEC filings are standard for any company that qualifies as a "controlled company" under specific New York Stock Exchange ("NYSE") rules. Accordingly, courts have recognized that the NYSE term "controlled company" as used in such public filings is different than—and "largely irrelevant" to—control liability under the securities laws. *In re Kosmos Energy Ltd.*, 955 F. Supp. 2d at 676. In *In re Kosmos Energy Ltd.*, the court explained that the term "controlled company" is a defined term under NYSE rules that refers to a company where over 50% of its shares are held by another person or multiple persons. *Id.* at 676-77. Qualifying as a controlled company determines certain accounting and NYSE reporting requirements for the company. *Id.* at 677 n.25. However, it is not determinative of "control" under the securities laws. *See id.* ("[Plaintiff] has not identified and the Court has not found any cases

14

finding that such [controlled company] status under NYSE rules is relevant to the issue of control under securities laws."). If it were determinative, then would-be plaintiffs could subject every investor or series of investors that together cross the 50% ownership threshold to control-person liability automatically by virtue of their ownership status. But, of course, "status as a major shareholder . . . does not, without more, create control person liability." *Dartley v. ErgoBilt Inc.*, No. CIV A. 398CV1442M, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001); *see also In re Kosmos Energy Ltd.*, 955 F. Supp. 2d at 675-76.

In fact, courts have consistently refused to allow litigants to substitute private exchange rules for securities law requirements in a range of contexts. For example, in evaluating "director independence" challenges, courts have held that "[w]hether a director is independent under the NYSE listing rules does not control whether that director can impartially consider a demand." *In re Six Flags Entm't. Corp. Derivative Litig.*, No: 4:20-cv-00262-P, 2021 WL 1662466, at *7 (N.D. Tex. Apr. 28, 2021); *see also Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015) ("[A] board's determination of director independence under the NYSE Rules is qualitatively different from, and thus does not operate as a surrogate for, this Court's analysis of independence under Delaware law for demand futility purposes.").[7] Likewise, to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, "[i]t is well established that violation of an exchange rule will not support a private claim." *In re VeriFone Secs. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993). In *Verifone*, the court

---

[7]     Courts have also rejected the notion that the definition of "control" for purposes of SEC filings is dispositive as to being a control group under Delaware law. *See, e.g.*, *Gilbert v. Perlman*, No. 2018-0453-SG, 2020 WL 2062285, at *8 (Del. Ch. Apr. 29, 2020) (SEC determination that defendants were "affiliates" of a company—*i.e.*, "a person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such issuer"— is "not dispositive of the common-law question issue of control").

rejected as "baseless" the "[s]hareholders' contention that disclosure was compelled by the reporting and disclosure requirements which govern members of the New York Stock Exchanges." *Id.*; *cf. City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am., N.A.*, No. 19-725-SDD-RLB, 2021 WL 1321302, at *4 (M.D. La. Apr. 8, 2021) (same holding with respect to negligence claim predicated on an alleged violation of a FINRA rule).

In essence, alleging that SolarWinds was a "controlled company" and made related disclosures amounts to nothing more than an allegation that Thoma Bravo and Silver Lake were large shareholders.  To hold otherwise, and allow the NYSE's 50% rule to define control under Section 20(a), would be to substitute a private exchange's judgment for that of Congress.

## II.    PLAINTIFFS FAIL TO ESTABLISH AN UNDERLYING SECURITIES VIOLATION.

"Control person liability is secondary only and cannot exist in the absence of a primary violation."  *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 (5th Cir. 2019). Thus, where "[p]laintiffs have not established a primary violation, their Section 20(a) claims fail." *Id.*  For the reasons set forth in Defendants SolarWinds and Tim Brown's Motion to Dismiss the Consolidated Complaint, which is hereby incorporated by reference, Plaintiffs have failed to adequately plead scienter, that SolarWinds made a materially false or misleading statement, and loss causation. *See* Dkt. No. 41.  Accordingly, Plaintiffs' control-person claim fails because they have also failed to plead a primary violation.

## <u>CONCLUSION</u>

For the foregoing reasons, Thoma Bravo respectfully requests that the Court dismiss Count II in the Complaint against it with prejudice.

16

Dated: August 2, 2021

Respectfully submitted,

/s/ Anna G. Rotman
Anna G. Rotman
Texas Bar No. 24046761
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone:  (713) 835-3600
Facsimile:  (713) 835-3601
Email:  anna.rotman@kirkland.com

and

Sandra C. Goldstein (*pro hac vice*)
Stefan Atkinson (*pro hac vice*)
Byron Pacheco (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  sandra.goldstein@kirkland.com
            stefan.atkinson@kirkland.com
            byron.pacheco@kirkland.com

*Attorneys for Defendant*
*Thoma Bravo, LP*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2021, a true and correct copy of the foregoing document was served through ECF filing on all persons receiving electronic notice in this case.

/s/ Anna G. Rotman
Anna G. Rotman