IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| IN RE SOLARWINDS CORPORATION | § | MASTER FILE NO. 1:21-CV-138-RP |
| SECURITIES LITIGATION | § | |
| | § | |
| | § | |

## DEFENDANT KEVIN B. THOMPSON'S REPLY BRIEF
## IN SUPPORT OF MOTION TO DISMISS

Paul R. Bessette
Texas Bar No. 02263050
Michael J. Biles
Texas Bar No. 24008578
KING & SPALDING LLP
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel:  (512) 457-2050
Fax:  (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com

Peter L. Welsh (*pro hac vice*)
C. Thomas Brown (*pro hac vice*)
Kathryn E. Caldwell (*pro hac vice*)
Patrick T. Roath (*pro hac vice*)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7865
peter.welsh@ropesgray.com

Edward R. McNicholas (*pro hac vice*)
Frances Faircloth (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
Tel: (202) 508-4779
edward.mcnicholas@ropesgray.com

*Counsel for Defendant Kevin B. Thompson*

## **<u>TABLE OF CONTENTS</u>**

**Page**

ARGUMENT .................................................................................................................2

I.      The Complaint Does Not Adequately Allege that Mr. Thompson Made Any of the
        Challenged Statements ...........................................................................................2

II.     The Opposition Does Not Cure the Complaint's Failure to Plead a "Strong
        Inference" That Mr. Thompson Acted with Scienter. .......................................4

        A.      Cybersecurity Presentation ......................................................................5

        B.      Stock Sales ...............................................................................................6

        C.      Other Motive Allegations ......................................................................10

CONCLUSION ...........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anadarko Petroleum Corp. Class Action Litig.*,
    957 F. Supp. 2d 806 (S.D. Tex. 2013) ....................................................................................9

*In re ArthroCare Corp. Sec. Litig.*
    726 F. Supp. 2d 696 (W.D. Tex. 2010) .............................................................................7, 8

*Central Laborers' Pension Fund v. Integrated Elec. Servs Inc.*
    497 F.3d 546 (5th Cir. 2007) ...............................................................................................7

*In re Centurylink, Inc. S'holder Derivative Action*,
    No. CIV.A. 13-2318, 2015 WL 1825445 (W.D. La. Apr. 21, 2015) ..................................10

*Crutchfield v. Match Grp., Inc.*,
    No. 3:19-CV-2356-S, 2021 WL 1167578 (N.D. Tex. Mar. 26, 2021) ................................10

*In re Dell Inc., Sec. Litig.*,
    591 F. Supp. 2d 877 (W.D. Tex. 2008) ..........................................................................7, 10

*Ferris v. Wynn Resorts Ltd.*
    No. 2:18-cv-00479-APG-DJA, 2021 WL 3216462 (D. Nev. July 28, 2021) ........................3

*Hall v. Rent-A-Center, Inc.*,
    No. 4:16cv978, 2017 WL 6398742 (E.D. Tex. Oct. 19, 2017) .............................................6

*In re Heartland Payment Systems, Inc. Sec. Litig.*,
    No. 09–1043, 2009 WL 4798148 (D.N.J. Dec. 7. 2009) .....................................................5

*Hedick v. The Kraft Heinz Co.*
    No. 19-CV-1339, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...........................................5

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .........................................................................................................2, 4

*Owl Creek I, L.P. v. Ocwen Fin. Corp.*
    No. 19-CV-1339, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ........................................5, 6

*In re Pfizer Inc. Sec. Litig.*
    No. 04 Civ. 9866(LTS)(HBP), 2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ......................3, 4

*Plaisance v. Schiller*,
    No. CV H-17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ...................................2, 3

i

*Robb v. Fitbit Inc.*
    No. 16-cv-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ..........................................6

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..........................................................................................2, 7

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharms. Int'l, Inc.*
    No. 16–5034 (MAS) (LHG), 2018 WL 395730 (D.N.J. Jan. 12, 2018). ................................4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................4

Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (the "Opposition" or "Opp.") fails to remedy the myriad flaws in the Complaint identified in the defendants' motions to dismiss.[1]  Mr. Thompson, SolarWinds' former chief executive officer, submits this reply to address the Opposition's failed attempt to sustain the allegations against him.

Above all, the Complaint fails to allege that Mr. Thompson ever actually made, or even approved someone else making, any statement alleged to be false or misleading, much less that he did so with scienter.  The Lead Plaintiff's scienter allegations as to Mr. Thompson rely on little more than a claim that he *must have known* about the Thornton-Trump presentation made *seventeen months before* the Class Period began, because unspecified employees reporting to him *must have told* him about the presentation.  At the pleading stage, this will not suffice.  Naked assertions that Mr. Thompson "must have known" about the Thornton-Trump presentation would be insufficient to meet Lead Plaintiff's pleading burden under even a plausibility standard, much less under the heightened standards of the PSLRA.  Worse, the Opposition and the Complaint grossly mischaracterize Mr. Thompson's November 2020 Class Period stock sales, which were made pursuant to a previously executed 10b5-1 trading plan, and which were not in any way out of the ordinary under controlling precedent.

For these reasons, and those set forth in the memorandum of law accompanying Defendant Kevin Thompson's motion to dismiss (Dkt. 44, the "Thompson Memo."), and in the SolarWinds opening brief and reply briefs (both of which Mr. Thompson joins in full), the Complaint should be dismissed with prejudice as to Mr. Thompson.

---

[1] All capitalized terms not defined herein have the meaning assigned in the Thompson Memo.

## ARGUMENT

**I.     The Complaint Does Not Adequately Allege that Mr. Thompson Made Any of the Challenged Statements**

Under the securities laws, a defendant can be liable only for statements he actually makes, controls, or approves. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). For a complaint to plead securities fraud against a corporate officer based on certain unattributed "company" statements, the pleading must articulate "specific facts" tying that corporate officer to the challenged statement.[2] *Plaisance v. Schiller*, No. CV H-17-3741, 2019 WL 1205628, at *16 (S.D. Tex. Mar. 14, 2019) (citing *Janus*, 564 U.S. at 142). "[C]orporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

The only statement specifically attributed to Mr. Thompson in the Complaint is actually a public *warning* by Mr. Thompson of exactly the type of risk that materialized here—an aggressive, malevolent cyberattack by a hostile foreign power. *See* Thompson Memo. at 3 & 7; Compl. ¶ 33. The dearth of statements by Mr. Thompson forces Lead Plaintiff to build its case against him by arguing that Mr. Thompson somehow approved, and was therefore a "maker," of the Security Statement. Plaintiff's failure to plead that the Security Statement—set forth on an unattributed

---

[2] As established by the Thompson Memo and the other memoranda of law accompanying the motions to dismiss filed by other defendants, the Complaint fails adequately to allege that during the Class Period defendants made material misstatements or omissions with scienter in connection with the purchase or sale of a security. *See, e.g,* Thompson Memo. at 6–10. The fact that SolarWinds was the targeted victim of a cyberattack by a foreign actor which succeeded despite SolarWinds' security controls does not amount to a violation of the federal securities laws— particularly where SolarWinds had *disclosed to investors the precise risk that materialized.*

webpage buried layers into the SolarWinds website—was in any way false or misleading, let alone materially so, is addressed in the SolarWinds briefs. *See* SolarWinds Memo. at 31–36.

The Opposition does little more than repeat the Complaint's conclusory assertion, devoid of meaningful factual support, that the Security Statement "was reviewed and approved by Defendants Brown and Thompson." Compl. ¶ 37. The Opposition's reference to supposedly "detailed allegations" showing Mr. Thompson's "approval and ownership of the Security Statement" rests on an obvious misconstruction of the Complaint itself, which boils down to the claim that, because he was CEO, Mr. Thompson *must have* seen and approved the Security Statement. Opp. at 41. Such boot-strapping falls woefully short of the kind of "specific facts" required by courts in the Fifth Circuit to demonstrate than an officer *made* a particular statement. *Plaisance*, 2019 WL 1205628, at *16.

The authorities cited in Plaintiff's Opposition make precisely this point. *See* Opp. at 39–40. Lead Plaintiff leans heavily on *Ferris v. Wynn Resorts Ltd.*, but that case dealt with statements made in a series of SEC filings and press releases—disclosures directed precisely and explicitly to *investors*—that were issued specifically in response to news coverage of the corporation's executives, as such bolstering the complaint's specific factual allegation that the named defendants "were provided with copies of the statement for approval." No. 2:18-cv-00479-APG-DJA, 2021 WL 3216462, at *13 (D. Nev. July 28, 2021). Lead Plaintiff also cites *In re Pfizer Inc. Sec. Litig.*, for the proposition that a mere allegation that an individual "approved or ratified" a statement adequately pleads attribution. No. 04 Civ. 9866(LTS)(HBP), 2012 WL 983548, at *4 (S.D.N.Y. Mar. 22, 2012). Not so. The allegations in *Pfizer* were pled with far greater specificity than here, and alleged that the defendants were "involved in drafting, reviewing and/or disseminating the

false and misleading financial statements that were issued" and "approved or ratified these statements," and, indeed, at least one defendant *signed* one of the statements. *Id.* at *4 & n.3.

Finally, the Opposition's contention that the question of attribution is "better suited for adjudication at a later stage" is directly contradicted by the Supreme Court's holding in *Janus* and its progeny. Opp. at 40. Tellingly, the pleading at issue in the principal case on which Lead Plaintiff relies, *T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharms. Int'l, Inc.*, involved far more specific allegations than those advanced in the Complaint. No. 16–5034 (MAS) (LHG), 2018 WL 395730, at *5 (D.N.J. Jan. 12, 2018) (statements at issue "made by other executives at presentations that [defendant] also attended and statements in 'group published documents'" and made while the defendant was "present and did not interpose any objection").

In sum, as Mr. Thompson is not alleged to have made any statement claimed to be false or misleading, the Complaint must be dismissed as to him without reaching the question of scienter.

## II.    The Opposition Does Not Cure the Complaint's Failure to Plead a "Strong Inference" That Mr. Thompson Acted with Scienter.

The Opposition articulates a grab bag of theories as to how the Complaint supposedly alleges a culpable state of mind on the part of Mr. Thompson. *See* Opp. at 52–62. None satisfy the PSLRA's pleading standards. For starters, Lead Plaintiff inverts the operative legal standard, incorrectly claiming that "[t]o defeat Lead Plaintiff's scienter inference, *Defendants* bear the heavy burden of offering a more compelling inference." *Id.* at 62 (emphasis added). This gets the actual standard established by the Supreme Court backwards: "A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). It is Lead Plaintiff that bears the burden of articulating a cogent and compelling inference of scienter and the Complaint fails to meet that burden.

A.    **Cybersecurity Presentation**

The Complaint's central scienter allegations arise out of defendants' alleged attendance at, or subsequent review of, a 2017 internal corporate presentation on cybersecurity that, in Lead Plaintiff's telling, would have informed defendants that the statements made in the Company's Security Statement were false or misleading.  *See* Compl. ¶¶ 72–90.  But far from generating a "strong inference" of scienter as to Mr. Thompson, the Complaint does not even allege that Mr. Thompson attended the presentation or otherwise reviewed its contents.

Lead Plaintiff attempts to dodge this gaping defect by vaguely imputing awareness of the presentation to Mr. Thompson via the other individuals alleged in the Complaint to have been aware of the presentation.  *See* Opp. at 53–58.  The Complaint alleges that several executives attended the meeting, Compl. ¶ 74, and that the meeting was "discussed internally," *id.* at ¶ 84, but offers no factual amplification whatsoever to bolster its conclusory assertion that the details of this presentation made their way to Mr. Thompson.  As a result, the Complaint offers little more than the results-oriented assumption that Mr. Thompson "must have known" because others did.

This is insufficient as a matter of law.  At the pleading stage of a securities case, an individual defendant's state of mind cannot be properly pled by reference merely to what *other* individuals allegedly said or thought.  *See, e.g., In re Heartland Payment Systems, Inc. Sec. Litig.*, No. 09–1043, 2009 WL 4798148, at *8 (D.N.J. Dec. 7. 2009) (finding scienter not pled absent allegation that "concerns [about cybersecurity] were ever relayed to any of the Defendants").  Lead Plaintiff's various "direct report" cases are each easily distinguishable.  *See* Opp. at 54–55.  The court in *Hedick v. The Kraft Heinz Co.*, did not find an inference of scienter on the basis of a meeting not attended by one of the defendants; rather, the court simply identified other scienter allegations that rendered the complaint in that case viable.  No. 19-CV-1339, 2021 WL 3566602, at *12–14 (N.D. Ill. Aug. 11, 2021).  Similarly, *Owl Creek I, L.P. v. Ocwen Fin. Corp.*, does not

support the imputation of scienter to a corporate defendant by virtue of allegations regarding lower-level executives.  No. 18-80506-CIV, 2018 WL 4844019, at *11 (S.D. Fla. Oct. 4, 2018).  That case instead turned on the executive defendants' "actual access" to information which rendered their own public statements false, which the court inferred from the presence of allegations "that Defendants admitted in a 2014 consent order . . . that the backdating scheme had been going on 'for years,'" and which was "bolstered by the Complaint's factual allegations that an employee reported the backdating problem [on multiple occasions]." *Id.*  The Opposition's reliance on *Robb v. Fitbit Inc.*, a case in the Northern District of California is wholly misplaced.  No. 16-cv-00151-SI, 2017 WL 219673, at *4–6 (N.D. Cal. Jan. 19, 2017).  The relevant aspects of *Robb* rely entirely on the "core operations" theory of scienter—an "extremely narrow" exception to the rule that scienter cannot be inferred from a defendant's corporate position acknowledged in the Fifth Circuit only if accompanied by the presence of specific "considerations"—none of which is pled here. *Hall v. Rent-A-Center, Inc.*, No. 4:16cv978, 2017 WL 6398742, at *32–33 (E.D. Tex. Oct. 19, 2017) (*citing Nathenson v. Zonagen Inc.*, 267 F.3d 400, 424–25 (5th Cir. 2001)), *report adopted*, No. 4:16CV978, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017).

For these reasons, the Opposition's bald assertion that Mr. Thompson "must have known" about the presentation does not come close to meeting the PSLRA's pleading standards.

## B.     Stock Sales

The Opposition also argues that Mr. Thompson's November 2020 stock sales were "suspicious," supposedly supporting an inference of scienter.  But these pre-planned trades were executed pursuant to a 10b5-1 plan filed by Mr. Thompson in August 2020, before SolarWinds allegedly received notice from Palo Alto Networks in September, and after Mr. Thompson announced his planned retirement from the Company.  *See* Thompson Memo. at 15–16.  There is nothing suspicious or unusual about Mr. Thompson's August 2020 decision to sell about 25% of

the more than three million shares he held in SolarWinds, shortly ahead of his previously announced departure. *See, e.g., Southland*, 365 F.3d at 368–69; Thompson Memo. at 15–16 (collecting cases). In its Opposition, Lead Plaintiff nevertheless doubles down on the "suspicious stock sale" theory. *See* Opp. at 59–61. The theory is without merit for several reasons.

**First,** the Opposition's claim that the fact that Mr. Thompson's sales were pursuant to a 10b5-1 plan is "irrelevant for purposes of analyzing the suspicious nature of his trades" because the plan was established "during the Class Period" is a ruse. Opp. at 60. Here, the 26-month Class Period allegedly begins on the date of the SolarWinds IPO, such that *any* trading plan implemented thereafter would *necessarily* have been put in place during the Class Period. There is no conceivable reason for entering into a 10b5-1 plan prior to a corporation's going public. The timing of the 10b5-1 plan relative to the Class Period is a red herring. The key point, which Lead Plaintiff ignores, is that Mr. Thompson's plan was adopted *before* Mr. Thompson was allegedly aware of the facts that supposedly render the statements actionable.[3]  *See* Thompson Memo. at 15.

The authorities cited by the Opposition do not support Lead Plaintiff's contention that the timing of the 10b5-1 plan is somehow suspicious. Opp. at 60–61. In *Central Laborers' Pension Fund v. Integrated Elec. Servs Inc.*, the Fifth Circuit actually affirmed dismissal of the claims at issue, and found only that the defendant "fail[ed] to provide a direct response to th[e] assertion" that certain trades remained suspicious despite the existence of a plan. 497 F.3d 546, 554 (5th Cir. 2007). And, in *In re ArthroCare Corp. Sec. Litig.*, the court made the sensible and here pertinent observation that "the length of the class period impacts the inference that can be drawn from securities trading." 726 F. Supp. 2d 696, 723 (W.D. Tex. 2010); *accord In re Dell Inc., Sec. Litig.*,

---

[3] As set forth in the Thompson Motion, the pertinent trading plan for Thompson's November 2020 sales was entered in August 2020, not 2019. Thompson Memo. at 4, 15. That plan was implemented after the expiration of Mr. Thompson's previous (2019) plan. *See* Ex. R.

591 F. Supp. 2d 877, 897 (W.D. Tex. 2008) (holding that "the length of the class period impacts the inference that can be drawn from securities trading"). The fact that Class Period in this case is coextensive with the entire period in which Mr. Thompson could have entered into a trading plan robs the Opposition's assertion of any persuasive force.

*Second*, the Opposition distorts Mr. Thompson's stock sales by improperly comparing *absolute* quantities of shares sold across two materially distinct periods of time; what matters, however, is the proportion of holdings sold, not the absolute number of shares sold. The Complaint compares Mr. Thompson's sales in two non-consecutive windows: (i) a "Control Period" from December 2013 to February 2016, prior to the Company's return to private ownership; and (ii) the "Class Period" from October 18, 2018 to December 17, 2020, after SolarWinds reemerged as a public company. *See* Compl. ¶¶ 192–93, 241; Opp. at 59–61. The Complaint alleges that "[t]his comparison shows that Defendant Thompson's sales during the Class Period were three times larger than his sales during the Control Period," and, excluding (arbitrarily) sales of shares generated from exercised options, "his Class Period sales are approximately nineteen times larger than his Control Period sales."[4] Opp. at 60. This allegation is both (1) factually incorrect, and (2) an apples-to-oranges comparison lacking legal relevance.

The Complaint asserts that Mr. Thompson sold 391,657 shares during the Control Period. Compl. ¶ 193. In fact, for the Control Period,[5] Mr. Thompson sold 426,293 shares, gifted 32,279

---

[4] The Opposition asserts that certain sales following the exercise of stock options should be set aside when analyzing the volume of shares sold because they were sold on the same day options were exercised. Opp. at 60 n.8. It is unclear why this should be so; Lead Plaintiff advances no arguments in support of its contention. There is no coherent difference between a simple sale of shares and an options exercise, plus a sale of shares. The timing was also just as much a product of Mr. Thompson's trading plan as the other stock sales at issue. *See* Exs. A, F, G, H, L, M.

[5] The Complaint does not provide specific dates for its alleged Control Period, but for the purposes of this motion Mr. Thompson assumes that it begins on December 1, 2013, and ends on February

shares, and finished with 429,111 shares, for a total of 887,683 shares, of which **48%** were sold.[6]
For the Class Period, Plaintiff does not provide a specific figure for Mr. Thompson's trades, merely
alleging that he sold "over one million shares."  Compl. ¶ 192.  In fact, during the Class Period,
Mr. Thompson sold 1,092,538 shares, ending with 2,314,053 shares, for a total of 3,406,591
shares, of which **32%** were sold.[7]  As a result, Mr. Thompson sold proportionally *more* of his
holdings during the Control Period (48%) than he did during the Class Period (32%)—the opposite
of what is claimed by the Complaint.  "In a Rule 12(b)(6) motion to dismiss, the Court must accept
as true a plaintiff's well-pleaded factual allegations," but "[t]he Court does not, however, accept as
true factual allegations that are contradicted by documents on which they are based."  *In re
Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 814 n.4 (S.D. Tex. 2013).

Lead Plaintiff's 39% figure is particularly misleading because it uses an inappropriate
denominator, dividing the number of shares sold (1.1 million) into the number of shares held at
the *beginning* of the Class Period (2.9 million),[8] ignoring the fact Thompson also acquired about
500,000 shares *during* the Class Period,[9] producing a *net* holdings decline by only 600,000 shares
(2.9 million to 2.3 million).[10]  All told, the Complaint's attempt to allege scienter through Mr.
Thompson's stock sales comes nowhere near satisfying the PSLRA pleading standard.

---

4, 2016 (the eve of the take-private transaction).  Mr. Thompson fully liquidated his positions as
part of the take-private transaction, such that including them in analysis of his trading during the
Control Period would be inappropriate and overstate his trading.  *See* Ex. P.

[6] *See* Exs. A–P.  Mr. Thompson notes that he made a gift of 32,279 shares on January 25, 2016,
shortly before the end of the Control Period.  *See* Ex. P.  The analysis in this brief excludes this
gift amount from the number of shares sold.  Including the gift with the sales figure would only
*increase* the proportion of shares "sold" in the Control Period from 48.0% to 51.7%.

[7] *See* Exs. S–V, X–Z, ZA–ZB.

[8] Further, Lead Plaintiff's incorrect formula actually yields 37.6% of shares sold, not 39%.

[9] *See* Exs. V, W.

[10] *See* Exs. S, ZA.

Lead Plaintiff's theory of the relevance of the comparison is also at odds with decisions in the Fifth Circuit holding that "a plaintiff must . . . plead sufficient facts to show that the timing or scope is unusual" by reference to reasonably comparable measures of what trading patterns are typical for a given defendant. *Crutchfield v. Match Grp., Inc.*, No. 3:19-CV-2356-S, 2021 WL 1167578, at *19 (N.D. Tex. Mar. 26, 2021). Courts, accordingly, look to the *relative* magnitude and timing of stock sales to assess whether a sale is "unusual" and not the *absolute* number of shares sold during different periods of time—which provides little context for assessing a given allegation. *See In re Dell*, 591 F. Supp. 2d at 897; *In re Centurylink, Inc. S'holder Derivative Action*, No. CIV.A. 13-2318, 2015 WL 1825445, at *8 (W.D. La. Apr. 21, 2015).

## C.     Other Motive Allegations

Finally, the Opposition rehashes several other "say so" theories for why Mr. Thompson would have been motivated to make false statements with scienter, advancing the notion that he was overly motivated by the goal of generating short-term profits, *see* Opp. at 58–59, and pointing out that after the Company learned the extent of the data breach it suffered, SolarWinds instituted new policies under Mr. Thompson's successor, *see id.* at 61–62. These allegations are facially unpersuasive, are addressed in the Thompson Memorandum, and are insufficient as a matter of law to address the patent defects in the Complaint. *See* Thompson Memo. at 17–19.

## CONCLUSION

For the foregoing reasons, in addition to those advanced by the other defendants, the Court should grant Mr. Thompson's motion to dismiss with prejudice.

Dated:          November 1, 2021

                                                  /s/ *Peter L. Welsh*
                                                  Peter L. Welsh (*pro hac vice*)
Paul R. Bessette                                  C. Thomas Brown (*pro hac vice*)
Texas Bar No. 02263050                            Kathryn E. Caldwell (*pro hac vice*)
Michael J. Biles                                  Patrick T. Roath (*pro hac vice*)
Texas Bar No. 24008578                            ROPES & GRAY LLP
KING & SPALDING LLP                               Prudential Tower, 800 Boylston Street
500 W. 2nd Street, Suite 1800                     Boston, MA 02199-3600
Austin, TX  78701                                 Tel: (617) 951-7865
Tel:  (512) 457-2050                              peter.welsh@ropesgray.com
Fax:  (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com                                  Edward R. McNicholas (*pro hac vice*)
                                                  Frances Faircloth (*pro hac vice*)
                                                  ROPES & GRAY LLP
                                                  2099 Pennsylvania Avenue, N.W.
                                                  Washington, DC 20006-6807
                                                  Tel: (202) 508-4779
                                                  edward.mcnicholas@ropesgray.com


                                                  *Counsel for Defendant Kevin B. Thompson*

**CERTIFICATE OF SERVICE**

I certify that on November 1, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

/s/ *Peter L. Welsh*
Peter L. Welsh