IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | § § § § § § § § | Civil Action No. 1:21-cv-00138-RP |

**DEFENDANT THOMA BRAVO, LP'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

Anna G. Rotman
Texas Bar No. 24046761
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone: (713) 835-3600
Facsimile: (713) 835-3601
anna.rotman@kirkland.com

Sandra C. Goldstein (*pro hac vice*)
Stefan Atkinson (*pro hac vice*)
Byron Pacheco (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
byron.pacheco@kirkland.com

*Attorneys for Defendant*
*Thoma Bravo, LP*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.     Plaintiff Misapprehends the Legal Standard for Control Person Liability. ........................ 2

II.    There Is No Legal or Factual Basis to Aggregate Thoma Bravo's and Silver Lake's Interests. ................................................................................................................. 4

III.   Private NYSE Rules Do Not Dictate Statutory Control Person Liability. ......................... 8

CONCLUSION ............................................................................................................................. 10

**PRELIMINARY STATEMENT**

To state a control person claim under Section 20(a) of the Exchange Act, the Complaint must contain particularized allegations that the alleged control person had the ability to control the specific transaction or activity upon which the underlying securities claims are based. *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014). Plaintiff's Opposition (Dkt. 55, "Opposition Brief," "Opp'n") confirms several times over that they cannot meet this standard. As a result, Count II of the Complaint for control person liability should be dismissed with prejudice.

*First*, Plaintiff attempts to rewrite the relevant legal standard and ignores controlling authorities, insisting that conclusory allegations of a general, overarching power to control are sufficient. That is not the law. Although direct participation in the underlying violation is not required, there must be some allegation of an ability to control the specific transaction or activity upon which the underlying securities claims are based. Here, there are no allegations that Thoma Bravo had the ability to control SolarWinds' allegedly misleading cybersecurity statements. That, alone, is fatal to Plaintiff's control person claim.

*Second*, Plaintiff's Opposition confirms that their only basis for suing Thoma Bravo is the fact that Thoma Bravo, a private equity firm, held a ***minority*** equity position in SolarWinds, which came with the right to appoint three of the Company's ten directors. But because it is difficult to allege control based on minority ownership, Plaintiff insists that Thoma Bravo's interests can be aggregated with those of Silver Lake, an entirely separate and independent private equity firm that has also invested in SolarWinds. There is no basis in law or fact to aggregate these two separate and independent private equity firms, and Plaintiff provides none.

*Third*, in the face of contrary authority from this Circuit, Plaintiff insists that the New York Stock Exchange's ("NYSE") definition of "controlled company" governs the analysis of Section 20(a) claims. If that were the law, it would expand control person liability to anyone who makes

1

significant investments in a public, "controlled company" as defined by the NYSE, as opposed to Congress. To the contrary, courts have recognized that rules like those of the NYSE do not dictate securities law liability.

Plaintiff's claim against Thoma Bravo should be dismissed in its entirety and with prejudice.

## ARGUMENT

### I. Plaintiff Misapprehends the Legal Standard for Control Person Liability.

Under Section 20(a) of the Exchange Act, control person liability lies only against a "person who, directly or indirectly, controls any person liable" for certain securities violations. 15 U.S.C. § 78t(a). To state a control person claim, "the plaintiff must allege (1) a primary violation by a controlled person; and (2) direct or indirect control of the primary violator by the defendant." *In re ArthroCare Corp. Secs. Litig.*, 726 F. Supp. 2d 696, 729 (W.D. Tex. 2010). Although control is a fact-specific inquiry, the Fifth Circuit has provided clear guideposts. *First*, "status" alone, whether as a controlling shareholder or otherwise, "will not automatically cause a defendant to be deemed a control person." *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1980); *Zishka v. Am. Pad & Paper Co.*, No. CIV.A.3:98-CV-0660-M, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001). *Second*, "a plaintiff must at least establish that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Heck*, 775 F.3d at 283; *see Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 316 (5th Cir. 2020).

Tellingly, Plaintiff ignores the binding rulings from *Dennis*, *Heck* and their progeny, and instead cherry-picks language from district court cases in order to try to avoid the pleading burden. Plaintiff claims that they "need only allege that the defendant possessed the power to control the primary violator, not that control was exercised," and nothing more. (Opp'n at 67 (citing *Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, No. 4:19-CV-957, 2021 WL 1416025, at *10 (S.D.

Tex. Apr. 14, 2021)).) But the *Camelot* plaintiffs did not rest on conclusory allegations of a general power to control; rather, as *Heck* requires, they alleged the ability to control based on a "complex web of securities ownership, contract, business relationships, interlocking directors, and other factors," *id.* at *12, including that the purported control person defendants were directly involved in providing information for the allegedly fraudulent proxy statement at issue. (*Camelot*, Second Am. Compl., ¶¶ 56, 177, 386, Dkt. 69 (April 6, 2020).) Here, by contrast, the sole basis for naming Thoma Bravo as a defendant is its minority ownership of equity and right to name three directors to SolarWinds' ten-member board. Likewise, Plaintiff's reliance on *One Longhorn Land I, L.P. v. Defendant FF Arabian, LLC*, No. 4:15cv203-RC-CMC, 2015 WL 7432360 (E.D. Tex. Nov. 23, 2015), is misplaced. There, the court applied the standard from *Heck*, finding control liability based on the defendants' actual control over the specific transactions at issue. *See Longhorn*, 2015 WL 7432360, at *2 (defendant "continuously and systematically exerted paternal and financial influence and control over [his son] Brian Presley in order to direct or cause the direction of Brian Presley's actions relating to" the alleged violations). Similarly, in *McNamara v. Bre-X Minerals Ltd.*, 46 F. Supp. 2d 628, 636 (E.D. Tex. 1999) (*see* Opp'n at 67), the court found control liability because the defendant had "the power to influence and control and did influence and control, directly or indirectly, the decision-making of [the company], including the content and dissemination of the various statements which plaintiffs contend are false."[1]

The underlying securities violation alleged against SolarWinds centers on representations regarding cybersecurity made on SolarWinds' website, in SolarWinds' Security Statement, and in certain interviews. (*See, e.g.*, Compl. ¶¶ 201-23.) There is not a single allegation in the Complaint

---

[1] Thoma Bravo's argument has never and does not now rely on any heightened pleading standard under Rule 9(b). (*See* Opp'n at 67.)

3

(nor in Plaintiff's Opposition) suggesting that Thoma Bravo had the ability to control the content of any of these representations. Accordingly, Plaintiff has not stated a claim for control person liability. *See Heck*, 775 F.3d at 283; *see also Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 855 F. App'x 902, 905 (5th Cir. 2021) ("The alleged primary violations in this case are material omissions from the offering memorandum. So to establish that the [defendants] were control persons, the [plaintiffs] must show that they had the ability to control the content of the offering memorandum.").

## II.     There Is No Legal or Factual Basis to Aggregate Thoma Bravo's and Silver Lake's Interests.

Generally, courts tend to be skeptical of control person claims that are based on minority equity ownership. *See, e.g.*, *In re Alstom SA*, 406 F. Supp. 2d 433, 489 (S.D.N.Y. 2005) ("Minority stock ownership is not enough to establish control person liability, since minority stock ownership does not give the owner the power to direct the primary violator.").[2] Given these headwinds, it is unsurprising that Plaintiff has attempted to aggregate Thoma Bravo's and Silver Lake's separate and distinct ownership interests, lumping them together using the defined term "Private Equity Firms." (*See* Compl. ¶¶ 28, 265-66.) To be clear, the Complaint contains no substantive control-related allegations involving Thoma Bravo alone. All of the relevant allegations presume that Thoma Bravo and Silver Lake act in concert.

---

[2]    Plaintiff also disputes whether day-to-day control allegations are required to state a Section 20(a) claim. (Opp'n at 72.) Although the Fifth Circuit has not yet addressed the issue, *see Heck*, 775 F.3d at 283 n.18, district courts in this Circuit have extended control liability to defendants holding minority ownership interests where other indicia of control are present, such as day-to-day control, *see, e.g.*, *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981) (finding control liability where the defendant owned 24% of the company's stock, was an officer and director of the company, and was involved in day-to-day coordination of business activities); *McNamara*, 46 F. Supp. 2d at 636 (finding control liability where defendant had "involvement in the day-to-day operations," including the "decision-making" and "the content and dissemination of the various statements plaintiffs contend are false").

In response, Plaintiff argues that aggregation is appropriate because Thoma Bravo and Silver Lake purchased and sold similar amounts of SolarWinds shares in 2016 and 2018. (Opp'n at 70.) Those allegations do not come close to supporting an inference that these two separate and independent entities should be treated as one. And, even if the Court were to infer some coordination on the timing of share purchases, that would say nothing about Thoma Bravo's or Silver Lake's ability to control the statements on SolarWinds' website, in SolarWinds' Security Statement, and in interviews. *Heck*, 775 F.3d at 283. Apparently Plaintiff believes they can carry their burden by noting these innocuous facts concerning share purchases and bolding the word "together" multiple times. (Opp'n at 70). Of course, this threadbare argument is exactly the sort of "conclusory assertion" rejected by the court in *In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 676 n.24 (N.D. Tex. 2013) (refusing to "credit the [plaintiff's] conclusory assertion that [two entities] acted jointly based on [a] bare allegation").

Plaintiff's cited authorities do not help them either. (Opp'n at 69-70.) For example, in *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Tech. Corp.*, the aggregated control group consisted of eleven corporate entities, all managed, controlled or otherwise affiliated with a private equity defendant, AEA. 450 F. Supp. 3d 379, 428 (S.D.N.Y. 2020). In other words, there was no doubt in *Evoqua* that the eleven separate defendants operated in concert with one another. Plaintiff also relies on *In re Cobalt International Energy, Inc.*, No. CV H-14-3428, 2016 WL 215476, at *12 (S.D. Tex. Jan. 19, 2016). However, there, the court did not address the issue, taking as a given that aggregation was appropriate. *Id.* at *11-12. Accordingly, *Cobalt* is not instructive on the question of whether it is appropriate to aggregate Thoma Bravo's and Silver Lake's interests for control liability purposes.

Moreover, Plaintiff fails to respond to Thoma Bravo's cited authorities, which are directly on point. (Br. at 8-9.) Aggregating the separate interests of distinct defendants would only potentially be appropriate if there were non-conclusory allegations that they acted together to control the company. For example, in *Kosmos*, the court refused to aggregate two separate entities based on the allegation that they were acting in concert simply because "they controlled a majority of the voting power." 955 F. Supp. 2d at 676 n.24. Other courts have similarly held that "each defendant's control must be evaluated separately unless there is some basis on which to consider their collective action." *LLDVF, L.P. v. Dinicola*, No. 09-1280 (JLL), 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010). In *LLDVP*, the court rejected the plaintiffs' attempt to group two shareholders with others because, *inter alia*, there were no allegations that they "were responsible for or controlled drafting" of the alleged misstatements at issue. *Id*. Likewise, in *Fouad v. Isilon Systems, Inc.*, the court rejected the plaintiffs' effort to combine three venture capital groups to show majority ownership, reasoning that "[w]ithout additional allegations that the venture capital firms acted together to control [the company], these allegations of control by virtue of collective ownership are conclusory and unconvincing." No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008). Plaintiff makes no effort to distinguish these authorities. *See Robertson v. Gautreaux*, No. CV 16-341-JJB-RLB, 2017 WL 690542, at *6 (M.D. La. Feb. 21, 2017), *aff'd in part*, 731 F. App'x 337 (5th Cir. 2018) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

In any event, even if it were appropriate to aggregate Thoma Bravo's and Silver Lake's interests, the control person claim would still fail because "status as a major shareholder . . . does not, without more, create control person liability." *Dartley v. ErgoBilt Inc.*, No. CIV A.

398CV1442M, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001); *see also Kosmos*, 955 F. Supp. 2d at 675-76.  Indeed, Plaintiff's own cited authority, *Hill York Corp. v. Am. Int'l Franchises, Inc.*, 448 F.2d 680, 694 (5th Cir. 1971), confirms as much.  There, the Fifth Circuit explained:

> The issue of 'control' is a complex fact question which requires an examination of the relationships of the various alleged 'controlling persons' to the person or entity which transacted the sale of securities alleged to have violated the Act, *an examination of which cannot be limited to a cursory review of their proportionate equity positions, employment or director status on the relevant dates.*

*Id.* at 694 n.20 (emphasis added).  In other words, even assuming Plaintiff could allege an 80% equity ownership by aggregating Thoma Bravo and Silver Lake's shares, that alone would not state a control person claim.  Likewise, in *Carlton v. Cannon*, 184 F. Supp. 3d 428, 495-96 (S.D. Tex. 2016), the court dismissed a control-person claim against a 70% shareholder because even assuming *arguendo* that he was "deeply involved in and responsible for [the company's] operational strategy and financing," there were no allegations showing that he had the ability to control the public statements at the heart of the alleged underlying securities violation.  Here, too, Plaintiff has failed to establish Thoma Bravo's ability to control the specific alleged misstatements in SolarWinds' cybersecurity statements that are at the core of Plaintiff's underlying securities claims.  *Id.*; *see also Heck*, 775 F.3d at 283.

Plaintiff purports to "allege[] much more" than equity ownership, pointing to control of board seats and ability to win potential proxy contests.[3]  (Opp'n at 72.)  But those allegations merely restate Thoma Bravo's "status" as a major shareholder, which "will not automatically cause a defendant to be deemed a control person."  *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th

---

[3]  Plaintiff also insists that the "level of control" is a "hotly contested factual dispute" and "[s]uch fact disputes are not appropriate for resolution on the pleadings." (Opp'n at 72-73.)  To the contrary, there is no such dispute because Plaintiff has alleged no facts whatsoever demonstrating that Thoma Bravo had the ability to control the specific, allegedly misleading SolarWinds cybersecurity statements.

Cir. 1980). There is nothing unusual about a shareholder also having board seats that may allow it to win proxy contests; rather, those latter two facts are part and parcel of being a large shareholder. This bootstrapping is indicative of the fact that Plaintiff misunderstands the relevant standard: given that Plaintiff is unable to allege that Thoma Bravo had the power to control SolarWinds' alleged cybersecurity misstatements, they double down on Thoma Bravo's large shareholder "status," which courts have rejected. *See In re Franklin Bank Corp. Secs. Litig.*, 782 F. Supp. 2d 364, 380 (S.D. Tex. 2011).

**III.   Private NYSE Rules Do Not Dictate Statutory Control Person Liability.**

Plaintiff also cannot establish control person liability by pointing to statements required by NYSE rules that appear in SolarWinds' SEC filings. Plaintiff claims that there must be Section 20(a) liability because SolarWinds identified itself as a "controlled company" in its SEC filings and made related statements that Thoma Bravo "could exert significant influence" over SolarWinds. But these statements are required by any company that qualifies as a "controlled company" under a specific NYSE definition. (Br. at 14.) As courts have recognized, the NYSE term "controlled company," which applies to any listed company where more than 50% of voting power is held by a single person, entity, or group, is "largely irrelevant" to control liability under the federal securities laws. *Kosmos*, 955 F. Supp. 2d at 676 ("[Plaintiff] has not identified and the Court has not found any cases finding that such [controlled company] status under NYSE rules is relevant to the issue of control under securities laws."). To be sure, there is no indication that Congress intended to allow the NYSE to dictate the legal definition of control liability under the securities laws, and Plaintiff cites none.

In fact, Plaintiff disregards the numerous authorities cited by Thoma Bravo discussing why courts do not rely on definitional rules of private organizations like the NYSE in adjudicating securities law violations. (*See* Br. at 15-16.) Instead, Plaintiff copies statements from SolarWinds'

8

SEC filings and proclaims that they "are indicative of the Private Equity Firms' power to exert control over the Company." (Opp'n at 69.) To the contrary, all that those statements prove is that SolarWinds was a "controlled company" as defined by the NYSE, nothing more.

Plaintiff's cited authorities do not compel a contrary conclusion. (*Id.*) Plaintiff observes that in *Cobalt*, the court noted that "Cobalt identified itself as a 'controlled company'" and the "controlling entities 'have significant influence'" over Cobalt. (*Id.* (quoting *Cobalt*, 2016 WL 215476, at \*11).) But, in *Cobalt*, there is no indication that the "controlled company" statements actually factored into the court's decision-making. *See Cobalt*, 2016 WL 215476, at \*11. Rather, the court concluded that the plaintiffs had stated a control person claim based on other factors, and then, in dicta, observed that Cobalt's SEC filings also disclosed that it was a "controlled company" under the NYSE rules. *See id.*

Plaintiff also cites to *Evoqua*, an out-of-circuit decision. There, the court concluded that the plaintiff had stated a control person claim against a single private-equity defendant because the defendant had majority control before and after the IPO. *See* 450 F. Supp. 3d at 428. As discussed (*supra* at 5), Plaintiff does not (and cannot) make any such allegations against Thoma Bravo, a minority shareholder. And although the *Evoqua* court acknowledged the "controlled company" NYSE-mandated language in Evoqua's SEC filings, it did not suggest that those disclosures were sufficient to state a control person claim on their own. *Id.*

Plaintiff's belated attempt to distinguish *Kosmos* also fails. According to Plaintiff, *Kosmos* is inapposite because Plaintiff "has not relied on SolarWinds' mere 'election' to be 'treated as' a controlled company per the NYSE rules," but on SolarWinds' supposed "admi[ssion] ***why*** and ***how*** it was a controlled company." (Opp'n at 69 (emphasis in original).) That distinction is unavailing. The *Kosmos* court did not just consider Kosmos' "elect[ion] to be treated as a

9

'controlled entity' under [NYSE] rules," but expressly "t[ook] notice of the entirety of the Registration Statement," including "Kosmos' statement that it was a controlled company." 955 F. Supp. 2d at 676. The court nevertheless concluded that "Kosmos' statement that it was a controlled company under NYSE rules is largely irrelevant in determining whether the complaint alleges control person liability." *Id.*

In short, Plaintiff offers no rationale for why this Court should allow the NYSE's 50% rule to define "control" under Section 20(a). Accordingly, the Court should decline what is, at its core, an invitation by Plaintiff to substitute the NYSE's private judgment for that of Congress. Moreover, even if the NYSE guidelines were factored into the control person calculus, Plaintiff's claim would still fail because they have not connected this general "control" to an ability by Thoma Bravo to control the specific transaction or activity upon which the underlying securities claims against SolarWinds are based, nor could they.

## **CONCLUSION**

For the foregoing reasons, and those in Thoma Bravo's Opening Brief (Dkt. 45), Thoma Bravo respectfully requests that the Court dismiss Count II of the Complaint with prejudice.

Dated: November 1, 2021                                  Respectfully submitted,


/s/ *Anna G. Rotman*
Anna G. Rotman
Texas Bar No. 24046761
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone:  (713) 835-3600
Facsimile:  (713) 835-3601
Email:  anna.rotman@kirkland.com

and

Sandra C. Goldstein (*pro hac vice*)
Stefan Atkinson (*pro hac vice*)
Byron Pacheco (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  sandra.goldstein@kirkland.com
            stefan.atkinson@kirkland.com
            byron.pacheco@kirkland.com

*Attorneys for Defendant*
*Thoma Bravo, LP*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, a true and correct copy of the foregoing document was served through ECF filing on all persons receiving electronic notice in this case.

/s/ *Anna G. Rotman*
Anna G. Rotman