**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP<br><br>CLASS ACTION |

**LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TABLE OF CONTENTS**

**Page**

TABLE AUTHORITIES ...................................................................................................... iii

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE ........... 3

        A.      Counsel Is Entitled to a Reasonable Fee Award from the Common Fund ............. 3

        B.      The Requested Fee Is Reasonable Under Either the Percentage-of-the-
                Fund Method or the Lodestar Method ................................................................. 4

                1.      The Fee Request Is Reasonable Under the Percentage Method ................. 4

                2.      The Fee Request Is Reasonable Under the Lodestar Method ..................... 5

        C.      The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable ............. 7

                1.      The Time and Labor Expended ................................................................. 8

                2.      The Novelty and Difficulty of the Issues ................................................. 9

                3.      The Amount Involved and the Results Achieved ..................................... 11

                4.      The Skill Required to Perform the Legal Services Properly, and the
                        Experience, Reputation and Ability of the Attorneys .............................. 12

                5.      The Preclusion of Other Employment ...................................................... 13

                6.      The Customary Fee and Awards in Similar Cases .................................... 14

                7.      The Contingent Nature of the Fee ............................................................ 14

                8.      The Undesirability of the Case ................................................................ 14

                9.      Other Factors Considered by Courts Further Support the Requested
                        Fee as Fair and Reasonable ..................................................................... 15

                        a.      Public Policy Considerations Support the Requested Fee ............ 15

                        b.      Lead Plaintiff Has Approved the Requested Fee ......................... 16

                        c.      The Settlement Class's Reaction to Date .................................... 16

III.    PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE ........... 17

IV.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS UNDER THE PSLRA............................................................................................... 18

V.    CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Arthrocare Corp. Sec. Litig.*,
  2012 WL 12951371 (W.D. Tex. June 4, 2012) .......................................................................19

*Barton v. Drummond Co.*,
  636 F.2d 978 (5th Cir. 1981) .................................................................................................3

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985).............................................................................................................15

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................16

*Berger v. Compaq Computer Corp.*,
  Civil Action No. 98-1148, slip op. (S.D. Tex. Nov. 22, 2002)................................................5

*Billitteri v. Securities Am. Inc.*,
  2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)...........................................................6, 7, 14, 17

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015).......................................................................12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...............................................................................................................3

*Braud v. Transp. Serv. Co. of Ill.*,
  2010 WL 3283398 (E.D. La. Aug. 17, 2010) .........................................................................14

*Brown v. Phillips Petrol. Co.*,
  838 F.2d 451 (10th Cir. 1988) ...............................................................................................4

*Buettgen v. Harless*,
  2013 WL 12303194 (N.D. Tex. Nov. 13, 2013)......................................................................5

*Burford v. Cargill, Inc.*,
  2012 WL 5471985 (W.D. La. Nov. 8, 2012)......................................................................5, 13

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...............................................................................................4

*In re Capital One Consumer Data Security Breach Litig.*,
  No. 1:19-cv-1472, Order and Judgment (E.D. Va. Sept. 13, 2022).........................................9

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................................14

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ..........................................................19

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ..............................................................................6

*Di Giacomo v. Plains All Am. Pipeline*,
2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)......................................................5, 6

*Doyun Kim v. Advanced Micro Devices, Inc.*,
2019 WL 2232545 (N.D. Cal. May 23, 2019) ............................................................9

*Faircloth v. Certified Fin. Inc.*,
2001 WL 527489 (E.D. La. May 16, 2001)...............................................................17

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013)................................................................................12

*In re Frontier Commc'ns. S'holder Litig.*,
No. 3:17-cv-01617-VAB, Order (D. Conn. May 20, 2022) .......................................7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)..........................................................................................4

*Glock v. FTS Int'l, Inc.*,
2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) ..........................................................15

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)........................................................................................3

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ......................................................................................4

*Jenkins v. Trustmark Nat'l Bank*,
300 F.R.D. 291 (S.D. Miss. 2014) .....................................................................3, 5, 15

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................................................... *passim*

*Johnston v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996) ........................................................................................4

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. Apr. 9, 2010) ..........................................................7

*In re Mariott Int'l, Inc.*,
   31 F.4th 898 (4th Cir. 2022) ..................................................................................9, 11

*In re Merit Med. Sys., Inc. Sec. Litig.*,
   No. 8:19-cv-02326-DOC-ADS, Order (C.D. Cal. Apr. 15, 2022)...........................................7

*Miller v. Global Geophysical Servs. Inc.*,
   2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ........................................................................19

*In re OCA, Inc. Sec. & Derivative Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) ...........................................................................5, 9

*Peace Officers' Annuity & Benefit Fund v. DaVita Inc.*,
   2021 WL 2981970 (D. Colo. July 15, 2021) ...........................................................................14

*Prause v. TechnipFMC PLC*,
   2021 WL 6053219 (S.D. Tex. Mar. 23, 2021)......................................................................5, 15

*Pub. Empls' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
   Civ. A. No. 4:20-cv-00005-VMC, Order (N.D. Ga. May 31, 2023) ........................................7

*Reidinger v. Zendesk, Inc.*,
   2021 WL 796261 (N.D. Cal. Mar. 2, 2021), *aff'd*, 2022 WL 614235 (9th Cir.
   Mar. 2, 2022).............................................................................................................................9

*Ret. Sys. v. Dell Inc.*,
   2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ...........................................................................5

*Roussel v. Brinker Int'l, Inc.*,
   2010 WL 1881898 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th
   Cir. 2011) ................................................................................................................................11

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)..................................................................... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000)...................................................................................4, 13

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ....................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rs., Ltd.*,
   551 U.S. 308 (2007)...................................................................................................................3

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...................................................................17, 19

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire*
    *Litig.*, 56 F.3d 295 (1st Cir. 1995) ............................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...........................................................................4, 5, 7

*In re Venator Materials PLC Sec. Litig.*,
    No. 4:19-cv-03464, Order (S.D. Tex. Sept. 15, 2022)..................................................6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................4

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...............................................................6

**STATUTES AND RULES**

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4(a)(4) ............................................................................... *passim*

Fed. R. Civ. P. 23(h) ...........................................................................................1

H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730........................16

Pursuant to Federal Rule of Civil Procedure 23(h), Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), on behalf of Plaintiffs' Counsel, hereby respectfully moves for: (i) an award of attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded; (ii) payment of Plaintiffs' Counsel's litigation expenses in the amount of $270,449.02; and (iii) an award of $22,760.30 to Lead Plaintiff for its costs incurred directly as a result of representing the Settlement Class in the Action, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.     PRELIMINARY STATEMENT

After more than two years of hard-fought litigation, Lead Counsel has successfully achieved a settlement of this securities class action. The proposed Settlement, if approved by the Court, will resolve the Action in exchange for $26,000,000 in cash. As discussed in the Final Approval Motion and the accompanying Declaration of Jonathan D. Uslaner, the Settlement is a very favorable result for the Settlement Class in light of the significant litigation risks that Lead Plaintiff faced in the Action. Lead Counsel devoted substantial time and resources on a purely contingency-fee basis advancing the interests of the Settlement Class Members, and obtained a highly favorable result.

As detailed in the Uslaner Declaration, the $26 million Settlement was achieved as the result of Lead Counsel's extensive litigation efforts. These efforts included (i) conducting a detailed investigation of the claims at issue, including a comprehensive review of public SEC filings, conference calls, analyst reports, and news articles; (ii) interviewing over 50 former SolarWinds employees; (iii) preparing a detailed 100-page consolidated Complaint based on this extensive investigation; (iv) successfully defeating, in large part, Defendants' four motions to dismiss the Complaint though extensive briefing; (v) preparing and filing a motion for class certification and an accompanying expert report on market efficiency and class-wide damages;

(vi) consulting expensively with experts in financial economics and cybersecurity; and (vii) conducting substantial fact discovery, including obtaining and analyzing over 600,000 pages of relevant documents. ¶¶ 10-40. Lead Counsel also engaged in lengthy settlement negotiations facilitated by an experienced mediator, which included preparing detailed mediation briefs and two full-day mediation sessions. ¶¶ 41-45.

As compensation for these efforts and their commitment to bringing the Action to a successful conclusion for Settlement Class Members, Lead Counsel, on behalf of Plaintiffs' Counsel, requests a fee of 25% of the Settlement Fund, net of Litigation Expenses. An attorneys' fee request of 25% of the net recovery is consistent with—if not below—attorney fee awards commonly requested and approved in similar class actions. As courts have explained, "the customary fee awarded in securities cases in this District and across the country is 30% or more" and the "vast majority of Texas federal courts and courts in this District have awarded fees of 25%–33% in securities class actions." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *31 (N.D. Tex. Nov. 8, 2005).

Lead Plaintiff New York City District Council of Carpenters Pension Fund ("NYC Carpenters") has been actively involved in the Action, has approved of and supports the requested fees and expenses. *See* Declaration of Kristin O'Brien, Executive Director of NYC Carpenters (Ex. 2) ("O'Brien Decl."), at ¶¶ 6, 8. The reaction of the Settlement Class to date also supports the requests. Pursuant to the Court's Preliminary Approval Order, a total of 24,946 copies of the Notice have been mailed to potential Settlement Class Members and nominees through June 22, 2023, and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*. *See* Declaration of Alexander P. Villanova Regarding: (A) Mailing of Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion

2

Received to Date (Ex. 4) ("Villanova Decl.") at ¶¶ 8-9.  The Notice advised potential Settlement Class Members that Lead Counsel would seek fees in an amount up to 25% of the Settlement Fund and Litigation Expenses in an amount not to exceed $500,000.  *See* Notice ¶¶ 5, 54.  Although the deadline for Settlement Class Members to object to the requested fees and expenses has not yet passed, to date, there have been no objections to the fee or expense amounts set forth in the Notice.  ¶¶ 96, 108.

For all of these reasons and those set forth below, Lead Counsel respectfully requests that the Court approve their motion for attorneys' fees and litigation expenses.

## II.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE

### A.    Counsel Is Entitled to a Reasonable Fee Award from the Common Fund

The Supreme Court and the Fifth Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).  Awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

In addition to providing just compensation, awards of attorneys' fees from a common fund ensure that "competent counsel continue[s] to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).  The Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the Securities and Exchange Commission.  *Tellabs, Inc. v. Makor Issues & Rs., Ltd.*, 551 U.S. 308, 313 (2007).

3

**B.    The Requested Fee Is Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method**

In this Circuit, fees awarded to counsel from a common fund may be evaluated under either the percentage-of-the-fund method or the lodestar method.  Under either method, Lead Counsel's 25% fee request is fair and reasonable and warrants approval by the Court.

**1.    The Fee Request Is Reasonable Under the Percentage Method**

The Fifth Circuit has approved the percentage method for awarding fees, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("*Dell*") ("district courts in this Circuit regularly use the percentage method"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").  In light of these advantages, a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" has developed.  *Schwartz*, 2005 WL 3148350, at *26.[1]

Lead Counsel's 25% fee request is well within the range of percentage fees awarded in the Fifth Circuit in comparable cases.  *See Schwartz*, 2005 WL 3148350, at *27 ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942,

---

[1] Numerous other circuits have endorsed or even required the percentage method in common fund cases, such as this one.  *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988).

972 (E.D. Tex. 2000) ("attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third"); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *19 (E.D. La. Mar. 2, 2009) ("In securities suits, common fee awards generally fall within the 20 to 33 per cent range.").

A review of attorneys' fees awarded in class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the 25% fee request.  *See Prause v. TechnipFMC PLC*, 2021 WL 6053219, at *1-2 (S.D. Tex. Mar. 23, 2021) (awarding 33% of $19.5 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2020 WL 218518, at *1 (W.D. Tex. Jan. 10, 2020) (awarding 30% of $21 million settlement); *Buettgen v. Harless*, 2013 WL 12303194, at *1 (N.D. Tex. Nov. 13, 2013) (awarding 30% of $33.75 million settlement); *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement); *Berger v. Compaq Computer Corp.*, Civil Action No. 98-1148, slip op. at 2 (S.D. Tex. Nov. 22, 2002), ECF No. 148 (Ex. 7) (awarding 30% of $28.7 million settlement); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *8, *13 (S.D. Tex. Dec. 19, 2001) (awarding 30% of combined $29.5 million funds).

### 2.    The Fee Request Is Reasonable Under the Lodestar Method

Lead Counsel's fee request is also reasonable when considering counsel's "lodestar."  In this case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—demonstrates the reasonableness of Lead Counsel's fee request.

When utilizing the lodestar method "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43.  In securities class actions and other complex cases with substantial contingency risks, fees representing upward multipliers

5

of 2.26 to 4.5 of the lodestar are typically awarded to reflect contingency risks and other relevant factors. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.").

Through May 30, 2023, Plaintiffs' Counsel have spent over 6,200 hours of attorney and other professional support time prosecuting the Action on behalf of the Settlement Class. ¶ 85. Based on these hours, Plaintiffs' Counsel's lodestar is $3,398,326.25. *Id.*; *see also* Exs. 5A & 5B.[2] This lodestar is a function of the vigorous prosecution of the case for over two years, as described in the Uslaner Declaration. Counsel's work included a detailed investigation, preparation of a detailed consolidated Complaint, full briefing of Defendants' four motions to dismiss the Complaint, preparation of Lead Plaintiff's motion to certify the class, substantial discovery, and work with multiple experts. The 25% fee request represents a multiplier of approximately 1.9 on the lodestar value of Plaintiffs' Counsel's time—which is well within the normal range of multipliers approved in securities class actions. *See, e.g.*, *Billitteri v. Securities Am. Inc.*, 2011 WL 3585983, at *4, *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of $80 million settlement with a 1.97 multiplier); *Di Giacomo,* 2001 WL 34633373, at *8-11 (awarding 30% of $24.1 million settlement with a 5.3 multiplier).

Lead Counsel's hourly rates have been approved in numerous cases throughout the country, including cases in this Circuit. *See, e.g.*, Order Awarding Attorneys' Fees and Litigation Expenses,

---

[2] Further, should the Court approve the Settlement, Lead Counsel will continue to perform legal work on behalf of the Settlement Class. Lead Counsel will expend additional resources assisting Settlement Class Members with their Claim Forms and related inquires and working with the Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. *See Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

6

*In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464 (S.D. Tex. Sept. 15, 2022), ECF No. 129; *see also, e.g.*, Order, *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, Civ. A. No. 4:20-cv-00005-VMC (N.D. Ga. May 31, 2023), ECF No. 138; Order, *In re Frontier Commc'ns. S'holder Litig.*, No. 3:17-cv-01617-VAB (D. Conn. May 20, 2022), ECF No. 214; Order, *In re Merit Med. Sys., Inc. Sec. Litig.*, No. 8:19-cv-02326-DOC-ADS (C.D. Cal. Apr. 15, 2022), ECF No. 118.

In sum, whether calculated utilizing the percentage-of-recovery method or the lodestar method, the requested fee is reasonable and well within the range of fees awarded by courts in these actions.

### C.    The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*") also confirms that a 25% fee award is fair and reasonable in this case. The *Johnson* factors are:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[3]

---

[3] Two of the *Johnson* factors—the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client"—are not relevant in this case. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 676 (N.D. Tex. Apr. 9, 2010) ("not every factor need be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

7

*Id.*; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors); *Billitteri*, 2011 WL 3586217, at \*3 (same). In addition, courts may consider other factors, such as (i) public policy considerations, (ii) the class representative's approval of the fee, and (iii) the reaction of the class. Consideration of these factors here provides further confirmation that the fee requested is reasonable.

### 1.    The Time and Labor Expended

The substantial time and effort expended by Plaintiffs' Counsel in prosecuting this Action and achieving the Settlement powerfully supports the requested fee. Over the last two years, Plaintiffs' Counsel, among other things:

- conducted a detailed factual investigation into the Settlement Class's claims, which included interviews of over 50 former SolarWinds' employees and a thorough review of SolarWinds' SEC filings, analyst reports, call transcripts, and news articles (¶¶ 14-15);

- consulted with experts across a variety of disciplines, including financial economics and cybersecurity (¶¶ 39-40);

- drafted a 100-page Consolidated Class Action Complaint ("Complaint") based on Lead Counsel's investigation (¶¶ 16-17);

- opposed Defendants' four motions to dismiss the Complaint (in a 73-page omnibus brief) and largely defeated those motions (¶¶ 18-24);

- engaged in substantial document discovery, which included participation in numerous negotiations with Defendants regarding the scope and volume of discovery in the Action, directing document subpoenas to ten non-parties, and a review and analysis of more than 600,000 pages of documents produced by Defendants and non-parties (¶¶ 26-37);

- assisted Lead Plaintiff in responding to Defendants' discovery requests, resulting in the production of over 35,000 pages of documents (¶ 36);

- prepared and filed Lead Plaintiff's motion for class certification, which included a supporting expert report on market efficiency and class-wide damages prepared by Lead Plaintiff's expert in financial economics, Dr. Steven P. Feinstein (¶ 38);

8

- engaged in hard-fought, arm's-length settlement negotiations facilitated and supervised by Ms. Yoshida, including two rounds of mediation briefing and two full-day mediation sessions (¶¶ 41-43); and

- negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related Settlement documents (¶¶ 44-45).

As noted above, Plaintiffs' Counsel expended over 6,200 hours prosecuting this Action, with a lodestar value of approximately $3.4 million. ¶¶ 85. This time and effort were critical in obtaining the favorable result represented by the Settlement.

### 2.     The Novelty and Difficulty of the Issues

The difficulty of questions presented by the litigation may also be considered in determining the reasonableness of a requested fee. *See Johnson*, 488 F.2d at 718. Courts have long recognized that securities class actions are complex and challenging, and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *OCA*, 2009 WL 512081, at *21; s*ee also Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain.").

This case was no exception. From the outset of this case, Lead Plaintiff faced substantial challenges to establishing Defendants' liability. Indeed, many securities class actions arising from cybersecurity issues have been dismissed at the pleadings stage in recent years. *See, e.g. Reidinger v. Zendesk, Inc.*, 2021 WL 796261 (N.D. Cal. Mar. 2, 2021) (dismissed for failure to adequately plead falsity and scienter), *aff'd*, 2022 WL 614235 (9th Cir. Mar. 2, 2022); *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-cv-1472 (AJT/JFA), Order and Judgment (E.D. Va. Sept. 13, 2022), ECF No. 2262 (dismissed for failure to adequately plead scienter); *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545 (N.D. Cal. May 23, 2019) (dismissed for failure to adequately plead falsity and scienter); *In re Mariott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022) (affirming dismissal for failure to adequately plead falsity).

9

Even after having successfully overcome Defendants' motions to dismiss in large part, Lead Plaintiff still faced a number of significant challenges to establishing liability and damages at trial. First, to prevail on its claims, Lead Plaintiff would need to convince the trier-of-fact on a full discovery record that the challenged statements were materially false or misleading. ¶¶ 51-55. This was no small hurdle in this case. Lead Plaintiff anticipates that Defendants would contend, pointing to internal documents and testimony, that SolarWinds did, in fact, have robust cybersecurity practices and protocols in place during the Class Period. Specifically, Lead Plaintiff anticipated that Defendants would argue that SolarWinds (i) had a dedicated Information Security Team, (ii) maintained written information security policies, (iii) conducted cybersecurity training, (iv) enforced a password policy, (v) imposed role-based limitations on user access, and (vi) adhered to the voluntary guidance of the NIST Cybersecurity Framework. ¶ 53. While Lead Plaintiff prevailed at the motion-to-dismiss stage, there was no certainty that it would have succeeded on a more complete factual record at summary judgment or before a jury at trial.

Additionally, Lead Plaintiff would need to overcome Defendants' anticipated argument that the alleged deficiencies in SolarWinds' cybersecurity systems did not cause the cyberattack at issue. In support of this contention, Defendants likely would submit expert testimony that the cybersecurity attack was the result of a very sophisticated nation-state that would have successfully infiltrated SolarWinds' platform, regardless of any deficiencies in the Company's cybersecurity controls. ¶ 54. This argument would boil down to a "battle of the experts," and there is no guarantee that a jury would accept the opinions of Lead Plaintiff's cybersecurity expert.

Second, the Action also presented substantial risks from the outset in proving that Defendants acted with scienter, i.e., intentionally or with severe recklessness. ¶¶ 56-57. To prevail at summary judgment and trial, Lead Plaintiff would likely need to overcome Defendants'

arguments that they genuinely believed their statements were true and that they had no motive to commit fraud. ¶ 56. Among other things, Lead Plaintiff would need to convince the fact-finder that Defendant Brown acted with scienter, even though he did not engage in any alleged suspicious "insider sales." ¶ 57.

Third, Lead Plaintiff faced challenges proving loss causation and damages in this Action. ¶¶ 58-59. Lead Plaintiff anticipated that Defendants would strenuously argue that the price declines in SolarWinds common stock were caused by news of an unforeseeable cybersecurity attack on SolarWinds—and not by the disclosure of any alleged deficiencies in the Company's cybersecurity controls. ¶ 59. Defendants contended that the sophisticated cyberattack on SolarWinds would have defeated even the most robust security measures and, thus, the alleged misstated deficiencies in SolarWinds' cybersecurity did not actually cause Lead Plaintiff's losses. *Id*. Defendants' contention, if accepted by the Court at summary judgment or a jury at trial, could eliminate or dramatically reduce recoverable damages in this case—even if Defendants were found to have made materially false statements.

Notwithstanding these significant difficulties and uncertainties, Plaintiffs' Counsel zealously prosecuted this Action to secure the best result for the Settlement Class. Accordingly, this factor weighs in favor of the requested fee.

### 3.    The Amount Involved and the Results Achieved

Courts recognize that the result achieved is a factor to be considered in awarding attorneys' fees. *See Roussel v. Brinker Int'l, Inc.*, 2010 WL 1881898, at \*3 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th Cir. 2011) (considering "overall degree of success achieved" in awarding fees). Here, Plaintiffs' Counsel secured a $26 million cash Settlement that will provide payment to Settlement Class Members in the near term while avoiding the risks of continued litigation.

11

The recovery represents a material portion of the Settlement Class's maximum aggregate damages—and a much greater percentage of damages typically recovered in securities class actions. Lead Plaintiff's damages expert estimated the Settlement Class's maximum aggregate damages that could be established in this Action at trial was approximately $130 to $200 million. Defendants, meanwhile, asserted that damages were far lower, even assuming a verdict for the Settlement Class on all liability issues. Even accepting Lead Plaintiff's maximum estimates, the $26 million Settlement, accordingly, represents approximately 13% to 20% of the maximum damages that could be established for the Settlement Class. This level of recovery substantially exceeds the average level of recovery in such cases. *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (a settlement recovery of 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement approximating "4-8% of the 'best case scenario' potential recovery" deemed reasonable); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlements in securities class actions "have ranged from 3% to 7% of the class members' estimated losses").

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Courts also consider the skills required to litigate the Action and "the experience, reputation and ability of the attorneys" involved. *See Johnson*, 488 F.2d at 718-19. Here, as demonstrated by its firm resume, Lead Counsel is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases. Lead Counsel is consistently ranked among the top plaintiffs' firms in the country by reputable industry sources. As reflected in ISS/Securities Class Action Services' latest report

12

on the "Top 100 U.S. Class Action Settlements of All Time," BLB&G has been lead or co-lead counsel in more top recoveries in securities class actions than any other firm in U.S. history. BLB&G has taken complex cases such as this to trial, and it is among the few firms with experience doing so on behalf of plaintiffs in securities class actions. Plaintiffs' Counsel's experience and skill were essential to achieving a meaningful resolution to the Action.[4]

Courts have also recognized the quality of opposing counsel in assessing plaintiffs' counsel's efforts. *See, e.g.*, *Schwartz*, 2005 WL 3148350, at \*30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation"). In this Action, Defendants were represented by experienced and able counsel from King & Spalding LLP, Ropes & Gray LLP, Willkie Farr & Gallagher LLP, Edmundson Shelton Weiss PLLC, and Kirkland & Ellis LLP, who aggressively litigated this Action. In the face of this formidable opposition, Lead Counsel achieved a settlement on terms that were favorable to the Settlement Class. This factor also supports the requested fee.

### 5.    The Preclusion of Other Employment

Plaintiffs' Counsel dedicated substantial time and effort to the Action on a fully contingent basis. This curtailed their ability to assign their attorneys and professionals to perform work on other matters. Accordingly, this *Johnson* factor also supports the requested fee. *See, e.g.*, *Johnson*, 488 F.2d at 718; *Burford v. Cargill, Inc.*, 2012 WL 5471985, at \*3 (W.D. La. Nov. 8, 2012); *Shaw*, 91 F. Supp. 2d at 970.

---

[4] *See* Exhibits 5A-3 and 5B-3 for Plaintiffs' Counsel's resumes.

### 6. The Customary Fee and Awards in Similar Cases

As discussed above, Lead Counsel's fee request is well within the range of fees awarded in similar cases on a percentage or lodestar basis. *See* § II.B above. This factor further supports the reasonableness of the requested fee. *See Johnson*, 488 F.2d at 717-19.

### 7. The Contingent Nature of the Fee

Plaintiffs' Counsel undertook this Action on a fully contingent fee basis, assuming a substantial risk that the Action would yield no recovery and leave counsel uncompensated. Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31-32; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

### 8. The Undesirability of the Case

Although Plaintiffs' Counsel did not consider this case to be "undesirable," there were substantial risks in financing and prosecuting the Action on a fully-contingent basis, including the real possibility that Plaintiffs' Counsel would never receive compensation or reimbursement for its expenses. From the start, Plaintiffs' Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. *See, e.g.*, *Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transp. Serv. Co. of Ill.*, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

14

Indeed, the fact that Lead Plaintiff was the only movant for lead plaintiff status in this Action—in contrast to a more typical PSLRA case where there are several competing movants—highlights the difficulty and perceived "undesirability" of the case from the outset. *See Peace Officers' Annuity & Benefit Fund v. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) (finding that this *Johnson* factor supported a 30% fee award where motion for lead plaintiff had been unopposed). Accordingly, this factor further supports the requested fee.

### 9. Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, courts may consider other factors in determining an appropriate fee in a class action. *See, e.g.*, *Glock v. FTS Int'l, Inc.*, 2021 WL 1422714, at *1-2 (S.D. Tex. Apr. 13, 2021) (considering public policy and reaction of class in approving attorney fee award); *Prause*, 2021 WL 6053219, at *2 (considering class representative approval and reaction of class in approving attorney fee award). These additional factors further confirm the reasonableness of the fee request.

#### a. Public Policy Considerations Support the Requested Fee

A strong public policy interest favors rewarding law firms that bring successful securities litigation. As noted above, the Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Here, that public policy was advanced, as Lead Counsel achieved a meaningful recovery for investors, notwithstanding the absence of any recovery for SolarWinds investors from the SEC or any other regulatory agency. *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee.").

15

### b.     Lead Plaintiff Has Approved the Requested Fee

Lead Plaintiff NYC Carpenters is a multiemployer pension fund with more than $4.4 billion in funds under management. *See* O'Brien Decl. ¶ 4.  NYC Carpenters played an active role in the prosecution and resolution of the Action and, as such, has a sound basis for assessing the reasonableness of the fee request and supporting its approval.  See i*d* ¶ 6.[5]  NYC Carpenters has endorsed the requested fee as fair and reasonable, after consideration of, among other things, the time and effort dedicated to the case by Plaintiffs' Counsel, the skill demonstrated, and the considerable risks involved in the litigation. *See id.* ¶ 8.  This further supports the reasonableness of the fee request. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) ("When class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the court should give the terms of that agreement great weight.").

### c.     The Settlement Class's Reaction to Date

The reaction of the Settlement Class to date also supports the requested fee.  As of June 22, 2023, a total of 24,946 Notices have been mailed to potential Settlement Class Members and nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for attorneys' fees in an amount up to 25% of the Settlement Fund and Litigation Expenses in an

---

[5] The PSLRA was intended to encourage institutional investors like Lead Plaintiff to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests.

16

amount not to exceed $500,000.  *See* Notice ¶¶ 5, 54.  To date, no objections to these amounts have been received.  ¶¶ 96, 108.[6]

### III.    PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Lead Counsel also requests payment of $270,449.02 from the Settlement Fund for expenses that Plaintiffs' Counsel reasonably incurred in prosecuting and resolving the Action. These expenses are properly recovered by counsel. *See The Erica P. John Fund, Inc*. v. *Halliburton Co.*, 2018 WL 1942227, at *14 (N.D. Tex. Apr. 25, 2018) ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri*, 2011 WL 3585983, at *10; *Faircloth v. Certified Fin. Inc.*, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (awarding costs in addition to the percentage fee).  Plaintiffs' Counsel's expenses are set forth by category in Exhibit 6.

The largest component of Plaintiffs' Counsel's expense request relates to fees payable to Lead Plaintiff's experts and consultants.  ¶ 101.  As detailed in the Uslaner Declaration, Lead Plaintiff retained several highly qualified experts in disciplines including market efficiency, damages, loss causation, and cybersecurity to assist in the prosecution of this Action.  These experts were critical to the prosecution and resolution of the Action.  For example, Lead Counsel worked extensively with Lead Plaintiff's financial economist, Dr. Steven P. Feinstein, in connection with class certification.  ¶¶ 38-39.  Lead Plaintiff also consulted with Michael Hartzmark, a financial economist who provided expert advice on damages and loss causation issues.  Lead Plaintiff also consulted with Professor Justin Capos, who provided expert advice on cybersecurity issues.  In addition, after the Parties reached their agreement in principle to resolve

---

[6] Lead Counsel will address any objections that may be received in reply papers to be filed with the Court on July 21, 2023.

the Action, Lead Counsel worked with Dr. Hartzmark's team in formulating the proposed Plan of Allocation.  ¶¶ 39-40, 101.

Other components of Plaintiffs' Counsel's expenses included the costs of on-line legal and factual research and expenses associated with the databases utilized to host, organize, and search the voluminous document productions in this Action.  ¶¶ 102-103.  In addition, Lead Counsel paid for services provided by the mediator, Ms. Yoshida, in conducting the two mediation sessions ($13,580.00).  ¶ 104.  These and the other types of expenses incurred by Lead Counsel were necessary to the successful prosecution of this Action and routinely charged to clients billed by the hour.  ¶¶ 100, 106.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for Litigation Expenses in an amount not to exceed $500,000.  The total amount of expenses requested $293,209.32—which includes $270,449.02 in litigation expenses incurred by Plaintiffs' Counsel and the $22,760.30 requested for Lead Plaintiff's costs and expenses discussed below— is substantially below the amount listed in the Notice.  Moreover, as noted above, to date, there has been no objection to the request for expenses.

## IV.     LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS UNDER THE PSLRA

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Consistent with that statute, Lead Plaintiff seeks an award based on the time dedicated by its employees and counsel in furthering and supervising the Action.  Specifically, Lead Plaintiff seeks an award of $22,760.30.  *See* O'Brien Decl. (Ex. 2), at ¶¶ 10-14.

18

Lead Plaintiff took an active role in the Action and has been fully committed to pursuing the claims on behalf of the Settlement Class since becoming involved in the Action. During the course of the litigation, Lead Plaintiff communicated regularly with Lead Counsel regarding strategy and developments, reviewed pleadings and briefs filed in the Action, assisted in responding to discovery requests, and consulted with Lead Counsel during the course of the Parties' settlement negotiations. *See* O'Brien Decl. (Ex. 2), at ¶¶ 6, 12. These efforts required employees of Lead Plaintiff to dedicate considerable time and resources to the Action, which they would have otherwise devoted to their regular duties. Specifically, Lead Plaintiff seeks $8,762.80 in reimbursement for the value of 60 hours dedicated to the Action by its executives. *Id.* ¶ 12. In addition, Lead Plaintiff also requests $13,997.50 in reimbursement for fees incurred by outside counsel who provided advice to NYC Carpenters in connection with its role as Lead Plaintiff in the Action as part of the PSLRA award. *Id.* ¶ 13. The total award sought by Lead Plaintiff here ($22,760.30) is reasonable and justified under the PSLRA.

Numerous courts have approved comparable awards to compensate representative plaintiffs in PLSRA class actions for the time and effort they spent on behalf of a class. *See, e.g., In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, at *3 (S.D. Tex. Feb. 13, 2019) (awarding aggregate of over $56,000 to four institutional plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4)); *The Erica P. John Fund*, 2018 WL 1942227, at *14 (awarding $100,000 to plaintiff as "compensation for the time it dedicated in supervising this action"); *Miller v. Global Geophysical Servs. Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to PSLRA lead plaintiff); *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *6 (W.D. Tex. June 4, 2012) (awarding $55,850 to PSLRA lead plaintiff).

## V.    CONCLUSION

For the reasons stated herein and in the Uslaner Declaration, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses; approve payment of Plaintiffs' Counsel's Litigation Expenses in the amount of $270,449.02, as well as the proposed award to Lead Plaintiff in the amount of $22,760.30.[7]

DATED:  June 23, 2023                                Respectfully submitted,

                                                                   */s/ Jonathan D. Uslaner*

                                                                   **BERNSTEIN LITOWITZ BERGER &**
                                                                          **GROSSMANN LLP**
                                                                   John J. Rizio-Hamilton (*pro hac vice*)
                                                                   Jonathan D. Uslaner (*pro hac vice*)
                                                                   Benjamin W. Horowitz (*pro hac vice*)
                                                                   Thomas Z. Sperber (*pro hac vice*)
                                                                   1251 Avenue of the Americas
                                                                   New York, New York 10020
                                                                   Tel: (212) 554-1400
                                                                   JohnR@blbglaw.com
                                                                   JonathanU@blbglaw.com
                                                                   Will.Horowitz@blbglaw.com
                                                                   Thomas.Sperber@blbglaw.com

                                                                   *Counsel for Lead Plaintiff and Lead Counsel*
                                                                   *for the Settlement Class*

                                                                   **MARTIN & DROUGHT, P.C.**
                                                                   Gerald T. Drought
                                                                   State Bar No. 06134800
                                                                   Federal Bar No. 8942
                                                                   Frank B. Burney
                                                                   State Bar No. 03438100
                                                                   Bank of America Plaza, 25th Floor
                                                                   300 Convent Street
                                                                   San Antonio, Texas 78205
                                                                   Tel: (210) 227-7591

---

[7] A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

Facsimile: (210) 227-7924
gdrought@mdtlaw.com
fburney@mdtlaw.com

*Liaison Counsel for Lead Plaintiff and the
Settlement Class*

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I electronically filed the foregoing by using the court's CM/ECF system.  Per agreement among the parties, all parties will be served by the CM/ECF system.

By: */s/ Jonathan D. Uslaner*
Jonathan D. Uslaner