**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP <br><br> <u>CLASS ACTION</u> |

**DECLARATION OF JONATHAN D. USLANER
IN SUPPORT OF: (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S
<u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

**PAGE (S)**

EXHIBIT LIST ................................................................................................................. iii

I.    HISTORY OF THE ACTION ....................................................................................3

      A.    Background ......................................................................................................3

      B.    The Commencement of the Action and the Appointment of Lead Plaintiff
            and Lead Counsel ............................................................................................4

      C.    The Investigation and Filing of the Complaint ...............................................4

      D.    Defendants' Motions to Dismiss .....................................................................5

      E.    The Parties Conduct Extensive Fact Discovery ..............................................7

            1.    Document Discovery ..............................................................................8

            2.    Discovery Disputes ................................................................................9

      F.    Lead Plaintiff's Motion for Class Certification ..............................................9

      G.    Work with Experts ........................................................................................10

      H.    The Parties' Mediation Efforts and the Settlement of the Action .................10

      I.    The Court Grants Preliminary Approval of the Settlement ...........................11

II.   RISKS OF CONTINUED LITIGATION .................................................................12

      A.    Risks Concerning Liability ............................................................................14

            1.    Falsity ..................................................................................................14

            2.    Materiality ............................................................................................15

            3.    Scienter ................................................................................................15

      B.    Risks Related to Loss Causation and Damages .............................................15

      C.    The Settlement Amount Compared to the Likely Maximum Damages
            that Could Be Proved at Trial .......................................................................16

III.  LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY
      APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE .................................17

IV.   ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT .................................19

V.    THE FEE AND EXPENSE APPLICATION ..............................................................22

A.     The Fee Application............................................................................................23

     1.     Lead Plaintiff Has Authorized and Supports the Fee Application.............23

     2.     The Time and Labor of Plaintiffs' Counsel ...............................................23

     3.     The Skill and Experience of Plaintiffs' Counsel........................................25

     4.     Standing and Caliber of Defendants' Counsel...........................................27

     5.     The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases................................27

     6.     The Reaction of the Settlement Class to the Fee Application ...................28

A.     The Litigation Expense Application ....................................................................29

VI.     CONCLUSION...................................................................................................32

**EXHIBIT LIST**

| Ex. No. | Description |
|---|---|
| 1 | Declaration of Michelle Yoshida in Support of Motion for Final Approval of Class Action Settlement ("Yoshida Decl.") |
| 2 | Declaration of Kristin O'Brien, Executive Director of the New York City District Council of Carpenters Pension Fund, in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("O'Brien Decl.") |
| 3 | CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2022 REVIEW AND ANALYSIS (2023) |
| 4 | Declaration of Alexander P. Villanova Regarding (A) Mailing of Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Villanova Decl.") |
| 5 | Summary of Plaintiffs' Counsel's Lodestar and Expenses |
| 5A | Declaration of Jonathan D. Uslaner on Behalf of Bernstein Litowitz Berger & Grossmann LLP in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses |
| 5B | Declaration of Frank B. Burney on behalf of Martin & Drought, P.C. in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses |
| 6 | Plaintiffs' Counsel's Total Expenses by Category |
| 7 | *Berger v. Compaq Computer Corp.*, Civil Action No. 98-1148, slip op. (S.D. Tex. Nov. 22, 2002), ECF No. 148 |

JONATHAN D. USLANER declares as follows:

1.      I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G").  BLB&G was appointed as Lead Counsel for Lead Plaintiff New York City District Council of Carpenters Pension Fund ("Lead Plaintiff" or "NYC Carpenters") in the above-captioned action (the "Action").  I have personal knowledge of the matters set forth herein based on my active participation in all aspects of the prosecution and settlement of the Action.[1]

2.      The proposed Settlement before the Court provides for the resolution of the claims in the Action in exchange for a cash payment of $26,000,000.00, plus interest, for the benefit of the Settlement Class.  The Settlement Amount has been paid into an escrow account and is earning interest.  As detailed herein, the Settlement provides a significant benefit to the Settlement Class by conferring a substantial, certain, and near-term recovery while avoiding the significant risks of continued litigation, including the risk that the Settlement Class could recover nothing or less than the Settlement Amount after years of additional litigation, appeals, and delay.

3.      The proposed Settlement is the result of extensive efforts by Lead Plaintiff and Lead Counsel, which included, among other things: (i) conducting an extensive investigation into the alleged fraud, including interviews of dozens of former employees of SolarWinds and a thorough review of public information such as filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, conference call transcripts, and news articles; (ii) drafting an initial complaint and a detailed consolidated Complaint based on Lead Counsel's extensive

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated November 28, 2022 (ECF No. 97-1) (the "Stipulation"), which was entered into by and among (i) Lead Plaintiff, on behalf of itself and the Settlement Class, and (ii) defendants SolarWinds Corporation ("SolarWinds" or the "Company"), Kevin B. Thompson, Timothy Brown, Silver Lake Group L.L.C., Silver Lake Technology Management, L.L.C., and Thoma Bravo, LP (collectively, "Defendants").

investigation; (iii) opposing Defendants' motions to dismiss the Complaint through detailed briefing; (iv) conducting substantial fact discovery, including exchanging initial disclosures, document requests, and interrogatories, and obtaining and reviewing over 600,000 pages of documents from Defendants and non-parties; (v) drafting a motion for class certification, which included an expert report on market efficiency and class-wide damages; (vi) consulting extensively with experts on loss causation, damages, market efficiency, and cybersecurity throughout the Action; and (vii) engaging in extended arm's-length settlement negotiations, which included two full-day mediation sessions with Michelle Yoshida of Phillips ADR Enterprises, an experienced mediator. As a result of these efforts, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims and defenses in the Action at the time they achieved the proposed Settlement.

4.      The $26 million Settlement was based on a mediator's recommendation made by Ms. Yoshida at the conclusion of the second mediation session. Ms. Yoshida has submitted a declaration describing the mediation process (attached as Exhibit 1). As Ms. Yoshida states in her declaration, "the negotiations between the Parties were vigorous and conducted at arm's length and in good faith." Yoshida Decl. ¶ 10.

5.      Lead Plaintiff—a sophisticated institutional investor that actively participated in the Action—endorses the approval of the Settlement. *See* Declaration of Kristin O'Brien, Executive Director of NYC Carpenters ("O'Brien Decl."), attached hereto as Exhibit 2, at ¶¶ 3-7.

6.      As discussed in further detail below, the proposed Plan of Allocation, which was developed with the assistance of Lead Plaintiff's damages expert, provides for the equitable distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms

that are approved for payment by the Court on a *pro rata* basis fairly based on losses attributable to the alleged fraud.

7.      For its efforts in achieving the Settlement, Lead Counsel requests a fee of 25% of the Settlement Fund, net of Litigation Expenses, for Plaintiffs' Counsel.[2]  As discussed in the Fee Memorandum, the requested fee is consistent with the percentage fees that courts within this Circuit typically award for similarly sized class action settlements.  Moreover, the requested percentage fee will result in a lodestar multiplier of approximately 1.9, which is well within the range of multipliers typically awarded in securities class actions.  Lead Counsel respectfully submits that the requested 25% fee is fair and reasonable in light of the result achieved in the Action, the efforts of Plaintiffs' Counsel, and the risks and complexity of the litigation.

## I.      HISTORY OF THE ACTION

### A.      Background

8.      Defendant SolarWinds Corporation is a software company that sells network monitoring software, with major customers that include large corporations and agencies of the United States government.  At all relevant times, SolarWinds common stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "SWI."

9.      On December 13, 2020, the press reported that cybercriminals had infiltrated certain of SolarWinds' servers, causing SolarWinds customers to download malware uploaded during the cyberattack.

---

[2] Plaintiffs' Counsel consists of Lead Counsel BLB&G and Liaison Counsel Martin & Drought, P.C. ("Martin & Drought").

**B.      The Commencement of the Action and the Appointment of Lead Plaintiff and Lead Counsel**

10.     In January and February 2021, related putative class actions were filed in the United States District Court for the Western District of Texas (the "Court") against SolarWinds alleging violations of the federal securities laws.

11.     In accordance with the PSLRA, Lead Counsel caused a notice to be published in a national newswire service on February 9, 2021 advising potential class members of the pendency of the action, the claims asserted, and the deadline by which putative class members could move the Court for appointment as lead plaintiff.

12.     On March 9, 2021, NYC Carpenters moved for appointment as Lead Plaintiff and to consolidate the three putative class actions.  (ECF No. 18.)  No other class member filed a motion for appointment as Lead Plaintiff.

13.     On March 11, 2021, the Court entered an order appointing NYC Carpenters as Lead Plaintiff for the Action, approving NYC Carpenters' selection of BLB&G as Lead Counsel, and consolidating the actions.  (ECF No. 19.)

**C.      The Investigation and Filing of the Complaint**

14.     In connection with this matter, Lead Counsel undertook an extensive investigation into the alleged fraud and potential claims that could be asserted in the Action.  The investigation included a thorough review of public information such as SEC filings, analyst reports, conference call transcripts, and news articles.

15.     In connection with its investigation, Lead Counsel and its in-house investigators also conducted an extensive search to locate former employees of SolarWinds and other industry participants who might have relevant information pertaining to the claims asserted in the Action. This included contacting over 200 former SolarWinds employees believed to possess potentially

4

relevant information. Lead Counsel and/or its in-house investigators spoke to 55 of these individuals, and Lead Counsel included detailed information received from 11 of these former SolarWinds employees in the Complaint.

16. On June 1, 2021, Lead Plaintiff filed and served the Consolidated Complaint for Violations of the Federal Securities Laws (ECF No. 26) (the "Complaint"). The detailed, 100-page Complaint asserts claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Thompson, Brown, Thoma Bravo, LP, Silver Lake Technology Management, L.L.C., and Silver Lake Group L.L.C. under Section 20(a) of the Exchange Act.

17. The Complaint alleged that during the period from October 18, 2018 through December 17, 2020, inclusive (the "Class Period"), Defendants made false statements concerning SolarWinds' cybersecurity program, including that it adhered to specific cybersecurity practices set forth in a "Security Statement" on its website. The Complaint alleged that such statements were false and misleading because SolarWinds allegedly sacrificed robust cybersecurity protocols in favor of increasing profitability, and that in reality, SolarWinds failed to follow certain cybersecurity practices. The Complaint further alleged that the price of SolarWinds' common stock was artificially inflated during the Class Period, and declined when the truth was revealed following the cyberattack on SolarWinds.

### D.   Defendants' Motions to Dismiss

18. On August 2, 2021, Defendants filed and served four motions to dismiss the Complaint. (ECF Nos. 41-45.) The motions included over 80 pages of briefing and were supported by over 475 pages of exhibits. In their motions, Defendants argued that the Complaint should be dismissed because Lead Plaintiff had not alleged any materially false and misleading statements made by Defendants during the Class Period; that certain challenged statements were

5

non-actionable because they were puffery or forward-looking; and that the Complaint failed to allege facts giving rise to a strong inference of scienter.

19.    On October 1, 2021, Lead Plaintiff filed and served a 73-page omnibus memorandum of law in opposition to Defendants' motions to dismiss (ECF No. 55), as well as an opposition to Defendants' request for judicial notice (ECF No. 54).  Lead Plaintiff explained that the Complaint adequately identified the false and misleading statements and omissions, detailed the reasons why each challenged statement was false or omitted material facts, and raised a strong inference of scienter.  Lead Plaintiff also filed an objection to Defendants' request for judicial notice of various exhibits.  (ECF No. 54.)

20.    On November 1, 2021, Defendants filed and served reply papers in support of their motions to dismiss the Complaint.  (ECF Nos. 58-63.)

21.    On March 30, 2022, the Court entered an Order denying Defendants' motions to dismiss the Complaint, except as to Defendant Thompson.  The Court also denied Defendants' request for judicial notice.  (ECF No. 64.)

22.    On April 8, 2022, Lead Plaintiff filed a motion for clarification pursuant to Federal Rule of Civil Procedure 60(a) concerning the Court's ruling on Defendant Thompson's motion to dismiss.  Specifically, Lead Plaintiff sought clarification of whether the Court intended to dismiss all claims against Defendant Thompson, or just Lead Plaintiff's 10(b) claims against him.  (ECF No. 67.)

23.    On April 20, 2022, Defendant Thompson filed an opposition to Plaintiff's motion for clarification and cross-moved for an entry of final judgement against him.  (ECF Nos. 68-69.) Lead Plaintiff opposed the motion for entry of final judgment on April 22, 2022, and Defendant Thompson filed a reply on April 25, 2022.  (ECF Nos. 70-71.)

24.     On August 19, 2022, the Court granted Lead Plaintiff's motion for clarification, and denied Defendant Thompson's motion for entry of final judgment.  (ECF No. 91.)

25.     On May 18, 2022, Defendants SolarWinds, Brown, Silver Lake, and Thoma Bravo filed their answers to the Complaint.  (ECF Nos. 72, 73, 75.)  Defendant Thompson filed his answer on September 28, 2022. (ECF No. 92.)  Among other things, Defendants' Answers denied Lead Plaintiff's allegations of wrongdoing and asserted various defenses to the claims pled against them.

### E.     The Parties Conduct Extensive Fact Discovery

26.     Discovery in the Action commenced in April 2022, following the Court's decision on Defendants' motions to dismiss.

27.     Lead Plaintiff served its First Set of Requests for the Production of Documents to Defendants on April 19, 2022, and its Second Set of Requests for the Production of Documents on May 10, 2022.  Meanwhile, Defendants served to Lead Plaintiff their First Set of Document Requests on June 3, 2022.

28.     On May 19, 2022, following extensive meet-and-confers, the Parties submitted a proposed Scheduling Order to the Court.  (ECF No. 78.)

29.     On June 7, 2022, the Court held an initial pretrial conference (ECF No. 89) and entered a Scheduling Order (ECF No. 90).  The deadlines set forth in the Scheduling Order required Lead Plaintiff to file its motion for class certification by September 30, 2022 and the Parties to complete fact discovery by March 15, 2023.  (*Id*.)

30.     On June 1, 2022, the Parties exchanged their Initial Disclosure Statements pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

31.     The Parties also negotiated the terms of the protective order governing the treatment of documents and other information produced in discovery, which the Parties submitted to the

Court on May 19, 2022.  (ECF No. 79.)  The Court entered the stipulated protective order on May 24, 2022.  (ECF No. 81.)

### 1.    Document Discovery

32.    Defendants served their Responses and Objections to Lead Plaintiff's First Set of Requests for Production of Documents on May 19, 2022 and began the production of documents later that month.  In the months that followed, Lead Counsel engaged in numerous meet-and-confers with counsel for Defendants, both by telephone and in person, and conducted extensive negotiations over the scope and adequacy of Defendants' discovery responses, including relating to the search terms to be used and the date range with which documents would be searched and produced.  After hard-fought negotiations, Defendants agreed to produce virtually all of the materials requested by Lead Plaintiff.

33.    Lead Plaintiff also subpoenaed ten non-parties, including relevant SolarWinds directors, former employees, and consultants.

34.    Lead Plaintiff served a set of interrogatories on Defendants on June 17, 2022.  Defendants served their responses to Lead Plaintiff's First Set of Interrogatories on July 18, 2022.

35.    In response to Lead Plaintiff's requests for production of documents and subpoenas, Defendants and non-parties produced over 600,000 pages of documents to Lead Plaintiff.  Lead Counsel reviewed, analyzed, and coded the documents received.  In reviewing the documents, attorneys were tasked with making several analytical determinations as to the documents' importance and relevance.  Specifically, they determined whether the documents were "hot," "relevant," "adverse hot," or "not relevant."  They also assessed which specific key issues the documents concerned.  Lead Counsel's partners structured the document review to include regular team meetings to discuss the documents of highest interest and other issues that arose during the document review.  Through these meetings, Lead Counsel ensured that all attorneys involved in

the review understood the developing nature of the evidence and focused document review on the key issues in the Action.

36.     Lead Counsel also assisted Lead Plaintiff in searching for and producing documents in its own files responsive to Defendants' requests for production of documents.  Defendants served their First Request for Production of Documents to Lead Plaintiff on June 3, 2022, which requested 35 categories of documents.  Lead Plaintiff filed their Responses and Objections to Defendants' requests on August 4, 2022 and began producing documents to Defendants in September 2022.  In total, Lead Plaintiff produced nearly 35,000 pages of documents to Defendants in response to their requests.  Lead Plaintiff also responded to interrogatories propounded by Defendants.

### 2.     Discovery Disputes

37.     Discovery in the Action was highly contested.  Lead Counsel and Defendants' Counsel exchanged numerous letters and participated in numerous meet-and-confer sessions regarding, among other things, the scope of the documents collected and produced, the adequacy of the search terms and date range of productions, and the adequacy of responses to interrogatories. Through their extensive and good-faith negotiations, the Parties were able to resolve their dispute disputes without requiring the Court's intervention.

### F.     Lead Plaintiff's Motion for Class Certification

38.     On September 30, 2022, Lead Plaintiff filed its motion for class certification.  (ECF No. 93.)  The motion was supported by a memorandum of law and an expert report by Dr. Steven P. Feinstein, Lead Plaintiff's market efficiency expert.  In his report, Dr. Feinstein opined that SolarWinds' common stock traded in an efficient market during the Class Period and that per-share damages could be measured for all class members using a common methodology.  (ECF No. 93-3.)

### G.    Work with Experts

39.    Throughout the Action, Lead Plaintiff retained several highly qualified experts and consultants in disciplines including damages, loss causation, market efficiency, and cybersecurity to assist in the prosecution of this Action.  Lead Counsel consulted extensively with these experts and consultants throughout the litigation, including both before and after filing the Complaint in this Action.  Lead Plaintiff's experts and consultants included: (a) Steven P. Feinstein, a financial economist who served as Lead Plaintiff's expert on market efficiency and class-wide damages; (b) Michael Hartzmark, a financial economist who provided Lead Plaintiff with expert advice on damages and loss causation issues; and (c) Professor Justin Capos, who provided expert advice on cybersecurity issues.

40.    Lead Counsel consulted with these experts in preparing the Complaint, in reviewing documents produced in discovery, and in preparation for settlement negotiations.  In addition, after the Settlement was reached, Lead Counsel worked with Dr. Hartzmark's team to develop the Plan of Allocation.

### H.    The Parties' Mediation Efforts and the Settlement of the Action

41.    The Parties first began exploring the possibility of a mediation while Defendants' motions to dismiss were pending in the fall of 2021.  The Parties conferred and selected Michelle Yoshida to serve as the mediator for the Action.  Ms. Yoshida is an experienced mediator of securities class actions and other complex litigation.  On November 19, 2021, the Parties exchanged detailed mediation statements addressing issues of liability and damages.  A mediation session with Ms. Yoshida was held on December 6, 2021.  At the mediation session, the Parties engaged in vigorous settlement negotiations with Ms. Yoshida's assistance, but they were not able to reach an agreement.

42.     Following the Court's denial of Defendants' motions to dismiss, and after extensive fact discovery, the Parties engaged in further discussions concerning a possible settlement of the Action. To this end, the Parties scheduled an additional mediation session before Ms. Yoshida. On September 15, 2022, the Parties exchanged new mediation statements, which contained numerous exhibits of documents produced during the course of discovery.

43.     The second mediation session with Ms. Yoshida was conducted on October 26, 2022. At the conclusion of the second mediation, Ms. Yoshida issued a mediator's recommendation to the Parties that the Action be resolved in exchange for payment of $26,000,000 in cash, which the Parties accepted.

44.     The Parties' agreement-in-principle to settle the Action was memorialized in a term sheet executed on October 28, 2022. Over the next few weeks, the Parties negotiated the full terms of the Settlement and drafted the Stipulation and related papers, including the notices to be provided to the Settlement Class.

45.     On November 28, 2022, the Parties executed the Stipulation (ECF No. 97-1), which sets forth the terms of the Parties' agreement to settle all claims asserted in the Action for $26,000,000.00, subject to the Court's approval. That same day, Lead Plaintiff and SolarWinds entered into a Supplemental Agreement, which provides that SolarWinds has the right to terminate the Settlement if the number of persons who request exclusion from the Settlement Class reaches a certain threshold. *See* Stipulation ¶ 36

I.     **The Court Grants Preliminary Approval of the Settlement**

46.     On December 8, 2022, Lead Plaintiff filed a motion for preliminary approval of the Settlement. (ECF No. 97.)

47.     Following a hearing on February 7, 2023, the Court entered the Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 103) (the

11

"Preliminary Approval Order") which, among other things: (a) preliminarily approved the Settlement; (b) approved the form of Notice, Summary Notice, and Claim Form; (c) authorized notice to be provided to Settlement Class Members through mailing of the Notice and Claim Form, posting of the Notice and Claim Form on a Settlement website, and publication of the Summary Notice in *The Wall Street Journal* and over the *PR Newswire*; (d) established procedures and deadlines by which Settlement Class Members could participate in the Settlement, request exclusion from the Settlement Class, or object to the Settlement, the proposed Plan of Allocation, and/or the fee and expense application; and (e) set a schedule for the filing of opening papers and reply papers in support of the proposed Settlement, Plan of Allocation, and the Fee and Expense Application.  The Court also scheduled the Settlement Fairness Hearing for July 28, 2023 at 2:00 p.m. to determine, among other things, whether the Settlement should be finally approved.

## II.    RISKS OF CONTINUED LITIGATION

48.    The Settlement provides a certain and substantial benefit to the Settlement Class in the form of a $26,000,000 cash payment.  Lead Plaintiff and Lead Counsel believe that the proposed Settlement is a very favorable result for the Settlement Class.

49.    From the outset of this case, Lead Plaintiff faced substantial challenges to establish Defendants' liability.  Multiple securities class actions arising from cybersecurity issues have been dismissed at the pleadings stage. *See, e.g. Reidinger v. Zendesk, Inc.*, 2021 WL 796261 (N.D. Cal. Mar. 2, 2021) (dismissed for failure to adequately plead falsity and scienter); *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-cv-1472 (AJT/JFA) (E.D. Va. Sept. 13, 2022), ECF No. 2262 (dismissed for failure to adequately plead scienter); *Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545 (N.D. Cal. May 23, 2019) (dismissed for failure to adequately plead falsity and scienter); *In re Mariott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022) (affirming dismissal for failure to adequately plead falsity).  In addition, the related derivative action against

SolarWinds was also dismissed for failure to adequately allege that the Company's board failed to conduct adequate oversight, *see Constr. Indus. Laborers Pension Fund v. Bingle*, 2022 WL 4102492, at *1 (Del. Ch. Sept. 6, 2022), and that dismissal was recently affirmed on appeal. *See Constr. Indus. Laborers Pension Fund v. Bingle*, 2023 WL 3513271 (Del. May 17, 2023).

50.     Industry observers have called the proposed $26 million Settlement of this Action "significant and noteworthy," because of the contrast in the outcome here to the "number of high-profile [cybersecurity] cases have been dismissed, including against Capital One, Marriott, and Zendesk (as well as a derivative action against SolarWinds)." Kevin LaCroix & Jarret Sena, *SolarWinds Agrees to $26 Million Payout Over Massive Data Breach,* THE D&O DIARY (Nov. 22, 2022).[3]

51.     Notwithstanding its success at the pleading stage, Lead Plaintiff faced meaningful risks throughout the remainder of the litigation with respect to proving liability and recovering full damages in this case. Absent a settlement, Lead Plaintiff would still need to prevail at several additional stages of the litigation, including defeating Defendants' anticipated motions for summary judgment, prevailing at trial, and overcoming any appeals. At each of these stages, Lead Plaintiff would have faced significant risks related to establishing liability and full damages, including, among other things, overcoming Defendants' falsity and scienter challenges. Even after any trial, Lead Plaintiff would have faced post-trial motions, including a potential motion for judgment as a matter of law, as well as further appeals that might have prevented Lead Plaintiff from successfully obtaining a recovery for the Settlement Class.

---

[3]   *Available at*: https://www.dandodiary.com/2022/11/articles/securities-litigation/guest-post-solarwinds-agrees-to-26-million-payout-over-massive-data-breach/.

## A.    Risks Concerning Liability

52.    Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants in the Action are meritorious. They recognize, however, that this Action presented meaningful risks to establishing Defendants' liability. As discussed further below, Defendants vigorously argued that their challenged statements about SolarWinds' cybersecurity protocols were not false or misleading when made, and, in any event, Defendants did not have any intent to mislead investors.

### 1.    Falsity

53.    Lead Plaintiff and Lead Counsel recognized that, while they prevailed at the motion to dismiss stage, they may have been unable to convince a jury of Defendants' liability. Among other things, Lead Plaintiff recognized the challenges in proving that Defendants' statements were materially false and misleading when made. Lead Plaintiff and Lead Counsel anticipated that Defendants would contend that SolarWinds did, in fact, have sufficient cybersecurity practices and protocols in place during the Class Period. Specifically, Defendants were expected to argue that SolarWinds (i) had a dedicated Information Security Team, (ii) had written information security policies, (iii) trained its employees on cybersecurity, (iv) enforced a policy requiring the use of complex passwords, (v) imposed role-based limitations on users' access to Company systems, and (vi) adhered to the voluntary guidance of the NIST Cybersecurity Framework.

54.    In addition, Lead Plaintiff and Lead Counsel anticipated that Defendants would argue that the alleged deficiencies in SolarWinds' cybersecurity systems did not cause the cyberattack at issue, but that the cyberattack was the result of a very sophisticated cyber-attacker that would have succeeded regardless of the alleged deficiencies in SolarWinds' cybersecurity controls. Defendants were expected to point to the fact that the federal government and several

14

industry experts have concluded that Russia was responsible for the cyberattack, and have called it the most sophisticated hack in history.

### 2. Materiality

55.    Defendants were expected to further challenge the materiality of some—if not all—of the alleged misstatements concerning SolarWinds' commitment to cybersecurity, and the maintenance of good cyber-hygiene. Specifically, Defendants would have argued that these alleged misstatements were vague and optimistic statements of a company's strengths that constitute corporate puffery under the law, and are thus immaterial or non-actionable. Lead Counsel anticipates that Defendants would have attempted to point to contemporaneous analyst and market commentary that did not credit Defendants' statements to investors, as purported proof of their immateriality.

### 3. Scienter

56.    If able to prove that Defendants' statements were false or misleading, Lead Plaintiff would still need to demonstrate to a jury that Defendants made the misstatements with scienter—*i.e.*, an intent to defraud or with deliberate recklessness. Defendants vigorously argued that their statements were true and that they had no motive to commit fraud.

57.    Lead Counsel anticipates that Defendants would point to, among other things, the absence of suspicious "insider sales" by Defendant Brown to show an absence of scienter, and argue that the allegedly suspicious insider sales by Defendants Thoma Bravo and Silver Lake had no bearing on decision-making or knowledge within SolarWinds.

### B.    Risks Related to Loss Causation and Damages

58.    Even assuming that Lead Plaintiff and Lead Counsel overcame Defendants' arguments and established liability at trial, Lead Plaintiff would have still confronted additional challenges in establishing loss causation and damages.

59.     Lead Plaintiff and Lead Counsel anticipate that Defendants would argue at summary judgment, trial, and subsequent stages of the proceedings, that the declines in the price of SolarWinds common stock were not caused entirely—or at all—by the alleged corrective disclosures.  Rather, Defendants were expected to argue that investors' losses were caused by a sophisticated and illegal cybersecurity attack—and not caused by allegedly misleading statements or omissions or alleged deficiencies in the Company's cybersecurity controls.  Relatedly, Defendants were expected to argue that the cyberattack was so sophisticated that it would have defeated even the most robust security measures and, thus, the price declines that resulted from its disclosure could not be causally connected to Defendants' alleged misstatements about the quality of SolarWinds' cybersecurity controls.

**C.     The Settlement Amount Compared to the Likely Maximum Damages that Could Be Proved at Trial**

60.     The Settlement Amount—$26 million in cash, plus interest—represents a significant recovery for the Settlement Class.  The Settlement is more than double the size of the median securities class-action settlement in the Fifth Circuit from 2013 to 2022 ($10.7 million). *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2022 REVIEW AND ANALYSIS (2023), attached hereto as Exhibit 3, at 19.

61.     The $26 million Settlement is also a favorable result when it is considered in relation to the maximum amount of damages that realistically could be established at trial—even assuming that Lead Plaintiff and the Settlement Class prevailed on all liability issues, including falsity and scienter.  Assuming Lead Plaintiff prevailed on all liability issues (which was far from certain), Lead Counsel understands, based on expert analysis, that the maximum total damages that Lead Plaintiff could establish at trial would be approximately $130 million to $200 million. Thus, the $26,000,000 recovery contemplated by the Settlement represents approximately 13% to

16

20% of the absolute maximum potential damages, which is a highly favorable result for the Settlement Class in this Action.

62. Given the meaningful litigation risks, and the immediacy and amount of the $26,000,000 recovery for the Settlement Class, Lead Plaintiff and Lead Counsel believe that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class.

## III. LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE

63. The Court's Preliminary Approval Order directed that the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form") be disseminated to potential members of the Settlement Class. The Preliminary Approval Order also set July 7, 2023 as the deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application; to request exclusion from the Settlement Class; and to submit Claim Forms.

64. In accordance with the Preliminary Approval Order, Lead Counsel instructed Epiq Class Action & Claims Solutions ("Epiq"), the Court-approved Claims Administrator, to begin disseminating copies of the Notice and the Claim Form by mail and to publish the Summary Notice. The Notice contained, among other things, a description of the Action, the Settlement, the proposed Plan of Allocation, and Settlement Class Members' rights to participate in the Settlement, object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or exclude themselves from the Settlement Class. The Notice also informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and for Litigation Expenses in an amount not to exceed $500,000.

65.     In order to disseminate the Notice and Claim Form (together, the "Notice Packet"), Epiq obtained information from SolarWinds and from banks, brokers, and other nominees regarding the names and addresses of potential Settlement Class Members. The accompanying Declaration of Alexander P. Villanova, attached hereto as Exhibit 4, provides additional information about the Claims Administrator's distribution of the Notice Packet. *See* Villanova Decl. ¶¶ 2-8.

66.     Epiq began mailing copies of the Notice Packet to potential Settlement Class Members and nominee owners on March 9, 2023. *Id*. ¶¶ 3-5. As of June 22, 2023, Epiq disseminated a total of 24,946 Notice Packets to potential Settlement Class Members and nominees. *Id.* ¶ 8.

67.     On March 21, 2023, in accordance with the Preliminary Approval Order, Epiq caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. *Id*. ¶ 9.

68.     Lead Counsel also caused Epiq to establish a dedicated settlement website, www.SolarWindsSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and other relevant documents. *See* Villanova Decl. ¶ 13. That website became operational on March 9, 2023. *Id*. Lead Counsel also made copies of the Notice and Claim Form and other documents available on its own website, www.blbglaw.com. Lead Counsel and Epiq have regularly monitored the settlement website to ensure that it is operating correctly. Lead Counsel and Epiq will continue to monitor and to update the settlement website as needed as the settlement process continues. For example, Lead Plaintiff's papers in support of its motion for final approval of the Settlement and Lead Counsel's

papers in support of its motion for attorneys' fees and litigation expenses will be made available on the website after they are filed, and any orders entered by the Court in connection with the motions will also be posted.

69.    As noted above, the deadline for Settlement Class Members to file objections to the Settlement, Plan of Allocation, or Fee and Expense Application, or to request exclusion from the Settlement Class is July 7, 2023.  To date, no requests for exclusion have been received, *see* Villanova Decl. ¶ 14, and no objections to the Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application have been received.  Lead Counsel will file reply papers on or before July 21, 2023, that will address any requests for exclusion and objections that may be received.

## IV.    ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

70.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who want to be eligible to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form with all required information postmarked (if mailed) or submitted online no later than July 7, 2023.  As set forth in the Notice, the Net Settlement Fund will be distributed among Settlement Class Members who submit eligible claims according to a plan of allocation approved by the Court.

71.    Lead Counsel consulted with Lead Plaintiff's damages expert in developing the proposed plan of allocation for the Net Settlement Fund (the "Plan of Allocation").  Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the conduct alleged in the Action.

72.    The Plan of Allocation is set forth at pages 13 to 16 of the Notice.  *See* Villanova Decl., Ex. A at pp. 13-16.  As described in the Notice, calculations under the Plan of Allocation

19

are intended as a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. *See* Notice ¶ 72.

73.     In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated the estimated amount of artificial inflation in the per-share closing price of SolarWinds common stock which allegedly was proximately caused by Defendants' alleged materially false and misleading statements and omissions during the Class Period. *See* Notice ¶ 73. In calculating the estimated artificial inflation, Lead Plaintiff's expert considered price changes in SolarWinds common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and omissions, adjusting for price changes that were attributable to market or industry forces. *Id.* ¶ 74. The estimated artificial inflation in SolarWinds common stock during the Class Period is set out in Table A of the Notice. *See* Notice at p. 16.

74.     Recognized Loss Amounts are calculated under the Plan of Allocation for each purchase or acquisition of SolarWinds common stock during the Class Period that is listed on a Claimant's Claim Form and for which adequate documentation is provided. In general, Recognized Loss Amounts are calculated as the lesser of: (a) the difference between the amount of alleged artificial inflation at the time of purchase or acquisition and the time of sale, or (b) the difference between the purchase price and the sale price for the shares. *See* Notice ¶ 76. Claimants who purchased and sold all their SolarWinds shares before the first alleged corrective disclosure, or who purchased and sold all their SolarWinds shares between two consecutive dates on which artificial inflation was allegedly removed from the price of the stock (that is, they did not hold the shares over a date where artificial inflation was allegedly removed from the stock price), will have no Recognized Loss Amount under the Plan of Allocation with respect to those

transactions because the level of artificial inflation is the same between the corrective disclosures, and any loss suffered on those sales would not be the result of the alleged misstatements in the Action. *See id.* ¶¶ 76, 78.

75.      As stated in the Notice, and in accordance with the PSLRA, Recognized Loss Amounts for shares of SolarWinds common stock sold during the 90-day period after the end of the Class Period are further limited to the difference between the purchase price and the average closing price of the stock from the end of the Class Period to the date of sale. Notice ¶ 78(c)(ii). Recognized Loss Amounts for SolarWinds common stock still held as of the close of trading on March 17, 2021, the end of the 90-day period, will be the lesser of (a) the amount of artificial inflation on the date of purchase or (b) the difference between the purchase price and $16.04, the average closing price for the stock during that 90-day period. *Id.* ¶ 78(d).

76.      The sum of a Claimant's Recognized Loss Amounts for all of his, her, or its purchases of SolarWinds common stock during the Class Period is the Claimant's "Recognized Claim." Notice ¶ 79. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in SolarWinds common stock during the Class Period. A Claimant's Recognized Claim will be limited to the amount of his, her, or its market loss in SolarWinds common stock transactions during the Class Period, and Claimants who have an overall market gain are not eligible for a recovery. *Id.* ¶¶ 86-87.

77.      The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶¶ 88-89. If an Authorized Claimant's *pro rata* distribution amount calculates to less than ten dollars, no payment will be made to that Authorized Claimant. *Id.* ¶ 90. Those funds will be included in the distribution to the Authorized Claimants whose payments exceed the ten-dollar minimum.

21

78.     One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. If any funds remain after the initial *pro rata* distribution, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions to Authorized Claimants will be conducted. Notice ¶ 91. Only when the residual amount left for re-distribution to Settlement Class Members is so small that a further re-distribution would not be cost effective (for example, where the administrative costs of conducting the additional distribution would largely subsume the funds available), will those funds be donated to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court. *Id*.

79.     In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on damages they suffered on purchases of SolarWinds common stock that were attributable to the misconduct alleged in the Action. To date, no objections to the proposed Plan of Allocation have been received.

## V.      THE FEE AND EXPENSE APPLICATION

80.     In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying to the Court, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees of 25% of the Settlement Fund, net of Litigation Expenses, plus interest earned at the same rate as the Settlement Fund (the "Fee Application"). Lead Counsel also requests payment for litigation expenses incurred by Plaintiffs' Counsel in connection with the prosecution and settlement of the Action in the amount of $270,449.02. Lead Counsel further requests reimbursement to Lead Plaintiff in the amount of $22,760.30 for costs and expenses that Lead Plaintiff incurred directly related to its representation of the Settlement Class, in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(4). The requested attorneys' fees, litigation expenses, and PSLRA awards are to be paid from the Settlement Fund. The legal authorities supporting the requested fee and expenses

22

are discussed in Lead Counsel's Fee Motion. The primary factual bases for the requested fee and expenses are summarized below.

### A. The Fee Application

81. Lead Counsel is applying for a fee award to be paid from the Settlement Fund on a percentage basis. As set forth in the accompanying Fee Motion, the percentage method is the appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interest of Lead Plaintiff and the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances and taking into account the litigation risks faced in a class action. Use of the percentage method has been recognized as appropriate by the Fifth Circuit in comparable cases.

82. Based on the quality of the result achieved, the extent and quality of the work performed by Plaintiffs' Counsel, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved. As discussed in the Fee Motion, a 25% fee award is fair and reasonable for attorneys' fees in common fund cases such as this and is within the range of percentages awarded in securities class actions in this Circuit with comparable settlements.

### 1. Lead Plaintiff Has Authorized and Supports the Fee Application

83. Lead Plaintiff has evaluated the Fee Application and believes that it is fair and reasonable in light of the result obtained for the Settlement Class, the substantial risks in the litigation, and the work performed by Plaintiffs' Counsel. *See* O'Brien Decl. ¶ 8.

### 2. The Time and Labor of Plaintiffs' Counsel

84. Attached as Exhibits 5A and 5B are declarations from myself on behalf of BLB&G and Frank B. Burney on behalf of Martin & Drought in support of Lead Counsel's motion for attorneys' fees and litigation expenses ("Fee and Expense Declarations"). The Fee and Expense

23

Declarations indicate the amount of time spent by each attorney and the professional support staff employed by each firm, and the lodestar calculations based on their current hourly rates, as well as a schedule of expenses incurred by the firm, delineated by category.  These Declarations were prepared from contemporaneous daily time records and expense records regularly maintained and prepared by the respective firms, which are available at the request of the Court.

85.    As set forth in the Fee and Expense Declarations, Plaintiffs' Counsel have collectively expended 6,292.2 hours in the prosecution of this Action from its inception through May 30, 2023, with a total lodestar of $3,398,326.25.  Lead Counsel's lodestar represented 99% of the total lodestar of all Plaintiffs' Counsel.  The requested fee results in a multiplier of approximately 1.9 of Plaintiffs' Counsel's lodestar.  As discussed in the Fee Motion, the requested multiplier is well within the range of fee multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

86.    As described above in greater detail, the work that Plaintiffs' Counsel performed in this Action included: (i) conducting an extensive investigation into the claims asserted, including through a detailed review of public documents and interviews with dozens of witnesses believed to potentially have information about the claims at issue in the Action; (ii) researching and drafting an initial complaint and a detailed consolidated Complaint; (iii) fully briefing Lead Plaintiff's opposition to Defendants' four motions to dismiss the Complaint; (iv) issuing document requests and obtaining and reviewing over 600,000 pages of documents; (v) serving ten document subpoenas to relevant non-party witnesses; (vi) moving for class certification, which included an expert report from Lead Plaintiff's financial economics expert on the efficiency of the market for SolarWinds common stock and the calculation of damages on a class-wide basis;

(vii) consulting extensively throughout the litigation with a variety of experts and consultants, including a cybersecurity expert and experts in market efficiency, loss causation, and damages; and (viii) engaging in extensive arm's-length settlement negotiations to achieve the Settlement, including two full-day mediation sessions with Ms. Yoshida of Phillips ADR.

87.    Plaintiffs' Counsel devoted substantial time to the prosecution of the Action.  I maintained control of and monitored the work performed by other lawyers at BLB&G.  While I personally devoted substantial time to this case, and personally reviewed and edited all pleadings, court filings, and other correspondence prepared on behalf of Lead Plaintiff, other experienced attorneys at my firm were involved in settlement negotiations and other matters.  More junior attorneys and paralegals also worked on matters appropriate to their skill and experience level. Throughout the litigation, Plaintiffs' Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

### 3.    The Skill and Experience of Plaintiffs' Counsel

88.    As demonstrated by the firm resume attached as Exhibit 5A-3 hereto, Lead Counsel is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases.  BLB&G is consistently ranked among the top plaintiffs' firms in the country.  Further, BLB&G has taken complex cases such as this to trial, and it is among the few firms with experience doing so on behalf of plaintiffs in securities class actions.  Liaison Counsel Martin & Drought is also high skilled and extremely knowledgeable counsel.

89.    As reflected in its Firm Resume, Bernstein Litowitz has obtained numerous significant settlements. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which recoveries obtained for the class totaled in excess of $6 billion. Bernstein Litowitz also secured a resolution of $2.43 billion for

25

the class in *In re Bank of America Corp. Securities, Derivative & "ERISA" Litigation*, No. 09-md-2058 (S.D.N.Y.); a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.); and a $730 million settlement on behalf of the class in *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522 (S.D.N.Y.); *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *11 (S.D.N.Y. Jan. 15, 2021) (appointing Bernstein Litowitz, "a firm highly experienced in securities class action litigation," as class counsel); *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *8 (S.D.N.Y. June 12, 2020) (appointing Bernstein Litowitz class counsel); *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *9 (S.D.N.Y. July 10, 2019) (same).

90.     Lead Plaintiff previously filed with the Court and provided to Lead Plaintiff the order issued by a court in the Northern District of California in an unrelated action where BLB&G served as lead counsel for the lead plaintiff in that case, SEB Investment Management AB, and as class counsel for the certified class. *See* ECF No. 93-6 (attaching *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021)). The order was discussed further in Lead Plaintiff's papers filed in connection with Lead Plaintiff's motion for class certification. *See* ECF No. 93-1, at 2-3. Since that order, the court in *Symantec* granted final approval of the $70 million settlement in that action, commenting on the record that Bernstein Litowitz "did a good job, so thank you for that." *See SEB Inv. Mgmt. AB v. Symantec Corp.*, No. 3:18-cv-2902-WHA, ECF No. 425 at 18 (N.D. Cal. Feb. 10, 2022). Additionally, courts have repeatedly approved BLB&G as lead counsel and class counsel in securities class actions after being apprised of the *Symantec* order, including in *Nykredit Portefølje Admin. A/S v. ProPetro Holding Corp.*, No. MO:19-CV-217-DC, slip op. at 3-4 (W.D. Tex. May 11, 2023), ECF No. 177; *In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464, slip op. at 3-4 (S.D. Tex. Sept. 15, 2022),

ECF No. 128; *In re Synchrony Fin. Securities Litig.*, 3:18-CV-1818 (VAB), 2023 WL 1503032, at \*2 (D. Conn. Feb. 3, 2023); *Hartel v. SelectQuote, Inc.*, 21 CIV. 6903 (AKH), 2022 WL 4057445, at \*3 (S.D.N.Y. Sept. 2, 2022); *Rasella v. Musk*, 342 F.R.D. 74, 79 (S.D.N.Y. 2022); *In re EQT Corp. Securities Litig.*, 2:19-CV-00754-RJC, 2022 WL 3293518, at \*10 (W.D. Pa. Aug. 11, 2022); *City of Riviera Beach Gen. Emps.' Ret. Sys. V. Vertiv Holdings Co.*, No. 1:22-cv-03572-GHW, ECF No. 16 at 2 (S.D.N.Y. June 22, 2022); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at \*5 (N.D. Cal. May 9, 2022); *Bricklayers' & Allied Craftworkers Local #2 Albany v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at \*5 (S.D.N.Y. May 13, 2022); *City of Miami Firefighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, 2022 WL 1505907, at \*2 (D. Mass. May 12, 2022); and *Homyk v. ChemoCentryx, Inc.*, No. 4:21-cv-03343-JST, slip op. at 6 (N.D. Cal. Jan. 28, 2022), ECF No. 32.

### 4.    Standing and Caliber of Defendants' Counsel

91.    Throughout this Action, Defendants were represented by attorneys from King & Spalding LLP, Ropes & Gray LLP, Willkie Farr & Gallagher LLP, Edmundson Shelton Weiss PLLC, and Kirkland & Ellis LLP—all of which are highly experienced and highly skilled law firms that zealously represented their clients.  In the face of this skillful and well-financed opposition, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle the case on terms that will significantly benefit the Settlement Class.

### 5.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases

92.    The prosecution of these claims was undertaken entirely on a contingent-fee basis, and the considerable risks assumed by Plaintiffs' Counsel in bringing this Action to a successful conclusion are described above.  Here, the risks assumed by Plaintiffs' Counsel, and the time and expenses incurred without any payment, were extensive.

93.    From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, lengthy, and hard-fought litigation with no guarantee of ever being compensated for the substantial investment of time and the outlay of money that vigorous prosecution of the case would require.  In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources (in terms of attorney and support staff time) were dedicated to the litigation, and that Lead Counsel would further advance all of the costs necessary to pursue the case vigorously on a fully contingent basis, including funds to compensate vendors and consultants and to cover the considerable out-of-pocket costs that a case such as this typically demands.  Because complex securities litigation generally proceeds for several years before reaching a conclusion, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Plaintiffs' Counsel have received no compensation during the two-year duration of this Action and no reimbursement of out-of-pocket expenses, yet they have devoted more than 6,200 hours and incurred more than $270,000 in expenses in prosecuting this Action for the benefit of SolarWinds investors.

94.    Plaintiffs' Counsel also bore the risk that no recovery would be achieved.  As discussed above, from the outset this case presented a number of significant risks and uncertainties.

95.    The Settlement was reached only after Lead Counsel had overcome Defendants' motions to dismiss, conducted substantial discovery, and filed Lead Plaintiff's class certification motion.  Lead Counsel's persistent efforts in the face of significant risks and uncertainties have resulted in a significant and certain recovery for the Settlement Class.

### 6.    The Reaction of the Settlement Class to the Fee Application

96.    As noted above, as of June 22, 2023, over 24,000 Notice Packets had been sent to potential Settlement Class Members advising them that Lead Counsel would apply for attorneys'

fees in an amount not to exceed 25% of the Settlement Fund.  *See* Villanova Decl. ¶ 8 and Ex. A (Notice ¶¶ 5, 54).  In addition, the Court-approved Summary Notice has been published in *The Wall Street Journal* and transmitted over the *PR Newswire*.  *See* Villanova Decl. ¶ 9.  To date, no objections to the request for attorneys' fees have been received.

97.     In sum, Lead Counsel prosecuted this case without any compensation or guarantee of success over the past two years.  Based on the favorable result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, Lead Counsel respectfully submits that the requested fee is fair and reasonable.

### A.     The Litigation Expense Application

98.     Lead Counsel also seeks payment from the Settlement Fund of $270.449.02 for litigation expenses reasonably incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of the Action (the "Expense Application").

99.     From the outset of the Action, Plaintiffs' Counsel have been aware that they might not recover any of their expenses (if the litigation was unsuccessful), and, further, if there were to be reimbursement of expenses, it would not occur until the Action was successfully resolved, often a period lasting several years.  Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement of expenses would not necessarily compensate them for the lost use of funds advanced by them to prosecute the Action.  Consequently, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

100.     As set forth in the Fee and Expense Declarations included in Exhibit 5, Plaintiffs' Counsel have incurred a total of $270,449.02 in unreimbursed litigation expenses in connection with the prosecution of the Action.  The expenses are summarized in Exhibit 6, which identifies each category of expense, e.g., expert fees, mediation fees, on-line legal and factual research,

document management costs, telephone, and photocopying expenses, and the amount incurred for each category. These expenses are reflected on the books and records maintained by Plaintiffs' Counsel, which are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. These expenses are recorded separately by Plaintiffs' Counsel and are not duplicated by the firms' hourly rates.

101. Of the total amount of expenses, $184,342.25, or approximately 68%, was expended for the retention of experts. As discussed above, Lead Counsel consulted with experts in financial economics and cybersecurity during its investigation and the preparation of the Complaint and during the course of discovery, and Lead Plaintiff's class certification motion was accompanied by an expert report on the efficiency of the market for SolarWinds common stock and calculation of damages on a class-wide basis. These experts' advice was instrumental in Lead Counsel's appraisal of the claims and in helping achieve the favorable result.

102. The cost of on-line factual research was $22,547.93 and the cost for on-line legal research was $19,703.91, which together account for approximately 16% of the total expenses.

103. Another significant cost was the expense of document management and litigation support, which included the costs of creating and maintaining the database containing the documents produced in the Action. These document management costs in total came to $19,806.80, or approximately 7% of the total expenses.

104. Lead Plaintiff's share of the mediation costs paid to Phillips ADR for the services of Ms. Yoshida were $13,580.00 or 5% of the total expenses.

105. Lead Counsel also incurred $4,375.00 in attorneys' fees for independent counsel, Hach Rose Schirripa & Cheverie LLP, who represented a former SolarWinds employee that Lead

Counsel contacted during the course of its investigation and who wished to be represented by independent counsel.

106.    The other expenses for which Plaintiffs' Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, court fees, service of process costs, the costs of publishing the notice required by the PSLRA at the outset of the case, copying costs, telephone charges, and postage and delivery expenses.

107.    In addition, Lead Plaintiff seeks reimbursement for the reasonable costs and expenses that it incurred directly in connection with its representation of the Settlement Class. Such payment is expressly authorized and anticipated by the PSLRA, as more fully discussed in the Fee Motion at 18-19.  Specifically, Lead Plaintiff seeks reimbursement of $22,760.30 for 60 hours expended in connection with the Action by its Executive Director, Chief Financial Officer, and other staff, as well as for 26.3 hours spent on the Action by the NYC Carpenters' counsel. *See* O'Brien Decl. ¶¶ 10-14.

108.    The Notice informed potential Settlement Class Members that Lead Counsel would be seeking reimbursement of Litigation Expenses in an amount not to exceed $500,000, which might include a request for a PLSRA award for Lead Plaintiff.  Notice ¶¶ 5, 54.  The total amount requested, $293,209.32, which includes $270,449.02 for Plaintiffs' Counsel's litigation expenses and $22,760.30 for Lead Plaintiff's requested PSLRA award, is well below the $500,000 that Settlement Class Members were advised could be sought.  To date, no objection has been raised as to the maximum amount of expenses set forth in the Notice.

109.    The expenses incurred by Plaintiffs' Counsel and Lead Plaintiff were reasonable and necessary to represent the Settlement Class and achieve the Settlement.  Accordingly, Lead

31

Counsel respectfully submits that the application for payment of Litigation Expenses from the Settlement Fund should be approved.

110.    Attached hereto is a true and correct copy of the following document cited in the Fee Motion:

Exhibit 7       *Berger v. Compaq Computer Corp.*, Civil Action No. 98-1148, slip op. (S.D. Tex. Nov. 22, 2002), ECF No. 148

## VI.    CONCLUSION

111.    For all the reasons set forth above, Lead Plaintiff respectfully submits that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate.  Lead Counsel further submits that the requested fee in the amount of 25% of the Settlement Fund, net of expenses, should be approved as fair and reasonable, and the request for payment of total Litigation Expenses in the amount of $293,209.32, should also be approved.

I declare, under penalty of perjury that the foregoing is true and correct.  Executed on June 23, 2023.

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER

32

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I electronically filed the foregoing by using the court's CM/ECF system.  Per agreement among the parties, all parties will be served by the CM/ECF system.

By: */s/ Jonathan D. Uslaner*
Jonathan D. Uslaner
