**N THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MOTION FOR
<u>APPROVAL OF DISTRIBUTION PLAN</u>**

**TABLE OF CONTENTS**

                                                                                          **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      BACKGROUND ................................................................................................................2

II.     CLAIMS ADMINISTRATION...........................................................................................3

        A.      No Disputed Claims................................................................................................4

        B.      Late Claims and Final Cut-Off Date.......................................................................4

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ...............................................5

IV.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ......................................6

        A.      Initial Distribution of the Net Settlement Fund .........................................................6

        B.      Additional Distribution(s) of the Net Settlement Fund.............................................8

V.      RELEASE OF CLAIMS...................................................................................................10

VI.     CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. 4:14-cv-3428 (NFA) (S.D. Tex. Nov. 17, 2020), ECF No. 384 ......................................10

*Duncan v. JPMorgan Chase Bank N.A.*,
2016 WL 4419472 (W.D. Tex. May 24, 2016) ...........................................................................9

*In re Forterra Inc. Securities Litig.*,
2021 WL 3464255 (N.D. Tex. Aug. 4, 2021).............................................................................11

*In re Nu Skin Enters., Inc., Sec. Litig.*,
No. 14-cv-00033-JNP-BCW (D. Utah Aug. 10, 2018), ECF No. 152 .....................................9

*In re Nu Skin Enters., Inc., Sec. Litig.*,
No. 14-cv-00033-JNP-BCW (D. Utah Aug. 30, 2018), ECF No. 154 .....................................9

*Perkins v. Am. Nat'l Ins. Co.*,
2012 WL 2839788 (M.D. Ga. July 10, 2012).............................................................................9

Lead Plaintiff New York City District Council of Carpenters Pension Fund ("Lead Plaintiff" or "NYC Carpenters") on behalf of itself and the Settlement Class, will and hereby does move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure for entry of the accompanying [Proposed] Order Approving Distribution Plan ("Class Distribution Order").

This motion is made pursuant to the Court's Judgment Approving Class Action Settlement (ECF No. 112) and Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 110) and is based upon: (1) this Motion; (2) the Declaration of Alexander P. Villanova in Support of Lead Plaintiff's Motion for Approval of Distribution Plan ("Villanova Declaration" or "Villanova Decl.") submitted on behalf of the Court-approved Claims Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq")[1]; and (3) all other papers and proceedings herein.

The Class Distribution Order would, among other things: (i) approve the administrative determinations of Epiq accepting and rejecting Claims submitted in connection with the Settlement reached in the above-captioned Action; (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability or claims administration-related contingencies that may arise; (iii) direct that distribution checks state that the check must be cashed within 90 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (v) approve the recommended plan for any funds remaining after the distribution; (vi) approve Epiq's fees and

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Villanova Declaration or the Stipulation and Agreement of Settlement dated as of November 28, 2022 (ECF No. 97-1) ("Stipulation"). The terms of the Settlement are contained in the Stipulation.

expenses incurred and estimated to be incurred in the administration of the Settlement; and (vii) authorize the destruction of Claim Forms and supporting documents at an appropriate time.

There are no disputed Claims by any Settlement Class Member requiring Court review. Further, Defendants' Counsel have reviewed the motion and informed us that Defendants take no position. Accordingly Lead Counsel respectfully submits that the motion is ripe for consideration by the Court and may be decided on the papers.

## I.    BACKGROUND

On July 28, 2023, the Court entered the Judgment Approving Class Action Settlement (ECF No. 112) approving the $26 million all-cash Settlement of this Action and entered an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 110). The Settlement's "Effective Date" under paragraph 32 of the Stipulation has occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Lead Plaintiff respectfully requests that the Court enter the Class Distribution Order and approve the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 103) ("Preliminary Approval Order"), Epiq mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Villanova Decl. ¶ 2. Epiq has disseminated 25,054 Notice Packets to potential Settlement Class Members, brokers, and nominees. *Id*. ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible

to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than July 7, 2023. *Id*. ¶ 7; Notice ¶ 41.

## II.    CLAIMS ADMINISTRATION

As set forth in the Villanova Declaration, through June 11, 2024, Epiq received and processed 14,963 Claims. Villanova Decl. ¶ 7. All Claims received through June 11, 2024, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice, and Epiq has worked with Claimants to help them perfect their Claims. *See id*. ¶¶ 7, 19-28. Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id*. ¶¶ 19, 22.

If Epiq determined a Claim to be defective or ineligible, Epiq sent a letter (if the Claimant or filer filed a paper or online Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Villanova Declaration.

Of the 14,963 Claims that are the subject of this motion, Epiq has determined that 2,811 Claims are acceptable in whole or in part, and that 12,152 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. *Id.* ¶¶ 33-36. Lead Plaintiff respectfully

requests that the Court approve Epiq's administrative determinations accepting and rejecting Claims as set forth in the Villanova Declaration.

### A.   No Disputed Claims

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. Villanova Decl. ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of their right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id*. ¶¶ 20, 23; Villanova Decl., Exs. A & B.

With respect to the fully processed Claims, Epiq received four (4) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, Epiq contacted the Claimants requesting Court review and attempted to answer all questions, to explain Epiq's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 28. As a result of these efforts, three (3) Claimants resolved their deficiencies and their Claims are now recommended for approval, and one (1) Claimant withdrew their request for Court review after receiving further explanation of the reasons for Epiq's determination. *Id*. Accordingly, there are no outstanding requests for Court review by any Claimants. *Id*.

### B.   Late Claims and Final Cut-Off Date

The 14,963 Claims received through June 11, 2024, include 4,036 Claims that were postmarked or received after July 7, 2023, the Court-approved Claim submission deadline. *Id*. ¶¶ 29, 35. Those late Claims have been fully processed, and 243 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 243 Claims were

late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 29. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11. Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that the Court order that any new late Claims (and any requested adjustments to previously filed Claims that would result in an increased Recognized Claim Amount) received after June 11, 2024, shall be barred (*see also* Villanova Decl. ¶ 39(f)) – subject to the proviso that if Lead Counsel later determine that an additional distribution is not cost-effective (*see* Villanova Decl. ¶ 39(e)), then any post-June 11, 2024 Claimants may, at the discretion of Lead Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

## III.  FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, Epiq, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and

distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶ 2. Epiq's fees and expenses for its work performed through May 31, 2024, are $144,451.72 and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are $14,988.85, which together total $159,440.57. *Id*. ¶ 38. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. To date, Epiq has received no payment for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $159,440.57 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id*. Lead Counsel has reviewed Epiq's invoices and respectfully requests on behalf of Lead Plaintiff that the Court approve all of Epiq's fees and expenses.

## IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute 95% of the Net Settlement Fund after deducting: (i) all payments previously allowed; (ii) payments approved by the Court on this motion; and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (*i.e.*, the Initial Distribution). *See* Villanova Decl. ¶ 39(a)(5). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 39(a)(1). Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will

be so notified by Epiq. *Id*. ¶ 39(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 39(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 39(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiff proposes that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 39(b) of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 39(c).

B.    **Additional Distribution(s) of the Net Settlement Fund**

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than six (6) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 39(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with Epiq, determines that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after June 11, 2024, Epiq will process those Claims. *Id*. ¶ 39(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after June 11, 2024, may be paid in accordance with paragraph 39(f) of the Villanova Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel proposes that such remaining funds (if there are any) be contributed to the National Consumer Law Center ("NCLC"). Lead Counsel proposes that the NCLC be designated as the "non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Lead Counsel" referenced in the Court-approved Plan of Allocation. *See* Notice ¶ 91.

NCLC is a non-profit, non-partisan organization originally launched and initially funded by the federal government, but sustained for more than half a century by the support of a diverse network of private foundations, sponsors, and individual donors, and is exempt from taxation

under Section 501(c)(3) of the Internal Revenue Code. *See Financials*, NATIONAL CONSUMER LAW CENTER, http://www.nclc.org/about-us/financials/ (last visited June 20, 2024). Since 1969, the NCLC has used its expertise in consumer law and energy policy to work for consumer justice and economic security for low-income and other disadvantaged people, including older adults, in the U.S. *See Mission*, NATIONAL CONSUMER LAW CENTER, https://www.nclc.org/about-us/mission (last visited June 20, 2024). NCLC uses the tools of advocacy, education, and litigation to fight for economic justice for low-income and other vulnerable people who have been abused, deceived, discriminated against, or left behind in the economy. *See About Us*, NATIONAL CONSUMER LAW CENTER, nclc.org/about-us/ (last visited June 20, 2024). Today, NCLC uses its expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy. *See id.* Federal courts in Texas and across the nation have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See*, *e.g.*, *Duncan v. JPMorgan Chase Bank, N.A.*, 2016 WL 4419472, at *17 (W.D. Tex. May 24, 2016), *report and recommendation adopted*, 2016 WL 4411551 (W.D. Tex. June 17, 2016); Lead Plaintiff's Motion for Authorization to Distribute Net Settlement Fund and Supporting Memorandum, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW (D. Utah Aug. 10, 2018) (ECF No. 152); Order Authorizing Distribution of Net Settlement Fund to Authorized Claimants and Related Relief, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW (D. Utah Aug. 30, 2018) (ECF No. 154), attached hereto as Exhibit 1; *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that

The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See*, *e.g.*, Order Approving Distribution Plan at 7, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 4:14-cv-3428 (NFA) (S.D. Tex. Nov. 17, 2020) (ECF No. 384), attached hereto as Exhibit 2 ("All persons involved in the review, verification, calculation, tabulation, or any other

aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlements, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants[.]"); *In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255, at \*2 (N.D. Tex. Aug. 4, 2021) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI.    **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

DATED:  June 21, 2024                           Respectfully submitted,

*/s/ Jonathan D. Uslaner*

**BERNSTEIN LITOWITZ BERGER &**
     **GROSSMANN LLP**
John J. Rizio-Hamilton (admitted *pro hac vice*)
Jonathan D. Uslaner (admitted *pro hac vice*)
Thomas Z. Sperber (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
JohnR@blbglaw.com
JonathanU@blbglaw.com
Thomas.Sperber@blbglaw.com

*Counsel for Lead Plaintiff and Lead Counsel*
*for the Settlement Class*

**MARTIN & DROUGHT, P.C.**
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
gdrought@mdtlaw.com fburney@mdtlaw.com

*Liaison Counsel for Lead Plaintiff*

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 21, 2024, I electronically filed the foregoing by using the court's CM/ECF system. Per agreement among the parties, all parties will be served by the CM/ECF system.

By: <u>/s/ Jonathan D. Uslaner</u>
Jonathan D. Uslaner