# EXHIBIT 1

Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
cfox@labaton.com
gbuell@labaton.com

Eric K. Jenkins (10783)
**GOEBEL ANDERSON, P.C**.
405 South Main Street, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 441-9393

*Counsel for Lead Plaintiff Boston Retirement System
and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NU SKIN ENTERPRISES, INC., SECURITIES LITIGATION | Master File No. 2:14-cv-00033-JNP-BCW <br><br> Hon. Jill Parrish |
| This Document Related To: ALL ACTIONS | **LEAD PLAINTIFF'S MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND AND SUPPORTING MEMORANDUM** |

**TABLE OF CONTENTS**

I.      BACKGROUND .................................................................................................. 2

II.     CLAIMS ADMINISTRATION................................................................................ 2

        A.     Procedures and Review.................................................................................... 3

        B.     Recommended Disposition of the Claims........................................................ 4

                 1.     Lead Counsel Recommends that the Claims Administrator's
                      Eligibility Determinations Be Approved ..................................................... 4

                 2.     Lead Counsel Recommends that the Court Accept Late-Filed But
                      Otherwise Valid Claims............................................................................... 5

        C.     Claimants Requesting Judicial Review............................................................ 6

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .......................................... 7

IV.    DISTRIBUTION OF THE NET SETTLEMENT FUND ................................................ 8

CONCLUSION........................................................................................................... 11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Boston Retirement System ("Boston" or "Lead Plaintiff"),[1] respectfully submits this memorandum in support of its motion for entry of the proposed Order Approving Distribution of Net Settlement Fund (the "Distribution Order") in the above-captioned class action (the "Action"), consistent with the accompanying Declaration of Adam D. Walter on Behalf of A.B. Data, Ltd. in Support of Lead Plaintiff's Motion for Authorization to Distribute Net Settlement Fund (the "A.B. Data Declaration" or "A.B. Data Decl."), dated August 9, 2018, submitted on behalf of the Court-approved Claims Administrator in the Action, A.B. Data, Ltd. ("A.B. Data").

Pursuant to the Stipulation, Defendants have no interest in the relief sought by this motion. *See* Stipulation ¶ 6.5 ("This is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants or their insurers. The Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.")

If granted, the motion will permit the distribution of the proceeds of the Settlement to members of the Settlement Class whose Proof of Claim and Release forms ("Claim Forms") are accepted by the Court. More specifically, the proposed Distribution Order will: (i) approve the administrative determinations of A.B. Data accepting and rejecting the claims submitted; (ii) direct the distribution of the Net Settlement Fund to Settlement Class Members whose claims

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated as of May 2, 2016 (the "Stipulation", ECF No. 134-1).

have been accepted as valid and approved by the Court, according to the distribution plan proposed by A.B. Data; (iii) establish a bar date beyond which new claims will not be allowed; (iv) approve payment of A.B. Data's fees and expenses in connection with the estimate to complete the initial distribution of the Net Settlement Fund; and (v) authorize destruction of Claim Forms after the distribution is complete.

## I.     BACKGROUND

Pursuant to the Stipulation, Defendants agreed to pay, or cause to be paid, $47,000,000 to settle the claims asserted in the Action (the "Settlement Amount"). The Court granted preliminary approval to the Settlement by an order entered May 24, 2016 (ECF No. 135) and granted final approval by a Judgment dated October 13, 2016 (ECF No. 149).

The Effective Date of the Settlement has occurred and the Claims Administrator has completed the processing of 50,005 Claim Forms. Accordingly, pursuant to the Stipulation, the Net Settlement Fund may be distributed to Authorized Claimants upon entry of an appropriate order by the Court. *See* Stipulation ¶ 6.3.

## II.    CLAIMS ADMINISTRATION

Under the terms of the Stipulation and the Notice, all Settlement Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Claim Forms no later than October 6, 2016. As detailed in Paragraph 4 of the accompanying A.B. Data Declaration, A.B. Data received and processed 50,005 Claim Forms. Claim Forms received through June 22, 2018, a date during the preparation of the A.B. Data Declaration and this motion, have been processed and reviewed. A.B. Decl. ¶ 4.

A.B. Data has prepared detailed reports of: (1) Authorized Claimants who submitted timely and eligible claims (Exhibit E); (2) Authorized Claimants who submitted late, but eligible claims (Exhibit F); and (3) all wholly rejected or ineligible Claim Forms received through June

2

22, 2018 (Exhibit G). These reports are annexed as Exhibits E through G to the A.B. Data Declaration, respectively. *See* A.B. Data Decl. ¶ 38. Based on these determinations, the Claims Administrator, in consultation with Lead Counsel, recommends that a distribution to the Authorized Claimants listed in Exhibits E and F be authorized.

## A. Procedures and Review

With respect to A.B. Data's extensive review process, among the 50,005 Claim Forms received and processed, 5,356 were hardcopy or paper Claim Forms submitted by mail. A.B. Data Decl. ¶ 7. The hardcopy Proofs of Claim were opened and scanned into an electronic database created for this Settlement. *Id.* ¶¶ 7-8. Among the 50,005 Claim Forms received and processed, 44,649 were submitted electronically to an Electronic Claim Filing Team. *Id.* ¶ 11. The data from all the Claim forms was entered into a database created for the Settlement, evaluated, and processed according to a complex coding procedure to identify the types and conditions of the Proofs of Claim. *Id.* ¶¶ 7-10, 11-14.

Many of the Claim Forms initially submitted were incomplete, unsigned, not properly documented, filed by a claimant who was not a Settlement Class Member, or otherwise deficient. *Id.* ¶ 17. A.B. Data sent deficiency and/or ineligibility letters, or Status Letters with Status Spreadsheets in the case of electronic filers, to claimants describing the defect(s) with his, her, or its Claim Form, stating what, if anything, was necessary to cure the Claim Form. *Id.* ¶¶ 17-25. Copies of a sample deficiency letter, Status Letter and Status Spreadsheet are attached as Exhibits A through C to the A.B. Data Declaration.

Consistent with the terms of the Stipulation, all letters advised the claimant of the right, within twenty (20) days after the mailing of the letter, to contest the rejection of the claim and request Court review of the disposition. *Id.* ¶¶ 18, 22.

3

A.B. Data mailed or emailed more than 3,700 such letters to claimants and electronic filers  *Id*. ¶¶ 18, 24.  Responses to such letters were scanned or inputted, reviewed, and evaluated.  *Id*. ¶¶ 19, 25.  A.B. Data carefully reviewed claimants' responses to these letters and worked with claimants to resolve deficiencies where possible.  *Id*.  The process was designed to cure as many deficient Proofs of Claim as possible and advise claimants of their rights.

The administration was also subject to A.B. Data's rigorous Quality Assurance (QA) review processes.  *Id*. ¶¶ 31-33.  After all of the claims were processed, and deficiency and/or ineligibility letters were mailed, and claimants' responses to the deficiency and/or ineligibility letters were processed, supervisors and managers in A.B. Data's QA Department performed quality assurance reviews.  These reviews ensure the correctness and completeness of all claims processed and all of A.B. Data's final documents in support of distribution of the Net Settlement Fund.  QA personnel performed reviews to, among other things, ensure: that Proofs of Claim were processed properly; that deficiency letters were mailed to the appropriate claimants; that deficient or invalid claims were deficient; that high value claims were processed appropriately; and that the Recognized Loss calculation program was accurate.  *Id.* ¶ 31.

### B.  Recommended Disposition of the Claims

#### 1.  Lead Counsel Recommends that the Claims Administrator's Eligibility Determinations Be Approved

Among the 50,005 Claim Forms received to date, 24,877 have been determined by A.B. Data to be eligible in whole or in part to receive a payment from the Net Settlement Fund.  *Id*. ¶¶ 34-36 and Exs. E and F thereto.  A total of 25,128 claims were administratively rejected, after exhaustion of the deficiency process explained above.  *Id*. ¶ 37 and Ex. G.  The majority of these rejected claims (20,909) did not calculate to a Recognized Claim under the Court-approved Plan of Allocation; 2,262 claims had no purchases of eligible Nu Skin securities during the Class

Period; 1,870 were duplicate claims; four claims were submitted by an excluded party; 80 claims had uncured deficiencies; and three claims were identified as questionable. *Id.* The proportion of rejected claims seen here is typical for securities class actions.

Accordingly, it is respectfully requested that the Court authorize distribution of the Net Settlement Fund to the 24,877 eligible claimants (including those that filed after the claim deadline, as set forth below) identified by A.B. Data, representing a total Recognized Loss amount of $822,126,942.14 and reject those designated for rejection.

### 2. Lead Counsel Recommends that the Court Accept Late-Filed But Otherwise Valid Claims

A.B. Data received and processed 2,737 Claim Forms that were postmarked after the Court-established October 6, 2016 claim deadline, but on or before June 22, 2018. *Id.* ¶¶ 28, 36. Among these, 1,248 are, but for their late submission, otherwise valid and calculate to a Recognized Loss amount of $66,084,784.32.

Although these claims were late, they were received while the processing of claims was ongoing. The processing of these late claims did not delay the claims administration nor will it delay the distribution of the Net Settlement Fund. Lead Counsel believes that it would be more fair to allow payment of an otherwise eligible claim received while claims were still being processed than to reject such a claim, and respectfully requests that these Proofs of Claim be approved as eligible for payment.[2] *Id.* ¶ 28.

---

[2] The Court has discretion to accept Proofs of Claim submitted after the approved filing deadline under the terms of the Settlement. The Stipulation provides that "Any Settlement Class Member who does not timely submit a Proof of Claim within the time provided for shall be barred from sharing in the distribution of the Net Settlement Fund, unless otherwise ordered by the Court …" Stipulation ¶ 13(a).

However, in order to complete the administration there needs to be a bar date. A.B. Data recommends that all claims received or adjusted after June 22, 2018 be rejected as untimely, subject to paragraph 40(c) of the proposed distribution plan. *Id.* ¶ 29.

### C.      Claimants Requesting Judicial Review

A.B. Data received requests for judicial review from eleven claimants, however, A.B. Data was able to resolve nine of these requests either because the claim was able to be cured or because the claimant retracted the request. Lead Plaintiff respectfully requests that the Court confirm A.B. Data's rejection of the two disputed claims discussed below and in A.B. Data's declaration. *Id.* ¶¶ 26 - 27, Exhibit D.

Two claimants are disputing the determination that their claims do not calculate to a "Recognized Claim" pursuant to the Plan of Allocation previously approved by the Court.

- Claimaint with claim number 36284848 purchased 61 shares of Nu Skin common stock in February 2012. This claim was rejected because claimant sold all 61 shares prior to the opening of trading on August 7, 2012, the date of the first alleged corrective disclosure (17 shares were sold on April 25, 2012 and 44 shares were sold on July 17, 2012). Since these shares were sold prior to the date of the first alleged corrective disclosure, and could not have been damaged by the alleged fraud pursuant to *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss"), the recognized loss for these shares purusant to the Plan of Allocation is zero.

- Claimant with claim number 38967891 purchased 50 shares of Nu Skin common stock on June 15, 2011, and 100 shares on September 5, 2012. This claim was

6

rejected because claimant sold all 50 shares on August 16, 2011, also prior to the August 7, 2012 first alleged corrective disclosure, and so the recognized loss for these shares purusant to the Plan of Allocation is zero.  The claimant's purchase of 100 shares on September 5, 2012, at a price of $41.27 per share, also did not generate a recognized loss.  This aspect of the claim was rejected because the 100 shares were sold on September 10, 2012 for $43.9018 per share, resulting in a gain on this transaction.  Pursuant to the Plan of Allocation, to the extent a transaction results in a negative number, reflecting a gain on the transaction, the recognized loss is set to zero.

A summary of the two disputed claims is also attached as Exhibit D to the A.B. Data Delcaration.  Lead Plaintiff respectfully requests that the two disputed claims be rejected consistent with A.B. Data's determinations.

## III.     FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR

Pursuant to the Stipulation, and as explained to members of the Settlement Class in the Notice, the Settlement Fund is to be used to pay fees and expenses incurred in connection with the administration and distribution of the Settlement.  A.B. Data agreed to be the Claims Administrator and to conduct the notice program and the claims administration process in exchange for payment of its fees and expenses, which have been paid pursuant to the Stipulation.

A.B. Data estimates that it will cost $84,611.08 to conduct the initial distribution of the Net Settlement Fund and Lead Plaintiff respectfully requests approval to pay A.B. Data this amount.  *See* A.B. Data Decl. Ex. H.  If less than this amount is actually incurred, A.B. Data shall refund the difference to the Net Settlement Fund.

**IV.     DISTRIBUTION OF THE NET SETTLEMENT FUND**

The Claims Administrator, in consultation with Lead Counsel, has developed a distribution plan for the Net Settlement Fund that will allow for the fair and expeditious distribution of the Settlement proceeds, pursuant to the Plan of Allocation and Stipulation, until the fund is exhausted.  *See* A.B. Data Decl. ¶ 40.

The key components of the distribution plan provide for: (i) distribution of the Net Settlement Fund to all Authorized Claimants whose Claim Forms are approved for payment by the Court; (ii) supplemental distributions of funds remaining due to uncashed checks to Authorized Claimants who have cashed their initial distribution checks until it is no longer economically feasible to conduct distributions; and (iii) use of remaining funds to pay eligible claims adjusted after June 22, 2018, if any, or to make a *cy pres* donation to the National Consumer Law Center (the "NCLC").[3]  *Id*.  It is customary in securities class action settlements to have multiple distributions of a net settlement fund in order to exhaust all settlement funds, as funds often remain after a distribution because of uncashed checks or tax refunds.

---

[3] The National Consumer Law Center was founded in 1969 through a federal grant to provide legal services addressed to two main goals: improving the access of poor people to the legal system and enabling advocates to seek justice wherever justice for the poor is needed. Today, NCLC continues to fight for the rights of low-income families and provides many resources to civil legal aid and private attorneys representing low-income consumers.  The lawyers of the National Consumer Law Center provide policy analysis, advocacy, litigation, expert witness services, and training for consumer advocates throughout the United States.  *See* https://www.nclc.org/about-us/our-story.html.

The NCLC has been approved by courts across the country as a recipient of residual balances of settlements.  *See, e.g., Spann v. J.C. Penney Corp*., 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016), *appeal dismissed sub nom*., No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7, 2016) (approving settlement providing that residue of un-cashed checks issued to class members will be distributed, subject to the court's approval, to the National Consumer Law Center, as a cy pres recipient); *Perkins v. Am. Nat. Ins. Co*., No. 3:05-CV-100 CDL, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

8

In an effort to have as many Authorized Claimants as possible cash their checks, A.B. Data will follow-up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to A.B. Data as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses. For Authorized Claimants whose checks are returned as undeliverable, A.B. Data will also endeavor to locate new addresses. The distribution plan recommends various measures with respect to the handling of checks issued in the distribution. *Id.* ¶ 40(a)(v) n.2.

After at least six months from the initial distribution, any funds remaining in the Net Settlement Fund will be redistributed to Authorized Claimants previously approved by the Court who cashed their distribution checks in an equitable and economic fashion, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks and after payment of any unpaid Taxes and Notice and Administration Expenses incurred in administering the Net Settlement Fund for such redistribution. *See* Stipulation ¶ 6.4; A.B. Data Decl. ¶ 40(b). Redistributions will occur until it is no longer economical to do so. Once the balance remaining in the Net Settlement Fund is below the level that could be economically distributed, then such remaining funds shall be paid to eligible claims adjusted after June 22, 2018, if any. *See id*. ¶ 40(c). If any funds then remain, following payment of unpaid fees or expenses incurred in connection with administering the Settlement and after payment of estimated taxes, they shall be contributed to the NCLC. *Id*. ¶ 40(d).

Lead Counsel submits that the administration of the Settlement and the proposed distribution plan for the Net Settlement Fund comply with the terms of the Stipulation and the

9

Plan of Allocation approved by the Court. Accordingly, Lead Plaintiff respectfully requests that the Court enter the proposed Distribution Order, *inter alia*:

(1) adopting the administrative recommendations to accept the Claim Forms set forth in Exhibits E and F to the A.B. Data Declaration;

(2) adopting the administrative recommendations to reject the Claim Forms set forth in Exhibit G to the A.B. Data Declaration;

(3) adopting the administration recommendations to reject the two claims seeking judicial review;

(4) approving the distribution plan set forth in paragraph 40 of the A.B. Data Declaration and directing that the Net Settlement Fund be distributed in accordance with the terms of the distribution plan;

(5) authorizing payment of A.B. Data's fees and expenses in connection with the initial distribution from the Net Settlement Fund, as reflected on the estimate to complete attached hereto as Exhibit H, prior to the initial distribution; and

(6) authorizing that one year after the initial distribution of the Net Settlement Fund, A.B. Data may destroy the paper copies of the Proofs of Claim and all supporting documentation, and one year after all funds have been distributed, A.B. Data may destroy electronic copies of the same.

10

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that this motion be granted

in its entirety and that the Court enter the proposed Distribution Order submitted herewith.

Dated:  August 10, 2018

Respectfully submitted,

/s/  Jonathan Gardner

Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
cfox@labaton.com

Eric K. Jenkins (10783)
**GOEBEL ANDERSON, P.C**.
405 South Main Street, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 441-7019

*Counsel for Lead Plaintiff Boston Retirement*
*System and the Proposed Class*

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 10th day of August, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to the registered participants as identified on the NEF.

*/s/ Jonathan Gardner*
Jonathan Gardner

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NU SKIN ENTERPRISES, INC., SECURITIES LITIGATION | Master File No. 2:14-cv-00033-JNP-BCW <br><br> Hon. Jill Parrish |
| This Document Related To: ALL ACTIONS | **ORDER AUTHORIZING DISTRIBUTION OF NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS AND RELATED RELIEF** |

**THIS MATTER** having come before the Court on the motion of Lead Plaintiff Boston Retirement System for authorization to distribute the Net Settlement Fund; the Settlement having reached its Effective Date; and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.      All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement, dated as of May 2, 2016 (the "Stipulation," ECF No. 134-1).

2.      The administrative recommendations of A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator"), the Court-appointed Claims Administrator, to accept the Proof of Claim and Release forms ("Claim Forms"), including the late but otherwise eligible Claim Forms, listed in Exhibits E and F to the Declaration of Adam D. Walter on Behalf of A.B. Data, Ltd. in Support of Lead Plaintiff's Motion for Authorization to Distribute Net Settlement Fund, dated August 9, 2018 ("A.B. Data Declaration" or "A.B. Data Decl."), are hereby APPROVED.

3. As determined by the Claims Administrator, wholly rejected or otherwise ineligible Proofs of Claim are hereby REJECTED, including disputed Claim Nos. 36284848 and 38967891.

4. The distribution of the Net Settlement Fund to Authorized Claimants is hereby AUTHORIZED and shall be conducted in accordance with the Settlement Agreement, the Court-approved Plan of Allocation, and the distribution plan for payment of the Net Settlement Fund set forth in paragraph 40 of the A.B. Data Declaration, which is hereby APPROVED.

5. No Claim Forms received or adjusted after June 22, 2018 will be eligible for payment for any reason, subject only to the provision of paragraph 40(c) of the Distribution Plan.

6. A payment in the amount of $84,611.08 from the Settlement Fund for A.B. Data's estimate of its fees and expenses to be incurred in connection with the initial distribution of the Net Settlement Fund is hereby AUTHORIZED. If the incurred fees and expenses for the initial distribution are lower than the estimate, the Claims Administrator shall promptly reimburse the Net Settlement Fund.

7. The administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Settlement Agreement and the Plan of Allocation.

8. The Claims Administrator is authorized to destroy paper copies of the Proofs of Claim and all supporting documents one year after the initial distribution of the Net Settlement Fund, and to destroy electronic copies of the same one year after all funds have been distributed.

9. The Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

DATED August 30, 2018

BY THE COURT:

Honorable Jill Parrish
UNITED STATES DISTRICT JUDGE

3