**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP<br><br>CLASS ACTION |

**[PROPOSED] ORDER APPROVING DISTRIBUTION PLAN**

Lead Plaintiff moved this Court for an order approving a distribution plan for the Net Settlement Fund in the above-captioned securities class action ("Action"). Having reviewed and considered all the materials and arguments submitted in support of the motion, including Lead Plaintiff's Motion for Approval of Distribution Plan and the Declaration of Alexander P. Villanova in Support of Lead Plaintiff's Motion for Approval of Distribution Plan ("Villanova Declaration"),

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated as of November 28, 2022 (ECF No. 97-1) ("Stipulation"), and the Villanova Declaration, and all terms used in this Order shall have the same meanings as defined in the Stipulation and the Villanova Declaration.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3.      Lead Plaintiff's plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly:

(a)      The administrative determinations of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to accept the Timely

Eligible Claims set forth in Exhibit D to the Villanova Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit E to the Villanova Declaration are adopted.

(b)    The Claims Administrator's administrative determinations to reject the Rejected Claims, as set forth in Exhibit F to the Villanova Declaration, are adopted.

(c)    Epiq is directed to conduct the Initial Distribution of the Net Settlement Fund after deducting all payments previously allowed, payments approved by this Order, and any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 5% reserve from the Net Settlement Fund to address any tax liability or claims administration-related contingencies that may arise.

Specifically, as set forth in paragraph 39(a) of the Villanova Declaration:

(1) Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. Epiq will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants; (2) Epiq will then eliminate from the Initial Distribution any Authorized Claimant whose total *pro rata* share of the Net Settlement Fund is less than $10.00. These Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq; (3) After eliminating Claimants who would have received less than $10.00, Epiq will recalculate the *pro rata* shares of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. This *pro rata*

share is the Authorized Claimant's "Distribution Amount"; (4) Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will receive no additional funds in subsequent distributions; and (5) 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. The remaining 5% of the Net Settlement Fund will be held in the Reserve to address any tax liability or claims administration-related contingencies that may arise following the Initial Distribution. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution described in subparagraph (f) below.

(d)     To encourage Authorized Claimants to cash their checks promptly, all distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." Lead Counsel and Epiq are authorized to take appropriate action to locate and contact Authorized Claimants who have not cashed their checks within said time as detailed in paragraph 39(b) of the Villanova Declaration.

(e)     Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in paragraph 39(b) of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be distributed to other Authorized Claimants in the Second Distribution. Similarly, Authorized Claimants who do not cash their distribution checks in the Second Distribution or subsequent distributions, should

such distributions occur, within the time allotted or on the conditions set forth in paragraph 39(b) of the Villanova Declaration will irrevocably forfeit any further recovery from the Net Settlement Fund.

(f)      After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks (as provided in paragraph 39(b) of the Villanova Declaration), but not earlier than six (6) months after the Initial Distribution, Epiq will, after consulting with Lead Counsel, conduct the Second Distribution, in which any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution check and are entitled to receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals.

(g)      When Lead Counsel, in consultation with Epiq, determines that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after June 11, 2024, those Claims will be processed, and any otherwise valid Claims received after June 11, 2024, as well as any earlier-received Claims for which an upward adjustment was received after June 11, 2024, will be paid in accordance with subparagraph (h) below. If any funds remain in the Net Settlement Fund after payment of these Claims and unpaid fees or expenses, the remaining funds will be contributed to the National Consumer Law Center ("NCLC").

(h)     No new Claims may be accepted after June 11, 2024, and no further adjustments to Claims received on or before June 11, 2024, that would result in an increased Recognized Claim amount may be made for any reason after June 11, 2024, subject to the following exception. If Claims are received or modified after June 11, 2024, that would have been eligible for payment or additional payment pursuant to the Court-approved Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with Epiq, determines a distribution is not cost-effective as provided in subparagraph (g) above, and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, these Claimants, at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

4.     The Court finds that the administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and Plan of Allocation approved by this Court and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or

any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

5.      All of Epiq's fees and expenses incurred in the administration of the Settlement and estimated to be incurred in connection with the Initial Distribution of the Net Settlement Fund as set forth in the invoices attached as Exhibit G to the Villanova Declaration are approved, and Lead Counsel is directed to pay the outstanding balance of $159,440.57 out of the Settlement Fund to Epiq.

6.      Unless otherwise ordered by the Court, Epiq may destroy the paper copies of the Claims and all supporting documentation one year after the Initial Distribution, and one year after all funds have been distributed may destroy the electronic copies of the same.

7.      This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any other and further relief that this Court deems appropriate.

SO ORDERED this _____ day of _____ 2024.

_____
The Honorable Robert Pitman
United States District Judge